UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ROTHSCHILD CONNECTED
DEVICES INNOVATIONS, LLC,

    Plaintiff,

v.

THE COCA-COLA COMPANY,

    Defendant.
_____/

## COMPLAINT FOR PATENT INFRINGEMENT

Rothschild Connected Devices Innovations, LLC ("Rothschild"), hereby sues The Coca-Cola Company ("Coca-Cola") for patent infringement, and alleges as follows:

## THE PARTIES

1. Rothschild is a limited liability company organized and existing under the laws of the State of Texas. Mr. Leigh Rothschild is the manager of the company and he resides in Miami-Dade County, Florida.

2. Coca-Cola is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, more specifically, under Title 35 of the United States Code, Section 271 *et seq*.

4. This Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because Rothschild seeks relief under the Patent Act, 35 U.S.C. § 271 *et seq.*, including remedies for infringement of United States Patents owned by Rothschild.

5. Coca-Cola is subject to personal jurisdiction in this state because it is registered to do business in this state, has transacted and continues to transact business in this state, has contracted to supply services or products in this state and/or has caused tortious injury in this state.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because a substantial part of the events giving rise to these claims occurred in this district, because Rothschild has suffered injury in this district, and because Coca-Cola resides in this district under the patent venue statute by having committed acts of alleged patent infringement in this district.

## ROTHSCHILD'S PATENTS

7. Rothschild is the owner of United States Patent No. 8,417,377 ("the '377 patent"), entitled "System and Method for Creating a Personalized Consumer Product." Mr. Leigh Rothschild is the sole inventor of the '377 patent. The '377 patent was duly and lawfully issued on April 9, 2013 by the United States Patent and Trademark Office and is now, and has been at all times since its date of issue, valid and enforceable. A true and correct copy of the '377 patent is attached hereto as Exhibit A.

8. Additionally, Rothschild is the owner of related United States Patent No. 8,788,090 ("the '090 patent"), also entitled "System and Method for Creating a Personalized Consumer Product." Mr. Leigh Rothschild is the sole inventor of the '090

patent. The '090 patent was duly and lawfully issued on July 22, 2014 by the United States Patent and Trademark Office and is now, and has been at all times since its date of issue, valid and enforceable. A true and correct copy of the '090 patent is attached hereto as Exhibit B.

9. The inventions of the '377 and '090 patents relate to systems and methods for creating a personalized beverage whereby an individual can customize a beverage using personal beverage preferences communicated over the Internet from a server to a beverage dispenser with mixing capabilities.

10. The '377 patent describes a preferred embodiment as follows:

> "[T]he user goes to a beverage dispenser, e.g., a soda dispenser … The user identifies himself to the beverage dispenser … via a communications device such as a mobile device … The user enters this identity information into the dispenser and … the dispenser communicates the user's identity information to a server on the global computer network (e.g., the Internet). The server then identifies the user of the dispenser and directs the dispenser to mix the beverage for the user exactly the way the user has predetermined that they like to drink the beverage. In the example of soda, the user can and will determine the amount of carbonation, the amount of sweetness for the beverage, and if any extra flavors, such a lemon or lime, will be added to the beverage. The user is then dispensed the beverage for consumption."

*See* '377 patent, col. 6, ll. 5-24.

11. Claim 1 of the '377 patent covers a product to be consumed by a user, comprising:

> a housing;
>
> at least one compartment containing an element of the product;

3

>at least one valve coupling the at least one compartment to a mixing chamber for mixing a final product;
>
>a controller configured to actuate the at least one valve and to control an amount of the element to enter the mixing chamber;
>
>a communication module configured to transmit an identifier of the product to a server over a network, receive product preferences of the user from the server based on the identifier and communicate to the controller the specific valve settings for the at least one valve and the specific time and duration for actuating the mixing device based on the received product preferences of the user; and
>
>an exit port disposed on the housing for dispensing the final product.

12. Similarly, claim 11 of the '377 patent recites a beverage dispenser comprising:

>at least one compartment containing an element of a beverage;
>
>at least one valve coupling the at least one compartment to a dispensing section configured to dispense the beverage;
>a mixing chamber for mixing the beverage;
>
>a user interface module configured to receive and identity of a user and an identifier of the beverage;
>
>a communication module configured to transmit the identity of the user and the identifier of the beverage to a server over a network, receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server and communication the user generated beverage product preferences to controller; and
>
>the controller coupled to the communication module and configured to actuate the at least one valve to control an amount of the element to be dispensed and to actuate the mixing chamber based on the user generated beverage product preferences.

13. Like the '377 patent, the '090 patent also discloses the beverage dispenser preferred embodiment. *See* '090 patent, col. 6, ll. 7-26.

14. Claim 13 of the '090 patent covers a beverage dispenser, comprising:

> at least one compartment containing an element of a beverage;
>
> at least one valve coupling the at least one compartment to a dispensing section configured to dispense the beverage;
>
> a mixing chamber for mixing the beverage;
>
> a user interface module configured to receive an identity of a user and an identifier of the beverage;
>
> a communication module configured to transmit the identifier of the beverage to a server over a network; and
>
> a controller configured to actuate the at least one valve to control an amount of the element to be dispensed and to actuate the mixing chamber based on user generated beverage product preferences.

## COCA-COLA'S FREESTYLE BEVERAGE DISPENSER

15. Coca-Cola makes, uses, offers to sell, and sells a beverage dispenser called the Freestyle soda fountain. The Freestyle beverage dispenser is a freestanding dispenser, with a footprint similar to that of a Coca-Cola vending machine. It is capable of dispensing more than 100 Coca-Cola-branded drinks.

16. Instead of having individual spouts for each beverage product, the Freestyle dispenser has only one exit port for all beverages it is capable of dispensing. Because the Freestyle must be capable of dispensing more than 100 flavored drinks through only one exit port, Coca-Cola has equipped all Freestyle dispensers with a mixing chamber, capable of mixing the various flavors stored within the Freestyle into a final product -- the user-selected beverage.

5

17. The Freestyle dispenser has the ability to allow users to select their desired beverage through a touchscreen-driven selection process.

18. Flavor cartridges within the Freestyle dispenser are outfitted with passive RFID tags. The dispenser also contains a cellular and wired Ethernet network communication module allowing connectivity to Coca-Cola's network servers.

19. Freestyle dispensers operate in conjunction with the "Coca-Cola Freestyle app," which is also made and distributed by Coca-Cola. The app is not stored physically within the dispenser, but is a software application that users download to their mobile devices and – along with the dispenser – forms a system that easily allows users to create, store, retrieve, communicate and deliver their personalized beverage mixes to Freestyle dispensers.

20. As Coca-Cola's own website describes it:

> Standing in front of a Coca-Cola Freestyle machine, it's tough to remember that awesome drink combination you created last week. Now, there's an app for that.
>
> The new "Create Your Own Mix" feature on the Freestyle app lets fans save custom combination using Freestyle's over 100 drink options. With smartphone in hand, users can scan the app at a participating machine, which will in turn pour their very own creations.

*See* http://www.coca-colacompany.com/coca-cola-unbottled/coca-cola-freestyle-app-your-custom-mix-on-demand/ (last accessed October 23, 2015).

## COCA-COLA FREESTYLE'S INFRINGEMENT OF THE '377 PATENT

21. The Coca-Cola Freestyle system infringes at least Claims 1 and 11 of the '377 patent.

6

a. **Coca-Cola's Infringement of Claim 1 of the '377 Patent.**

22. The Coca-Cola Freestyle beverage dispenser constitutes the requisite housing:



Figure 1

23. Within each Freestyle dispenser, there is at least one compartment containing an element of the product. Freestyle dispensers contain these compartments in the form of so-called "flavor cartridges." The contents of the flavor cartridge are mixed with one or more other flavors to create the user-desired beverage. The flavor cartridges are arranged as follows within the Freestyle:



Figure 2

24. Likewise, there is at least one valve coupling the at least one compartment to a mixing chamber for mixing a final product. The back of each flavor cartridge is

---

[1] Image Source: http://yeahthatskosher.com/2015/09/coca-colas-freestyle-machines-are-officially-kosher/
[2] Image Source: https://en.wikipedia.org/wiki/Coca-Cola_Freestyle

connected to a feed line so as to enable the cartridge's flavor to be dispensed into the mixing chamber, as shown below.



Figure 3

25. The top right quadrant of the image above also reveals the presence a controller configured to actuate at least one valve and to control an amount of the flavor (or element) to enter the mixing chamber.

26. Lastly, the Coca-Cola Freestyle App allows users to sign in using Facebook / Email / Twitter, Google+ or alternatively create a username and password combination. Each user's profile can be associated with one or more user beverage preferences (the Freestyle app refers to these as "My Favorites" and "My Mixes"). From the main Freestyle App menu users can choose to create a new beverage mix or retrieve a beverage mix preference previously associated with the user's profile. Once the user's mix preferences are selected, the Freestyle app's "connect" function allows users to scan a code present on the Coca-Cola Freestyle beverage dispenser. After scanning the code, the Freestyle app transmits to Coca-Cola servers (a) the identity of the Freestyle beverage dispenser that should receive the user's beverage mix preference and (b) the user's

---

[3] Image Source: http://i.imgur.com/85ITeub.jpg

beverage mix preference. The Coca-Cola servers then provide the beverage dispenser near the user the previously selected beverage mix preference. The beverage dispenser's controller actuates the various valves so as to feed the drink flavors into the mixing chamber, the mix is poured and made available to the user.

27. Lastly, there is an exit port disposed on the Freestyle housing for dispensing the final product, as shown below:



Figure 4

### b. Coca-Cola's Infringement of Claim 11 of the '377 patent.

28. The Coca-Cola Freestyle beverage dispenser is equipped with at least one compartment containing an element of a beverage – namely, the various Coca-Cola branded beverage flavors. Each of these flavor compartments contains at least one valve coupling.

29. The user interface module recited in claim 11 is embodied in the Coca-Cola Freestyle app, which is configured to receive the identity of a user and an identifier of the beverage, as shown below:

---

[4] Image Source: http://www.coca-colacompany.com/stories/everything-you-need-to-know-about-coca-cola-freestyle/

9

 

Figure 5

30. Likewise, the Coca-Cola Freestyle app embodies the communication module recited in claim 11.

31. Finally, the Coca-Cola Freestyle beverage dispenser's controller is coupled via network connection and Coca-Cola's servers to the Coca-Cola Freestyle app's communication module and user interface module, thereby embodying the last limitation present in claim 11 of the '377 patent. Once the beverage dispenser controller receives the user-desired beverage mix, it actuates the at least one valve and dispenses into the mixing chamber the various flavors associated with the user-desired beverage mix.

32. Coca-Cola has not obtained permission from Rothschild to use any of the inventions disclosed in the '377 patent.

33. On at least one prior occasion, Rothschild approached Coca-Cola regarding the taking of a license to the '377 patent, but Coca-Cola has thus far failed to do so.

---

[5] Image Source: http://www.coca-colafreestyle.com/mobile-app-download/

## COCA-COLA FREESTYLE'S INFRINGEMENT
## OF THE '090 PATENT

34. The Coca-Cola Freestyle dispenser also infringes at least claim 13 of the '090 patent.

35. The Coca-Cola Freestyle beverage dispenser is equipped with at least one compartment containing an element of a beverage – namely, the various Coca-Cola branded beverage flavors. Each of these flavor compartments contain at least one valve coupling.

36. The Coca-Cola Freestyle beverage dispenser's controller is coupled via network connection and Coca-Cola's servers to the Coca-Cola Freestyle app's communication module and user interface module, thereby embodying the last limitation present in claim 13 of the '090 patent. Once the beverage dispenser controller receives the user-desired beverage mix, it actuates the at least one valve and dispenses into the mixing chamber the various flavors associated with the user-desired beverage mix. .

37. Coca-Cola has not obtained permission from Rothschild to use any of the inventions disclosed in the '090 patent.

38. On at least one prior occasion, Rothschild approached Coca-Cola regarding the taking of a license to the '090 patent, but Coca-Cola has thus far failed to do so.

## COUNT I
**(Infringement of the '377 Patent)**

39. Rothschild incorporates and realleges paragraphs 1 through 38 of this complaint.

40. Coca-Cola has infringed one or more claims of the '377 patent by making, using, selling and/or offering to sell in the United States Freestyle beverage dispensers and the Coca-Cola Freestyle app. Coca-Cola's infringement activities violate 35 U.S.C. § 271.

41. Rothschild is informed and believes, and on that basis alleges, that Coca-Cola's infringement of the '377 patent has been willful.

42. Rothschild has sustained damages as a direct and proximate result of Coca-Cola's infringement of the '377 patent.

43. All conditions precedent to this action have been satisfied.

## COUNT II
### (Infringement of the '090 Patent)

44. Rothschild incorporates and realleges paragraphs 1 through 38 of this complaint.

45. Coca-Cola has infringed one or more claims of the '090 patent by making, using, selling and/or offering to sell in the United States Freestyle beverage dispensers and the Coca-Cola Freestyle app. Coca-Cola's infringement activities violate 35 U.S.C. § 271.

46. Rothschild is informed and believes, and on that basis alleges, that Coca-Cola's infringement of the '090 patent has been willful.

47. Rothschild has sustained damages as a direct and proximate result of Coca-Cola's infringement of the '090 patent.

48. All conditions precedent to this action have been satisfied.

**WHEREFORE**, Rothschild prays:

    a.    that the Court find Coca-Cola liable for infringement of the '377 patent, either literally or under the doctrine of equivalents;

    b.    that the Court find Coca-Cola liable for infringement of the '090 patent, either literally or under the doctrine of equivalents;

    c.    That Coca-Cola, and all of its agents, servants, employees, successors and assigns, and all persons acting in concert or in active participation with Coca-Cola, be preliminarily and permanently enjoined and restrained from making, using, importing, selling and/or offering to sell any products or services in the United States that infringe either the '377 or the '090 patent;

    d.    That the Court award Rothschild damages due to Coca-Cola's infringement of the '377 and '090 patents, and that the Court enter judgment three (3) times such amount pursuant to 35 U.S.C. § 284.

    e.    That the Court find this case exceptional within the meaning of 35 U.S.C. § 285 and award Rothschild the attorneys' fees and expenses incurred in this action.

    f.    That the Court award Rothschild taxable costs and disbursements.

    g.    That the Court award Rothschild both pre-judgment and post-judgment interest.

    h.    For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Rothschild demands trial by jury on all issues so triable.

Dated: October 30, 2015

Respectfully submitted,

/s Ernesto M. Rubi
John C. Carey
Florida Bar No. 78379
jcarey@careyrodriguez.com
Ernesto M. Rubi
Florida Bar No. 92014
erubi@careyrodriguez.com
CAREY RODRIGUEZ
MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475

*Counsel for Rothschild Connected Devices Innovations, LLC*