**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 15-CV-24067 – ALTONAGA / O'SULLIVAN

ROTHSCHILD CONNECTED
DEVICES INNOVATIONS, LLC,

       Plaintiff,

v.

THE COCA-COLA COMPANY,

       Defendant.

_____/

**ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

I.   Procedural Background ................................................................................................ 1

II.  Factual Background ................................................................................................... 2

III. Legal Framework ...................................................................................................... 3

    A.   General Claim Construction Rules ................................................................. 3

    B.   The Doctrine of Claim Differentiation ........................................................... 8

IV. Proposed Constructions for Disputed Claim Terms ................................................. 9

    A.   Element......................................................................................................... 10

    B.   Valve ............................................................................................................ 11

    C.   Dispensing Section ...................................................................................... 11

    D.   Coupling ....................................................................................................... 12

    E.   Mixing Chamber .......................................................................................... 13

    F.   Communications Module ............................................................................. 14

    G.   User Interface Module.................................................................................. 15

    H.   Actuate ......................................................................................................... 16

    I.   Server ........................................................................................................... 17

    J.   Configured to Actuate the at Least One Valve to Control an Amount of the Element to be Dispensed…Based on the User Generated Beverage Product Preferences.............. 19

    K.   Configured to Actuate the mixing chamber…Based on the User Generated Beverage Product Preferences. ............................................................................... 20

V.   Conclusion............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*800 Adept, Inc. v. AT&T Mobility, LLC*, 2008 WL 4831093 (E.D. Tex. July 23, 2008)............... 5

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082 (Fed. Cir. 2003)............................................ 4, 12

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341
   (Fed.Cir.2001)................................................................................................................... 4

*Brown v. 3M,* 265 F.3d 1349 (Fed.Cir.2001)................................................................................. 6

*Centillion Data Sys., LLC v. Convergys Corp.*, 529 F. Supp. 2d 982 (S.D. Ind. 2008) ............ 4, 6

*CollegeNet, Inc. v. XAP Corp.*, 2004 WL 2429843 (D. Or. Oct. 29, 2004) ................................. 5

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998)............................... 6, 8

*D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570 (Fed. Cir. 1985)....................................................... 9

*Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F. 3d 1325 (Fed. Cir. 1998)................................ 4

*Flexhead Indus., Inc. v. Easyflex, Inc.*, 2008 WL 4813797 (D. Mass. Nov. 3, 2008) ................... 5

*Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575 (Fed. Cir. 1996)........................... 8, 12

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d. 1111 (Fed. Cir. 2004) .....
   ................................................................................................................................... 3, 7

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ........... 3, 7, 17

*Intervet America, Inc. v. Kee-Vet Laboratories, Inc.,* 887 F.2d 1050 (Fed. Cir. 1989)............. 7, 8

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999) ........................ 4

*Kalman v. Kimberly-Clark  Corp.,* 713 F. 2d 760 (Fed. Cir. 1983)......................................... 8, 15

*Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341 (Fed. Cir. 2009) ..................................... 6, 17

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998)................................................ 6, 14

*Levitation Arts, Inc. v. Fascinations Toys & Gifts, Inc.*, 2009 WL 1270394 (W.D. Tex. April 2, 2009) ................................................................................................ 5

*Liquid  Dynamics Corp. v. Vaughan Co.,* 355 F.3d 1361 (Fed. Cir. 2004) ................................. 7

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) ................................... 2, 3

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) .................... 4

*Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings,* 370 F.3d 1354 (Fed. Cir. 2004) ................................................................................................ 7

*Motorola, Inc. v. Vtech Commc'ns, Inc.*, 2009 WL 2026317 (E.D. Tex. July 6, 2009) ................ 5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351 (Fed. Cir. 2008).......... 5

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 3, 4, 6

*RF Delaware, Inc.  v. Pacific Keystone  Technologies, Inc.,* 326 F.3d  1255 (Fed. Cir. 2003)...... 7

*Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524 (Fed. Cir. 1987)...................................... 6

*Sprint Commc'ns Co. L.P. v. Vontage Holdings Corp.*, 518 F. Supp. 2d 1306 (D. Kan. 2007)..... 6

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.,* 806 F.3d 1356 (Fed. Cir. 2015) ................... 13

*SuperGuide Corp. v. DirectTV Enters., Inc.,* 368 F.3d. 870 (Fed. Cir. 2004) ................... 4, 10, 12

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) ...................................................... 3

*TI Group Automotive Sys. (North America), Inc. v.  VDO North America, L.L.C.,* 375 F.3d 1126 (Fed. Cir. 2004)................................................................................................ 6

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)...................................... 4, 11

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ................................. 3, 8, 12

*Welker Bearing Co. v. PHD, Inc.*, 528 F. Supp. 2d 683 (E.D. Mich. 2007)................................... 6

*Western Union Co. v. Moneygram Int'l, Inc.,* 2008 WL 5731946 (W.D. Tex. Nov. 6, 2008) ....... 5

iii

*Xerox Corp. v. 3Com Corp.,* 267 F.3d 1361 (Fed. Cir. 2001) ........................................................ 8

**Statutes**

35 U.S.C. § 112(a) .......................................................................................................... 2

35 U.S.C. § 282 .............................................................................................................. 8

Pursuant to the Court's Order Setting Trial and Pre-Trial Schedule (D.E. 16), Plaintiff Rothschild Connected Devices Innovations, LLC ("RCDI") hereby submits its opening claim construction brief.

## I.     Procedural Background

RCDI is the sole owner of United States Patent 8,417,377 ("the '377 patent"), titled "System and Method for Creating a Personalized Consumer Product" and United States Patent 8,788,090 ("the '090 patent") also titled "System and Method for Creating a Personalized Consumer Product" (collectively, the "Asserted Patents"). On October 30, 2015, RCDI brought this action against Defendant The Coca-Cola Company ("TCCC"). *See* Compl. (ECF No. 1).

The Complaint alleges that TCCC makes, uses, offers for sale, and imports into the United States, certain beverage dispensers that fall within the scope of one or more claims of the Asserted Patents, and thus TCCC infringes the Asserted Patents.   *See* Compl. 5-11. On December 14, 2015, TCCC filed its Answer (ECF No. 12), denying infringement and raising five affirmative defenses, including the doctrines of laches, estoppel, and/or waiver; as well as invalidity of the Asserted Patents for failure to satisfy one or more of the requirements of 35 U.S.C. sections 101, 102, 103, 112 and 120.   *See* Answer 7-8.   TCCC did not assert any counterclaims against RCDI.

Subsequently, on March 17, 2016, RCDI sought leave to file a First Amended Complaint and narrow the focus of its infringement allegations to claims 11-13, 15, 17, 19, and 21-25 of the '377 patent.  *See* (ECF No. 35).[1]

TCCC has identified several terms in claim 11 of the '377 patent whose proposed construction RCDI disputes ("the Disputed Claim Terms").   This opening claim construction brief addresses RCDI's position with respect to each such Disputed Claim Term.[2]

---

[1] RCDI gave notice to TCCC on Monday, March 7, 2016, that it was dropping claim 1 of the '377 patent and claim 13 of the '090 patent.

[2] On December 23, 2015, RCDI served TCCC with a first set of interrogatories. RCDI's interrogatories principally sought TCCC's claim construction position with respect to each claim asserted in the Complaint.   In light of TCCC's failure to answer RCDI's interrogatories, Magistrate Judge O'Sullivan ordered TCCC to provide answers no later than March 3, 2016. (*See generally* [ECF No. 21-22, 24, 29]).  To date, TCCC has not served any discovery requests on RCDI.

## II.     Factual Background

The ′377 patent, issued on April 9, 2013, is a continuation of an application filed on June 20, 2006, now issued as United States Patent 7,899,713 ("the '713 patent"). *See* Ex. A.  The ′377 and ′713 patents share the same specification, that is, the portion of the patent document that describes the manner and process of making and using the patented invention, *see* 35 U.S.C. § 112(a); but they have different claims, "the portion of the patent document that defines the scope of the patentee's rights," *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc)*, aff'd,* 517 U.S. 370, 372 (1996). The '377 patent covers a system and method for enabling "a user (*e.g.*, a consumer) to customize products containing … fluids by allowing a server communicating over the global computer network (*e.g.*, the Internet) to provide product preferences of a user to a … mixing device (*e.g.*, a … beverage dispenser)." *See* ′377 Patent, Abstract.

In addition to the detailed description of embodiments of the invention, the specification of the ′377 patent includes five figures, including figures showing: a system for creating personalized consumer products (*id.* at Fig. 1); a beverage dispenser in accordance with an embodiment described in the specification (*id.* at Fig. 4); and a flow chart illustrating a method for dispensing a beverage according to a user's preferences (*id.* at Fig. 5). The ′377 patent concludes with twenty-five claims that articulate the scope of the RCDI's rights. *Id.* at cols. 9–10.  Independent claim 11, as well as dependent claims 12-13, 15, 17, 19, and 21-25 are directed to a beverage dispenser. *Id.* at col. 9, ln. 43 – col. 10, ln. 62.

In general, the beverage dispenser consists of multiple compartments for storing elements of a beverage, "for instance, soda syrup, additional flavors such as lemon or lime, additional sweeteners for the beverage, etc."  *See id.* at col. 6, ll. 33-35.  These compartments can be coupled "by tubing" to a "mixing chamber" that will "mix the various elements before allowing the mixture to flow to the dispensing section."  *See id.* at col. 6, ll. 42-44.   But it is not enough to simply dispense just any beverage.   Instead, the '377 patent calls for the beverage to be dispensed "exactly the way the user has predetermined that they like…"  *See id.* at col. 6, ll. 18-20.

2

The '377 patent discloses a "communication module … for coupling the dispenser to the … Internet, and for enabling communication between the dispenser and a server..." *See id.* at col. 6, ll. 57-61. The '377 patent further discloses a user interface module that "enables communication between the user and the dispenser." (*See id.* at col. 6, ll. 61-64). The user and the dispenser can communicate using "any … type of communication now known or practiced in the future that will allow [users] to identify themselves and/or input information to the beverage dispenser." *See id.* at col. 7, ll. 1-4.    This includes "voice recognition module[s], WiFi communication (b, d, g, n, etc.), RFID communications…[or] Bluetooth." *Id.* at col 6, ll. 64-67.

Once the dispenser has received the user's beverage preferences, the dispenser stands ready to dispense.  To do so, one or more controllers within the dispenser release the requisite beverage elements into the "mixing chamber or dispensing section." *See id.* at col. 8, ll. 29-47.

## III.    Legal Framework

Claim construction is a question of law for the district court to decide.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (stating that court's claim interpretation is "a legal conclusion"); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

### A.    General Claim Construction Rules

When construing a disputed claim term, a court must begin with the claim language. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).  Proper claim construction therefore must always begin with, and remain centered on, the language of the claims themselves.  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d. 1111, 1115 (Fed. Cir. 2004)).

Claim terms should be accorded their ordinary and customary meaning. *See Phillips*, 415 F.3d at 1312; *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Indeed, terms are entitled to a "heavy presumption" that they carry their ordinary and customary meaning. *SuperGuide Corp. v. DirectTV Enters., Inc.*, 368 F.3d. 870, 874 (Fed. Cir. 2004). The ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

3

"[A] court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). "The context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).

Ordinary and customary meaning is especially applicable to common words in a claim. "Common words . . . should be interpreted according to their ordinary meaning." *Centillion Data Sys., LLC v. Convergys Corp.*, 529 F. Supp. 2d 982, 988 (S.D. Ind. 2008) (*citing Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F. 3d 1325 (Fed. Cir. 1998)). Therefore, "[i]n some cases . . . claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

Importantly, not every allegedly disputed claim term actually requires construction by the Court, despite a party's request for construction. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). For example, in *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001), the Court held the district court committed no error in declining to construe the claim term "melting," because "the meaning of 'melting' does not appear to have required 'construction,' or to depart from its ordinary meaning." And in *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001), the Court held the district court committed no error in refusing to construe the claim terms "irrigating" and "frictional heat" because it was proper to rely on their ordinary meanings. Only when the parties present a fundamental dispute regarding the scope of a claim term, and where a construction would not be an exercise in redundancy of a term's ordinary meaning, it is the court's duty to provide a construction. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351, 1362-63 (Fed. Cir. 2008).

4

The district court decisions following this settled principle are legion.  District courts across the country routinely find that no construction is necessary for a contested term, especially when the term at issue is a common word or phrase that is easily understood.  *See, e.g., Levitation Arts, Inc. v. Fascinations Toys & Gifts, Inc.*, 2009 WL 1270394, at *9 (W.D. Tex. April 2, 2009) (declining to issue construction of the terms "levitated element," "stable position," and "magnetic potential energy" because "Defendants' proposed constructions add nothing to the ordinary meaning of the claim terms"); *Western Union Co. v. Moneygram Int'l, Inc.*, 2008 WL 5731946, at *6-*8 (W.D. Tex. Nov. 6, 2008) (declining to issue construction for terms including "send transaction," "receive transaction," "transaction details," "data base," "desired amount of money," "a code", and "validate," among others, because the proposed constructions added nothing to the ordinary meanings); *Flexhead Indus., Inc. v. Easyflex, Inc.*, 2008 WL 4813797, at *9 (D. Mass. Nov. 3, 2008) (stating a "court may properly decline to construe a word further if the ordinary meaning of the term is apparent," and declining to construe "broad surface" because it has an ordinary meaning requiring no further definition); *CollegeNet, Inc. v. XAP Corp.*, 2004 WL 2429843, at *14-*15 (D. Or. Oct. 29, 2004) (noting "if a person of ordinary skill in the art would understand the term in its ordinary sense, everyday sense, there is no need to construe the term," and declining to construe "application form").

Accordingly, when two parties offer different constructions, or if one side argues for ordinary meaning, then the court must first determine whether it has a duty to construe the term. Where additional language may be unduly limiting, confusing, or redundant, it is in the court's power to determine that no construction is necessary.  A court may decline to adopt constructions that violate claim construction doctrine, such as improperly importing limitations, and may still construe terms to have their ordinary meaning.  *Motorola, Inc. v. Vtech Commc'ns, Inc.*, 2009 WL 2026317, at *8 (E.D. Tex. July 6, 2009); *800 Adept, Inc. v. AT&T Mobility, LLC*, 2008 WL 4831093, at *10 (E.D. Tex. July 23, 2008) (same).

In some instances, involving the application of the widely accepted meaning of commonly understood words, "general purpose dictionaries may be helpful."  *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed.Cir.2001) (holding that the claims did "not require elaborate interpretation")).  When a claim term is well known, such "dictionary

5

definitions should suffice." *Centillion*, 529 F. Supp. 2d at 1007 (finding that the term "telecommunications" as used in patent-in-suit, should be interpreted under a dictionary definition); *see also Welker Bearing Co. v. PHD, Inc*., 528 F. Supp. 2d 683, 690 (E.D. Mich. 2007) (construing claim term "detent" using dictionary definition).   Dictionary definitions can also be used to confirm the ordinary meaning of claim terms.  *Sprint Commc'ns Co. L.P. v. Vontage Holdings Corp.*, 518 F. Supp. 2d 1306, 1315 (D. Kan. 2007).   And if more than one dictionary definition is consistent with the use of the words in the intrinsic record, then the claim terms "encompass all such consistent meanings." *Id. See also TI Group Automotive Sys. (North America), Inc. v.  VDO North America, L.L.C.,* 375 F.3d 1126, 1136 (Fed. Cir. 2004) ("we again reiterate that a patentee is entitled to a definition that encompasses *all* consistent meanings") (emphasis in original).

The patent specification should also be considered, as it can act "as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Phillips*, 415 F.3d at 1320.  Yet, a cardinal tenet of patent law is that even though courts should consider the specification, attempts to read limitations in the specification into the claims violate the rules of construction.  *See Phillips*, 415 F.3d at 1323 ("Although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *see also, Comark Commc'ns, Inc. v. Harris Corp*., 156 F.3d 1182, 1186-87 (Fed. Cir. 1998); *Spectra-Physics, Inc. v. Coherent, Inc*., 827 F.2d 1524, 1533 (Fed. Cir. 1987).  Thus, it is a "well established principle that a court may not import limitations from the written description into the claims." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998).

"The claims, not specification embodiments, define the scope of patent protection.  The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *see also Interactive Gift Express, Inc.*, 256 F.3d at 1331 ("[I]n looking to the specification to construe claim terms, care must be taken to avoid reading limitations appearing in the specification . . . into [the] claims").

6

A patentee may sometimes, acting as his or her own lexicographer, clearly set forth an explicit definition of a term different from its ordinary meaning.  A patent applicant thus has the flexibility "to imbue new or old terms with a different meaning than they would otherwise have to a person of ordinary skill in the art." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004). To be his own lexicographer, all that is required is that the patent applicant "set out the different meaning in the specification in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning." *Id.* at 1117.  Thus, an inventor can utilize special definitions that either <u>enlarge or narrow</u> the ordinary meaning of claim terms.  "[A] patent applicant may define a term differently from its general usage in the relevant continuity, and thus <u>expand or limit</u> the scope of the term in the context of the patent claims." *Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings,* 370 F.3d 1354, 1360 (Fed. Cir. 2004) (emphasis added).  Express definitions given by the inventor, however, must be distinguished from descriptions of the preferred embodiments, and care must be taken to avoid reading limitations from the preferred embodiments into the claims.  As a result, "particular embodiments appearing in the written description will <u>not</u> be used to limit claim language that has broader effect." *Innova,* 381 F.3d at 1117 (emphasis added); *see also Intervet America, Inc. v. Kee-Vet Laboratories, Inc.,* 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("[L]imitations appearing in the specification will not be read into claims, and ... interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'").

Where the language of a patent claim is clear and uncontradicted by the specification or prosecution history, a district court commits reversible error by relying on any other source (including but not limited to expert witness testimony)  to  limit  the  claim.  *Liquid Dynamics Corp. v. Vaughan Co.,* 355 F.3d 1361, 1368 (Fed. Cir. 2004).  *See also RF Delaware, Inc.  v. Pacific Keystone  Technologies, Inc.,* 326 F.3d  1255, 1264 (Fed. Cir. 2003).

Finally, while it is improper to read limitations from the specification into the claims, a claim is <u>virtually always</u> entitled to a construction at least as broad as the embodiments disclosed in the specification. As the Federal Circuit has cautioned, a construction that would exclude the preferred embodiment of a patented invention "is rarely, if ever, correct." *Vitronics,* 90 F.3d at

7

1583; *see also Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1580-81 (Fed. Cir. 1996) (refusing to adopt a claim construction of "stable" that would exclude the preferred embodiment disclosed in the specification).

### B.   The Doctrine of Claim Differentiation

Each claim of an issued patent is a separate patented invention.   35 U.S.C. § 282; *Intervet, Inc.,* 887 F.2d at 1055 (Fed. Cir. 1989). Accordingly, another important rule of claim construction (which applies here) is the doctrine of claim differentiation. The doctrine of claim differentiation "create[s] a presumption that each claim in a patent has a different scope." *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998).   Under this doctrine, "[w]here some claims are broad and others narrow, the narrow claim limitation cannot be read into the broad whether to avoid invalidity or to escape infringement."   *Kalman v. Kimberly-Clark  Corp.,* 713 F. 2d 760, 770 (Fed. Cir. 1983) (citation and quotation omitted). The doctrine thus forbids limitations contained in a narrower claim from being read into a broader claim, because to do so would make the narrower claim superfluous. As the Federal Circuit has explained:

> There is presumed to be a difference in meaning and scope when different words are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.

*Xerox Corp. v. 3Com Corp.,* 267 F.3d 1361, 1366 (Fed. Cir. 2001) (citation and quotation omitted).

The Federal Circuit has also had this to say about the rule:

> Where, as here, the limitation sought to be "read into" a claim already appears in another claim, the rule is far more than "general." It is fixed. It is long and well established. It enjoys an immutable and universally applicable status comparatively rare among rules of law. Without it, the entire statutory and regulatory structure governing the drafting, submission, examination, allowance, and enforceability of claims would crumble. This court has confirmed the continuing life of the rule.

*D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1574 (Fed. Cir. 1985).

8

**IV.     Proposed Constructions for Disputed Claim Terms**

        The Disputed Claim Terms are as follows: (1) "element," (2) "valve," (3) "dispensing section," (4) "coupling," (5) "mixing chamber," (6) "user interface module," (7) "actuate," (8) "server," (9) "configured to actuate the at least one valve to control an amount of the element to be dispensed…based on the user generated beverage product preferences," and (10) "configured to actuate the mixing chamber…based on the user generated beverage product preferences." Although not identified by TCCC, RCDI submits for construction the term "communication module."   Independent claim 11 is reprinted below, with the relevant claim terms in bold and underlined:

        11.     A beverage dispenser comprising:

                at least one compartment containing an **element** of a beverage;

                at least one **valve coupling** the at least one compartment to a **dispensing section** configured to dispense the beverage;

                a **mixing chamber** for mixing the beverage;

                a **user interface module** configured to receive and identity of a user and an identifier of the beverage;

                a **communication module** configured to transmit the identity of the user and the identifier of the beverage to a **server** over a network, receive user generated beverage product preferences based on the identity of the user [an] the identifier of the beverage from the **server** and communicat[e] the user generated beverage product preferences to [a] controller; and

                the controller coupled to the communication module and **configured to actuate the at least one valve to control an amount of the element to be dispensed** and to actuate the mixing chamber **based on the user gene[r]ated beverage product preferences**.

        '377 patent at col. 9, ll. 43-63.

9

### A.      Element

The parties' construction of the term "element" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| element<br><br>(*'377 patent, claims 11 and 23*) | Ordinary meaning.   No construction required.<br><br>Alternatively, "a component" | one of several components of a consumable final product |

"Element" is a term that has an ordinary meaning that is widely understood.  *See Merriam–Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/element (last visited March 9, 2016) (defining "element" as "a particular part of something.") attached as Ex. B.

Even if the Court chooses to construe this term and not ascribe to it its plain meaning, the Court should construe the term to mean simply "a component."  TCCC erroneously argues that the term should be construed as "one of several components", thereby contradicting the '377 patent's specification which discloses "mixing at least one element."   *See* '377 patent, Abstract; *Superguide Corp. v. DirecTV Enters., Inc.,* 358 F.3d 870, 886 (Fed. Cir. 2004) (internal citation omitted) ("We conclude that … the phrase 'at least one of' means 'one or more.' "). In other words, TCCC mistakenly argues that *in every instance* more than one element is required to create a beverage, whereas the Abstract makes clear "one or more" are needed - *i.e.*, in some cases only one element is needed to create a beverage.

Additionally, TCCC's proposal is erroneous because it re-writes the words actually used in the claim – "element of a beverage" – and replaces them with the words "consumable final product," which is broader than the recited "beverage."

The "heavy presumption" that this term carries its ordinary and customary meaning should not be overturned here, and TCCC's proposed construction should be rejected.  Even if the Court construes the term, its construction should conform with RCDI's proposal, which does no violence to the claim language itself and provides a sensible meaning within the context of the remaining claim terms and in view of the specification.

10

## B.      Valve

The parties' construction of the term "valve" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| valve<br><br>(*'377 patent, claim 11*) | Ordinary meaning. No construction required. | a device for controlling the flow of a liquid or other material through a passage |

"Valve" is a term that has an ordinary meaning that is widely understood.  *See Dictionary.com*, http://www.dictionary.com/browse/valve?s=t (last visited March 14, 2016) (defining "valve" as "any device for halting or controlling the flow of a liquid, gas, or other material through a passage, pipe, inlet, outlet, etc.") attached as Ex. C.   Adopting TCCC's proposed construction would simply be an an exercise in redundancy, at best, and in re-writing the claim, at worst.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").   The "heavy presumption" that this term carries its ordinary and customary meaning should not be overturned here, and TCCC's proposed construction should be rejected.

## C.      Dispensing Section

The parties' construction of the term "dispensing section" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| dispensing section<br><br>(*'377 patent, claim 11*) | a component for directing the flow of a beverage | a component for directing the flow of a mixed beverage released from the mixing chamber |

TCCC's proposed definition is incorrect because it is too limiting.  The '377 patent discloses a "dispensing section" that "mix[es] the various elements and direct[s] the mixture into a receptacle, e.g., a cup, bottle, can, etc." '377 patent, col. 6, ll. 40-42.  Alternatively, the "mixing chamber [will] mix the various elements before allowing the mixture to flow to the dispensing section."  *Id.,* col. 6, ll. 43-45.  In other words, the '377 patent discloses two types of dispensing sections, a first type containing a mixing chamber and a second type containing no

11

mixing chamber.  TCCC's proposed definition incorrectly limits the mixing chamber to the latter type.  It does not account for a dispensing section that contains a mixing chamber.  As the Federal Circuit has cautioned, a construction that would exclude a preferred embodiment of a patented invention "is rarely, if ever, correct." *Vitronics,* 90 F.3d at 1583; *see also Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1580-81 (Fed. Cir. 1996) (refusing to adopt a claim construction of "stable" that would exclude the preferred embodiment disclosed in the specification).  Accordingly, RCDI's proposed claim construction should be adopted, and the term "dispensing section" should be construed as "a component for directing the flow of a beverage."  TCCC's proposed construction should be rejected.

>    **D.    Coupling**

The parties' construction of the term "coupling" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| coupling<br><br>(*'377 patent, claim 11*) | Ordinary meaning.  No construction required.<br><br>Alternatively, "connecting" | connecting two items |

"Coupling" is a term that has an ordinary meaning that is widely understood.  *See Merriam–Webster Online Dictionary*,  http://www.merriam-webster.com/dictionary/coupling (last visited March 14, 2016) (defining "coupling" as "a device that serves to connect the ends of adjacent parts or objects.") attached as Ex. D.   Here again TCCC's proposed inclusion of the words "two items" is incorrect because it is too limiting when considering the context of the surrounding words of independent claim 11.  *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("The context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms.")  The relevant limitation in claim 11 recites "at least one valve coupling the at least one compartment to a dispensing section configured to dispense the beverage." '377 patent, col. 9, ll. 45-38.  The term "at least one" means "one or more."  *See Superguide Corp. v. DirecTV Enters., Inc.,* 358 F.3d 870, 886 (Fed. Cir. 2004) (internal citation omitted) ("We conclude that … the phrase 'at least one of' means 'one or more.' "). Claim 11 therefore recites "one or more" valves coupling "one

12

or more" compartments. TCCC's proposed claim construction is too limiting because it does not account for a scenario where, for example, three valves are coupled to three compartments. Accordingly, RCDI's proposed claim construction should be adopted, and the term "coupling" should be afforded its ordinary meaning. *See Straight Path IP Group, Inc. v. Sipnet EU S.R.O.,* 806 F.3d 1356, 1360-61 (Fed. Cir. 2015) (finding plain the meaning of the claim language so as to leave no genuine uncertainties on interpretive questions). Alternatively, the term "coupling" should be construed as simply "connecting" to allow for the possibility, as recited in the claims, of connecting more than two items.

### E.   Mixing Chamber

The parties' construction of the term "mixing chamber" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| mixing chamber<br><br>(*'377 patent, claim 11*) | an area where beverage elements are combined | a component for holding and mechanically blending all of the elements required to produce the beverage, when actuated by the controller |

This is TCCC's most tortured construction. It conjures up images of industrial-sized vats with mechanical stirrers, an image wholly divorced of the beverage dispensers known to the general public, let alone those skilled in the art. First, there is absolutely no intrinsic support for TCCC's use of the term "mechanically." That is, no part of the '377 patent requires the beverage elements to be mechanically blended to create a mixture. The word "mechanically" also does not appear in the claims of the '377 patent. Only the word "mechanical" appears on the specification, but not in the context of the beverage dispenser embodiment. *See* '377 patent, col. 4, ll. 24-26 (describing literature referring to "micro electro mechanical systems microvalves"). When discussing the beverage dispenser preferred embodiment, the '377 patent's specification simply provides for: "a mixing chamber to mix the various elements." '377 patent, col. 6, ll. 42-44. The beverage elements are free to combine in a chamber in any way known to one of ordinary skill in the art, and TCCC's requirement that they be mechanically blended is simply too limiting.

13

TCCC's effort to foist this mistaken construction on claim 11 is based on a fundamental misreading of the specification.  The '377 patent's specification describes two main preferred embodiments.  The first illustrates a "system for creating a personalized consumer product" '377 patent, col. 2, ll. 57-58.  The second illustrates a "beverage dispenser." '377 patent, col. 6, ll. 5-6.  With regards to the *product* embodiment disclosed, the specification provides that *the product's mixing chamber* "[o]ptionally … will contain an actuator or a mixing device…powered by an electric motor or by any other means of power." '377 patent, col. 4, ll. 49-55. Plainly speaking, this description evokes images of a receptacle or other housing containing a stirrer to mix various elements.  In contrast, the beverage dispenser's mixing chamber disclosed is simply "a mixing chamber to mix the various elements." '377 patent, col. 6, ll. 42-44.  TCCC's attempt to import a "mechanical" limitation into independent claim 11 is both misguided and legally impermissible. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[It is a] well established principle that a court may not import limitations from the written description into the claims.").

Additionally, TCCC's claim limitation is incorrect because it requires the mixing chamber to mix "all" elements required to produce the beverage, a limitation not found in the claim or in any preferred embodiment of the '377 patent.  Under TCCC's proposed construction, for example, a mixing chamber that combines just the beverage flavors, and injects that mixture into a water and high-fructose corn syrup stream is prohibited.  That construction is too limiting in view of the claim language and the specification.

In contrast, RCDI's proposed construction comports with the specification and should be adopted.

### F.    Communications Module

Although TCCC has not identified the term "communication module" as a term requiring construction, RCDI believes this term should be construed as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| "communication module"<br><br>(*'377 patent, claims 11-22*) | a component that enables communication between the dispenser and a computer on a network | No construction proposed. |

14

The term "communication module" does not have an ordinary meaning. RCDI's proposed construction comports with the '377 patent's specification. The specification discloses "a communication module…for coupling the dispenser to the global computer network…and for enabling communications between the dispenser and a server residing on the Internet." '377 patent at col. 6, ll. 57-61. The "communication module" is capable of receiving and transmitting data and is used by the dispenser to "communicate with the server." *Id.* at col. 7, ll. 56-57; *see also id.* at col. 8, ll. 29-31 ("the server will now transmit via the communications network to the communication module."). The Court should construe this term and adopt RCDI's proposed construction.

### G.     User Interface Module

The parties' constructions of "user interface module" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| user interface module<br><br>(*'377 patent, claims 11-22*) | a component that enables communication between a user and a dispenser | a component of the beverage dispenser for receiving input from the user and for displaying to the user information from the beverage dispenser. |

Claim 11 recites "a user interface module configured to receive [an] identity of a user and an identifier of the beverage." '377 patent, col. 9, ll. 50-51. Only dependent claims 17 and 21 recite "a display for displaying the product preferences to the user." *id.,* col. 10, ll. 19-36. TCCC's attempt to have this Court construe the term to include a "display" violates the doctrine of claim differentiation which forbids limitations contained in a narrower claim from being read into a broader claim, *Kalman v. Kimberly-Clark Corp.,* 713 F. 2d 760, 770 (Fed. Cir. 1983) ("[w]here  some claims are broad and others narrow, the narrow claim limitation cannot be read into the broad"). Indeed, TCCC's proposed construction would render the narrower dependent claims superfluous, an outcome the claim differentiation doctrine prohibits.

RCDI's proposed construction comports with the '377 patent's specification, which discloses a user interface module that "enables communication between the user and the dispenser." '377 patent at col. 6, ll. 61-64. Adopting RCDI's proposed construction allows the user and the dispenser to communicate using "any … type of communication now known or

15

practiced in the future that will allow [users] to identify themselves and/or input information to the beverage dispenser." *See id.* at col. 7, ll. 1-4.   Accordingly, RCDI's proposed construction should be adopted, and TCCC's proposed construction rejected.

### H.    Actuate

The parties' constructions of "actuate" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| actuate<br><br>(*'377 patent, claim 11*) | Ordinary meaning.  No construction required.<br><br>Alternative, "put into action" | to cause a device to operate |

"Actuate" is a term that has an ordinary meaning that is widely understood.  *See Dictionary.com*, http://www.dictionary.com/browse/actuate (last visited Mar 9, 2016) (defining "actuate" as "to put into action") attached as Ex. E.  The error in TCCC's proposal is made plain by substituting TCCC's proposed construction into the claim limitation at issue: "the controller coupled to the communication module and configured **to cause a device to operate** the at least one valve"…and **to cause a device to operate** the mixing chamber ….

TCCC's erroneous construction inserts some unknown piece of machinery or equipment between the controller and the valve, as well as between the controller and the mixing chamber. With respect to the former, TCCC's proposed construction is contrary to the '377 patent's specification, which discloses a "controller of the dispenser [that] will tell the valves that are part of the dispenser how much of each of the separate stored elements to release …" '377 patent, col. 8, ll. 36-41.  This indicates direct communication between the controller and the valves, without an intermediary.  TCCC's construction should therefore be rejected.  Additionally, there is no support in the '377 patent for TCCC's proposed construction requiring a controller to cause an intermediary "device" to then operate the mixing chamber.  Indeed, the '377 patent is clear that it is the controller that "tell[s] the valves…how much of each of the separate stored elements…to release into the mixing chamber." '377 patent, col. 8, ll. 35-40.

RCDI's proposed construction reads: "the controller coupled to the communication module and configured **to put into action** the at least one valve"…and **to put into action** the

mixing chamber ....." RCDI's proposed construction comports with the the '377 patent's specification. RCDI's proposed construction should be adopted, and TCCC's rejected.

**I.     Server**

The parties' constructions of "server" are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| server<br><br>('*377 patent, claims 11, 22, 24-26*) | Ordinary meaning. No construction required. | a computer on which the user's product preferences are stored and that is electronically connected to the communication module |

The term "server" has a widely understood ordinary meaning. *See Dictionary.com*, http://www.dictionary.com/browse/server?s=t (last visited March 16, 2016) (defining "server" as "a computer that performs administration or coordination functions within a network.") attached as Ex. F. The "heavy presumption" in favor of construing patent terms according to their ordinary should not be overturned here, and TCCC's proposed construction should be rejected.

There are two principal flaws with TCCC's proposed claim construction.

"The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *see also Interactive Gift Express, Inc.*, 256 F.3d at 1331 ("[I]n looking to the specification to construe claim terms, care must be taken to avoid reading limitations appearing in the specification . . . into [the] claims"). Claim 11 does not require the server to "store" any data. Claim 11 recites, in pertinent part:

> a communication module configured to transmit the identity of the user and the identifier of the beverage to a server over a network, receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server and communicat[e] the user generated beverage product preferences to controller;

'377 patent, col. 9, ll. 52-58.

17

This limitation describes only the operation of the communication module.  It describes a communication module capable of (a) transmitting certain data to a server and (b) receiving data from the server.  Plainly, there is no limitation on what the server must do with the data between the time it is received and the time it sent to the communication module. For example, a person of ordinary skill in the art could write code to run on a server where said code performs one or more operations on data received from a communication module *without first storing it or storing any computational results* (*i.e.,* real-time operations).  The algorithm would, after processing is complete, transmit the computational result to back to the communication module and the dispenser without storing any data or the result of the computation.   TCCC's proposed limitation, erroneously imported directly from the specification, is plainly too limiting because it precludes this type of transitory computational manipulation of data.  It precludes a server configuration that is efficient and dynamic.  It reduces a server to an inelegant and cumbersome appliance required to store data either before or after processing it.   TCCC imports these non-existent limiting features to the term "server" based on a claim limitation that is directed to a communication module.  TCCC's construction is plainly wrong and should readily be rejected.

Further, TCCC's proposed construction improperly requires the server to be "electronically connected to the communication module." Yet the '377 patent specification discloses a beverage dispenser that includes "a communication module for coupling the dispenser to the … Internet, and for enabling communications between the dispenser and a server residing on the Internet."  '377 patent, col. 6, ll. 57-61.    The contrast between TCCC's construction and the specification is plain.  First, the dispenser's communication module is coupled (*i.e.*, "connected", *see* §B *supra*) to a network (*e.g.,* the Internet), not to the server.  That is, both the communication module and the server are connected to the Internet, and not connected directly to each other.  Second, the word "electronically" does not appear in the '377 patent.  It is therefore wholly without support for TCCC to argue that any connection between the server and the communications module is achieved "electronically."   Indeed, this point obviates the realities of modern communication networks, which allow for devices to be connected to the Internet via either (a) fiber optic cabling that transmit only pulses of light, and

18

not electronic signals, and (b) WiFi adapters, which transmit only radio signals.  *See* '377 patent, col. 7, ll. 43-47.  RCDI's proposed construction should be adopted, and TCCC's rejected.

**J.  Configured to Actuate the at Least One Valve to Control an Amount of the Element to be Dispensed…Based on the User Generated Beverage Product Preferences.**

The parties' proposed constructions are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| configured to actuate the at least one valve to control an amount of the element to be dispensed…based on the user generated beverage product preferences<br><br>(*'377 patent, claim* 11) | capable of causing a valve to dispense an amount of a beverage element into a mixing chamber | able to cause the valve to dispense the amount of each element specified by the user to be included in the final product. |

The claim phrase should not be construed to require the user to specify the *amount* of each element required to constitute a beverage.  No part of the '377 patent requires the user to specify "the amount of each element…to be included" in a beverage.  Quite the opposite.  The specification discloses a server-based "questionnaire" that "prompt[s] information from the user where once completed, the server will use a software algorithm …to determine the user[']s beverage product preferences."  '377 patent, col. 7, ll. 17-25.  After the beverage product preferences are computed, "the controller … will tell the valves … how much of each of the separate stored elements…to release into the mixing chamber…" '377 patent, col. 8, ll. 37-41.  In this process, the user's only input is completing a questionnaire (*i.e.,* a series of questions regarding flavor preferences like lime or vanilla), and not – as TCCC would have this Court believe – specifying the percentage amount of each element to be dispensed to formulate a desired beverage.

Adopting RCDI's proposed claim construction comports with the specification.  Under RCDI's proposed construction, claim 11 would effectively read: "the controller coupled to the communication module and … capable of causing a valve to dispense an amount of a beverage element into a mixing chamber."  RCDI's proposed construction should be adopted, and TCCC's rejected.

19

### K.    Configured to Actuate the mixing chamber…Based on the User Generated Beverage Product Preferences.

The parties' proposed constructions are as follows:

| Claim Term | RCDI Proposal | TCCC Proposal |
|---|---|---|
| Configured…to actuate the mixing chamber based on the user gene[r]ated beverage product preferences<br><br>(*'377 patent, claim* 11) | capable of causing the mixing chamber to mix a beverage responsive to user's beverage product preference | able to cause the mixing chamber to hold and mix the elements of the final product for an amount of time determined by the user, and starting at a time determined by the user |

This claim phrase should not be construed to require the dispenser's mixing chamber to "hold" elements of a beverage.  Further, the claim phrase should not be construed to require a user to determine the "amount of time" during which the mixing chamber needs to (a) "hold" and (b) "mix" the elements of a beverage.  Both constructions are far too limiting and seek to import extraneous limitations that are not required by the claims.  As to the former, neither the claims nor the specification of the '377 patent require the mixing chamber to "hold" beverage elements. In fact, the claim language and the specification discloses a mixing chamber which is transitory in nature.  In other words, a beverage element is injected into the mixing chamber but does not reside in it for any prolonged period of time.  '377 patent, col. 6, ll. 40-44 ("the tubing will le[a]d to a mixing chamber to mix the various elements before allowing the mixture to flow to the dispensing section").  Further, TCCC's attempt to limit the claim phrase to require "an amount of time" to be specified by the user appears to be a misguided attempt to import limitations found in claim 1 into claim 11.  '377 patent, col. 9, ll. 7-13 ("receive…from the server…the specific time and duration for actuating the mixing device").  Nowhere in the specification does the '377 patent disclose a user placing a temporal constraint on the mixing process, and TCCC's attempt to insert one here from a different claim should be rejected. RCDI's proposed construction should be adopted, and TCCC's rejected.

### V.    Conclusion

For the foregoing reasons, the Disputed Claim Terms should be construed as RCDI proposes.

Dated:  March 18, 2016                  Respectfully submitted,

                                        *s/ John C. Carey*
                                        John C. Carey (Fla. Bar No. 78379)
                                        *jcarey@careyrodriguez.com*
                                        Ernesto M. Rubi (Fla. Bar No. 92014)
                                        *erubi@careyrodriguez.com*
                                        CAREY RODRIGUEZ MILIAN GONYA, LLP
                                        1395 Brickell Avenue, Suite 700
                                        Miami, Florida 33131
                                        Telephone:  (305) 372-7474
                                        Facsimile:  (305) 372-7475

                                        *Counsel for RCDI*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 18, 2016 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below via transmission of Notice of Electronic Filing generated by CM/ECF.

By: *s/ Ernesto M. Rubi*

**SERVICE LIST VIA CM/ECF**
**CASE NO.  15-cv-24067-ALTONAGA/O'SULLIVAN**

Jeremy T. Elman (Fla. Bar. No. 37448)
*jeremy.elman@dlapiper.com*
DLA Piper LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8514
Facsimile: (305) 503-7551

A.  Shane Nichols  (*pro hac vice*)
ALSTON & BIRD, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: shane.nichols@alston.com

*Counsel for TCCC*

22