**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-24067-CIV-ALTONAGA/O'Sullivan**

**ROTHSCHILD CONNECTED**
**DEVICES INNOVATIONS, LLC**,

      Plaintiff,

v.

**THE COCA-COLA COMPANY**,

      Defendant.

_____/

<u>**ORDER**</u>

Defendant, the Coca-Cola Company ("Defendant" or "Coca-Cola") filed a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Motion") [ECF No. 34] on March 17, 2016. Plaintiff, Rothschild Connected Devices Innovations, LLC ("Plaintiff" or "RCDI") filed its Opposition to Defendant's Motion to Transfer Venue to Atlanta ("Response") [ECF No. 42] on April 8, 2016. The Court need not wait for a reply to resolve the matter. The Court has carefully considered the parties' written submissions, including exhibits attached to their papers; the record; and applicable law. For the reasons explained below, the Motion is granted.

**I. BACKGROUND**

Plaintiff is a limited liability company incorporated in Texas with a single member, Leigh M. Rothschild ("Rothschild"), who resides in Miami, Florida. (*See* Complaint [ECF No. 1] ¶ 1). Defendant is a Delaware corporation with its principal place of business in Atlanta, Georgia. (*See id.* ¶ 2). Rothschild is an inventor and owns the two patents at issue in this case, which describe customized beverage mixing capability via a user interface. (*See id.* ¶¶ 7–8). Plaintiff argues Defendant's "Freestyle" personalized beverage dispenser infringes on these patents. (*See*

*id.* ¶¶ 15–48).  Defendant argues it created the Freestyle dispenser in Atlanta on its own, between 2004 and 2009, and has not infringed Plaintiff's patents.  (*See* Mot. 2–3; *see generally* Answer . . . [ECF No. 12]).

Defendant requests transfer of the case to the Northern District of Georgia, which encompasses Atlanta, arguing both RCDI and this case have only limited connections to Florida, whereas the witnesses; evidence; and alleged infringement are almost exclusively in and/or concerning Atlanta.  (*See* Mot. 2–4).  Plaintiff argues this case has strong connections to Florida (*see* Resp. 3, 5–6), but rests its opposition mostly on the purported untimeliness of the Motion (*see id.* 6–7), and the argument its choice to litigate in its home forum "weighs heavily, deferentially and conclusively in favor of RCDI, who resides in Florida" (*id.* 2).

## II.  LEGAL STANDARD

Federal law provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (alteration added).  The purpose of section 1404(a) is to "avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money."  *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (citation omitted).  Courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *accord Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).

Once a court finds an action could have been brought in the transferee forum, the court "must weigh various factors . . . to determine if a transfer . . . is justified."  *Windmere Corp. v.*

*Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (alterations added; citation omitted).

Courts should consider at least the following private and public interest factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted); *see also Meterlogic*, 185 F. Supp. 2d at 1300.

It is the movant's burden to establish transfer is warranted. *See Cent. Money Mortg. Co. [IMC], Inc. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000). This burden is high: a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation and internal quotation marks omitted); *accord Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) ("Transfer can only be granted where the balance of convenience of the parties *strongly favors* the defendant." (emphasis in original; citations omitted)). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp.*, 617 F. Supp. at 10 (citations omitted).

## III. ANALYSIS

### A.    Timeliness

Plaintiff argues the Motion is untimely because it was not brought with "reasonable promptness." (Resp. 6 (citing *In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010))). In *Wyeth*,

the court denied transfer of a case that had gone on for 17 months prior to the motion to transfer, finding the transfer would waste judicial resources already expended. *See* 406 F. App'x at 476–77. Here, Defendant sought transfer four and a half months after the filing of the Complaint — roughly a quarter as long as in *Wyeth* — and soon after the parties reached an impasse in mediation. (*See* [ECF No. 31]). Additionally, as discussed below, the Court does not find transfer would waste judicial resources, as few resources have been expended to date and virtually no duplication of effort will be required. Thus, the Court disagrees with Plaintiff's assertion "the facts of this case lead[] to the ineluctable conclusion that Coca-Cola's motion to transfer was *not* timely filed" (Resp. 6 (alteration added; emphasis in original)), and considers the Motion on the merits.

### B.    The Section 1404(a) Analysis

#### 1. This Action Might Have Been Brought in the Northern District of Georgia

An action might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable to service of process in the transferee forum. *See Meterlogic*, 185 F. Supp. 2d at 1299. Defendant argues this action could have been brought in the Northern District of Georgia because Coca-Cola's principal place of business is in Atlanta, Georgia. (*See* Mot. 5–6). Plaintiff does not explicitly address this point, and therefore effectively concedes it. This preliminary inquiry being satisfied, the Court turns to an examination of the remaining factors.

#### 2.    The Private Interest Factors Weigh in Favor of Transfer

The next consideration is whether transfer would be for the convenience of the parties and witnesses and in the interest of justice. "Private [interest] factors . . . include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel

testimony, the possibility of view of [the] premises, and the enforceability of a judgment." *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009) (alterations added) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008)).  "These factors are not exhaustive, and the district court should be flexible in applying them." *Wilson*, 590 F.3d at 1270 (citing *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381–82 (11th Cir. 2009)).

a. *Weight Accorded Plaintiff's Choice of Forum*

In balancing the factors, the Court must account for the "strong presumption against disturbing . . . [a plaintiff's] initial forum choice." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 784–85 (D.C. Cir. 1980) (alterations added)).  Yet courts accord plaintiffs less deference "when the operative facts underlying the action occurred outside the district chosen by the plaintiff." *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-CIV, 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002) (citation omitted).  A plaintiff's choice also deserves less weight when the plaintiff resides outside the forum. *See Soler v. Indymac Mortg. Servs.*, No. 14-CIV-22541, 2015 WL 3952620, at *3 (S.D. Fla. June 29, 2015) (noting where plaintiff does not reside in the forum state and seeks to represent a putative nationwide class, the general presumption in favor of a plaintiff's forum choice remains neutral).

Defendant argues little deference is owed to Plaintiff's choice of forum because Texas, not Florida, is RCDI's home forum.  (*See* Mot. 6–7).  Further, Defendant argues patent infringement cases brought somewhere other than a plaintiff's home forum are often transferred to the site of the defendant's center of management, development, testing, research, production, and marketing — where most of the operative facts likely are found.  (*See id.* 6 (citing

*Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, No. 14-22652-CIV, 2015 WL 224952, at *6 (S.D. Fla. Jan. 15, 2015) ("*RSRI*"))).

Plaintiff insists "RCDI is a citizen of Florida that has sought judicial relief in its home district." (Resp. 10). "Infecting Coca-Cola's entire transfer analysis is the faulty premise that Miami, Florida is not RCDI's home. That assertion, however, is wrong. It disregards the rule of law that an LLC is deemed a citizen of the state where its members are citizens — not where the LLC was formed." (*Id.* 8 (citing *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004))). Because Rothschild is the sole member of RCDI and a long-time resident of Miami, Plaintiff concludes "RCDI's formation in Texas is thus irrelevant." (*Id.* 9). Similarly, Plaintiff would have the Court believe RCDI's recent filing of 59 patent cases in the Eastern District of Texas "of absolutely no relevance here." (*Id.*).

The argument concerning RCDI's citizenship is misplaced here; in making it, Plaintiff plainly conflates venue and jurisdiction. Plaintiff asserts "[r]egardless of the state where it is organized, an LLC is deemed a citizen of the state where its members are citizens." (*Id.* 4 (alteration added) (citing *Rolling Greens MHP, L.P.*, 374 F.3d at 2022)). In fact, Plaintiff does not just cite, but even directly quotes *Rolling Greens*, resulting in the following excerpt from the Response revealing the argument's shortcoming: "'This circuit has not previously decided how to determine the citizenship of a limited liability corporation *for diversity jurisdiction purposes*. We do so now. . . .' RCDI is thus deemed a citizen of Florida *for venue purposes* . . . ." (*Id.* (alterations and emphases added) (quoting 374 F.3d at 1022)). This is flatly incorrect; diversity jurisdiction is clearly not at issue here, so *Rolling Greens* is completely inapplicable. Citizenship for diversity purposes is separate from citizenship for venue.

Under 28 U.S.C. section 1391(c), titled "Residency," "for all venue purposes," "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, . . . if a plaintiff, *only in the judicial district in which it maintains its principal place of business*." *Id.* § 1391(c)(2) (alteration and emphasis added). Accordingly, courts explicitly ignore the citizenship of a limited liability corporation's membership in determining citizenship for venue. *See*, *e.g.*, *Brownsberger v. Gexa Energy, LP*, No. 10-CV-81021, 2011 WL 197464, at *5 n.3 (S.D. Fla. Jan. 20, 2011) (internal citations omitted), *aff'd sub nom. Brownsberger v. Nextera Energy, Inc.*, 436 F. App'x 953 (11th Cir. 2011). Nonetheless, Plaintiff writes, "[i]n fact, the Texas Secretary of State's records reflect Mr. Rothschild's Florida address," as if this document vindicates its position rather than defeat it. (Resp. 9 n.1 (alteration added) (citing Ex. 2 ("Corporate Filings") [ECF No. 34-4] 3)). Instead, while that record does reflect Rothschild's "Original Address" is in Florida, it clearly lists RCDI — the Plaintiff in this case — as having its original and standard business addresses in Plano, Texas. (*See* Corporate Filings 2). Consequently, the Court accords Plaintiff's forum choice little deference, and this factor does not strongly weigh against transfer.[1]  *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, No. 14-20529-CIV, 2014 WL 3673314, at *6 (S.D. Fla. July 23, 2014).

   b.   *Convenience of Witnesses and Limitations on Compelling Appearance of Witnesses*

The convenience of party and non-party witnesses is an important factor in the analysis whether to grant a motion to transfer. *See Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008). The Court lacks compulsory process over unwilling witnesses, *see Bell v. Kerzner Int'l Ltd.*, No. 10-23755-CIV, 2011 WL 12656691, at *9

---

[1] Discussed as a separate factor below, Defendant also convincingly argues the locus of operative facts is in the Northern District of Georgia (*see* Mot. 10–11), which provides an additional ground to give diminished deference to Plaintiff's forum selection, *see Moghaddam*, 2002 WL 1940724, at *3.

(S.D. Fla. July 14, 2011), *aff'd*, 503 F. App'x 669 (11th Cir. 2012), and a federal court's subpoena powers are geographically limited, *see* FED. R. CIV. P. 45(c)(1).

Defendant has identified six potential witnesses, at least five of whom are in Atlanta. (*See* [ECF No. 34-1] 5–6). In contrast, Defendant argues Plaintiff has only identified a single potential witness located in this District: Rothschild.[2] (*See* Mot. 9). Of course both parties acknowledge this inquiry revolves more around the relevance of witnesses who would be inconvenienced than just the comparative sizes of the parties' witness lists. *See Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001). Along that line, Defendant argues Rothschild's location is largely inconsequential for this factor, as courts have previously determined his testimony as the inventor is likely to be of little relevance and thus have minimal impact in this analysis. (*See* Mot. 7 (citing *RSRI*, 2015 WL 224952, at *4)). Compared to Defendant's six relevant potential witnesses in Atlanta, Defendant argues this factor weighs in favor of transfer. (*See id.* 8–10).

Plaintiff does not contest the irrelevance of Rothschild's testimony. Instead, Plaintiff only challenges whether Defendant would truly be inconvenienced by transporting its six

---

[2] In a separate section of the Response, despite having previously named only a single potential witness in the District, Plaintiff raises the prospect of calling Royal Caribbean Cruises, Ltd. ("RCCL") as a third-party witness residing in Miami — outside the subpoena power of the Northern District of Georgia. (*See* Resp. 14). Plaintiff argues RCCL has "intimate knowledge of the infringing products" and "is a key witness because it has deployed the dispensers throughout its cruise ships." (*Id.*). Plaintiff then attempts to further expand its potential witness list: "Other early adopters of the Freestyle dispenser include Miami Subs Grill and Burger King Corporation, both based in this District, and both of whom have likely made similar modifications to their beverage dispensers. Only this District is vested with the power to issue subpoenas and enforce these witnesses' attendance at trial." (*Id.*).

Assuming RCCL and other dispenser customers have "intimate knowledge" from their involvement as "early adopters," Plaintiff fails to explain how their testimony would be both relevant to this action regarding Coca-Cola's alleged patent infringement, and not duplicative of Coca-Cola's presumably superior knowledge of its own product development. While the language RCCL and others "made similar modifications" insinuates their active involvement in product development (*see id.*), to the extent Plaintiff wishes to make this argument, testimony regarding modifications made by RCCL and other companies would seem relevant only as to legal action regarding their own alleged patent infringements. In short, this argument — even if properly made — does not alter the Court's analysis.

potential witnesses, and questions whether those witnesses have relevant testimony.  (*See* Resp. 10–12).  With regard to the burden, Plaintiff states "[p]arty-controlled witnesses are simply <u>not</u> a legally significant factor on a motion to transfer.  On that basis alone, this factor is either neutral or weighs against transfer." (*Id.* 10 (alteration added; emphasis in original; internal citations omitted)).  Emphasis notwithstanding, Plaintiff misrepresents the holdings of the cases it cites for this proposition.[3]  It also fails to explain how "this basis alone" could result in this factor weighing *against* transfer, as opposed to simply remaining neutral.

As to relevant testimony, Plaintiff argues: "Three of the six witnesses listed by Coca-Cola will purportedly testify about marketing efforts related to the infringing products.  Marketing efforts, even if somehow relevant to the question of infringement, would certainly not qualify as 'key.'" (*Id.* 11 (internal citation omitted)).  The Court agrees marketing is likely of little relevance to this action.[4]  Yet Plaintiff exaggerates how much of the potential testimony relates to marketing.  True, it appears[5] Eric Lewis and Scott Cuppari, both marketing directors for Coca-Cola Freestyle, would be able to testify to little more than marketing.  (*See* [ECF No. 34-1] 6).  But the remaining potential witnesses ostensibly have technical knowledge of the product, including the third witness Plaintiff dismisses as merely a marketing witness, Jennifer Mann;

---

[3] *HollyAnne Corporation v. TFT, Incorporated* does not hold inconvenience to a party's employees is "not a legally significant factor"; rather, it states in dicta "[employees'] location is not as important a factor as it would be if they were not under the defendant's control." 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999) (alteration added).  Similarly, to the extent the other two cited cases speak to this issue, they appear to comment on concerns for a court's subpoena power, not witnesses' relative convenience.  *See Ward v. Kerzner Int'l Hotels Ltd.*, No. 03-23087-CIV, 2005 WL 2456191, at *3 (S.D. Fla. Mar. 30, 2005); *Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 925 F. Supp. 36, 38 (D. Me. 1996).

[4] That said, the Court finds it odd Plaintiff would make this argument just before resting nearly its entire position regarding Defendant's involvement with the District on marketing activities, as discussed below.

[5] The Court agrees with Plaintiff's lament this list includes only job descriptions and areas of knowledge, as opposed to areas of anticipated testimony.  (*See* Resp. 11).  The list is also sloppy: the entry for Scott Cuppari appears to accidentally include an entry for an as-of-yet unnamed "Director of Electronics Systems Group for the Coca-Cola Freestyle," who would seem likely to have relevant testimony but has been omitted.  (*See* [ECF No. 34-1] 6).

while this witness professes to have knowledge of marketing, as a former Vice President and General Manager for Coca-Cola Freestyle, her familiarity with "marketing, promotion, advertising, sales, technical, engineering, operations, and manufacturing related to the Freestyle Dispensing Platform" could well yield relevant testimony.  (*Id.*).

Plaintiff also discounts the value of a finance witness.  (*See* Resp. 11).  Yet even if the finance witness has no relevant testimony, that would still leave three witnesses with relevant testimony in Atlanta, and none in this District.  On balance, then, this factor weighs slightly in favor of transfer.

c.     *Location of Relevant Documents and Relative Ease of Access to Sources of Proof*

Defendant argues this factor weighs strongly in favor of transfer because "'[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'"  (Mot. 8 (alteration added) (quoting *RSRI*, 2015 WL 224952, at *5)).  Indeed, Defendant asserts "[n]one of the documents and other evidence related to the function and operation of the Freestyle accused products are located in Florida.  The vast majority of the evidence that will be produced in this litigation[] is . . . in Atlanta, Georgia."  (*Id.* 9 (alterations added)).

According to Plaintiff, "document production should be complete already" and "has been electronic, using an FTP site for file transfers."  (Resp. 12).  Therefore, "[b]ecause the bulk of the evidence and sources of proof in this matter are already in this District, and because any further production can take place electronically following Coca-Cola's prior procedures, this factor weighs squarely in favor of keeping the case in this District."  (*Id.* (alteration added)).

The Court agrees with Plaintiff's assertion this factor is of greatly diminished value on account of electronic discovery. *See Matthews v. Whitewater W. Ind., Ltd.*, No. 11-24424-CIV, 2012 WL 1605184, at *7 n.6 (S.D. Fla. May 8, 2012); *Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1377 (S.D. Fla. 2011). Nonetheless, Plaintiff completely fails to make any argument supporting its conclusion this factor "weighs squarely" against transfer; Plaintiff does not reference a single item of evidence or documentation in this District,[6] as opposed to significant, if predominantly digital, documentation in Atlanta. This factor is of little significance or slightly favors transfer.

### d.    *Convenience of the Parties*

Defendant argues the Northern District of Georgia is the most convenient forum for itself and contains most of the relevant evidence and witnesses. (*See* Mot. 10). As for Plaintiff's convenience, Defendant argues Atlanta is closer to Plaintiff's place of incorporation, Texas, than is Miami, and "RCDI clearly has no objection against litigating virtually identical claims outside of this District" because recently it "has filed 59 related actions in the Eastern District of Texas." (*Id.*). Thus, Defendant argues this factor favors transfer because the Northern District of Georgia is "far more convenient for Coca-Cola and no less convenient for RCDI." (*Id.*).

The entirety of Plaintiff's Response on this issue asserts Defendant's argument "is incorrect because it is based on a faulty premise. RCDI's residence is Florida, and its formation in Texas is inconsequential. This factor thus weighs against transfer." (Resp. 12–13). As above, Plaintiff is incorrect. And as also mentioned, negating Defendant's arguments — even if successful — only establishes a factor's neutrality; it is not, without more, itself an argument for a factor weighing *against* transfer.

---

[6] As far as can be gleaned from the parties' submissions, to the extent relevant documents currently reside in this District, they do so primarily because they have been produced by Defendant. (*See* Resp. 4).

In a separate section of the Response, Plaintiff also argues Defendant mischaracterizes the nature of the 59 suits in Texas, because they do not *all* involve *both* of the same patents at issue here, and Plaintiff fears Defendant therefore may have given the Court a "false impression" that "the Eastern District of Texas has ample working knowledge of the '377 patent and its claim terms." (*Id.* 6). The Court's conclusion here has nothing to do with the Eastern District of Texas's familiarity with anything; rather, the Court agrees with Defendant these 59 suits in another district reveal Plaintiff is not substantially inconvenienced by patent litigation outside the Southern District of Florida. This factor weighs in favor of transfer.

e.     *Locus of Operative Facts*

Defendant argues the Northern District of Georgia is the locus of operative facts because "[t]he research, design, and development of the Freestyle accused products all occurred primarily at Coca-Cola's headquarters in Atlanta," and "Coca-Cola's employees in Atlanta were responsible for and directed the conception, design, development, and engineering for the overall functionality and technology used in the Freestyle accused products." (Mot. 10–11 (alteration added; record citation omitted)).

Plaintiff claims Defendant "grossly understates its activities in this District." (Resp. 5; *see also id.* 13). As proof, Plaintiff describes in detail how important a market Miami was and is for the Freestyle products, with an emphasis on Defendant's substantial marketing efforts and commercial success in this District. (*See id.* 13). Plaintiff informs the Court Defendant continues to deploy its product in Miami with three partners, has convened focus groups in Miami, and has received media coverage for its marketing efforts. (*See id.*). None of this matters. As Plaintiff itself notes just two pages earlier in its Response while objecting to the relevance of Defendant's proposed witnesses, there is no explanation for why Defendant's

advertising efforts have anything to do with the outcome of this patent action.  (*See id.* 11 ("Marketing efforts, even if somehow relevant to the question of infringement, would certainly not qualify as 'key.'")).  Plaintiff does claim Defendant "hired a design partner" based in Miami (*id.* 13), but provides no indication this company's work was central to project development and/or somehow outweighs the bulk of the design and technical work which for years occurred in, and was managed from, Atlanta (*see* Mot. 9–10).  Whether or not the Court utilizes the "center of gravity"[7] approach, this factor weighs in favor of transfer — and provides another ground for according less deference to Plaintiff's forum selection.  *See Moghaddam*, 2002 WL 1940724, at *3.

> f.    *Relative Means of the Parties*

At first blush, the relative means of the parties appears to weigh in favor of retaining this action, as Defendant is a multinational corporate entity and Plaintiff is not.  (*See* Resp. 14–15).  However, given Plaintiff has filed at least 59 actions outside the Southern District of Florida in the last 14 months alone — in a forum twice as far from Miami as Atlanta — Plaintiff has demonstrated a willingness to litigate patents elsewhere.  (*See* Ex 2. [ECF No. 34-4]).  Accordingly, this factor only marginally weighs against transfer.  *See RSRI*, 2015 WL 224952, at *6.  In sum, the private factors weigh strongly in favor of transfer.

### 3.    The Public Interest Factors Weigh in Favor of Transfer

Public factors include the chosen forum's familiarity with governing law, trial efficiency, and the interests of justice.  *See Manuel*, 430 F.3d at 1135 n.1.  Courts also consider administrative difficulties flowing from court congestion, the local interest in having localized

---

[7] Defendant notes "several district courts" have employed the "center of gravity" test in transfers of patent cases (Mot. 10), including some within this District, *see, e.g.*, *RSRI*, 2015 WL 224952, at *5.  Plaintiff argues the Eleventh Circuit has not adopted this test, so it should not supplant the conventional locus of operative facts analysis.  (*See* Resp. 9).  For this case, this is a distinction without a difference, as Plaintiff fails to show the locus of operative facts lies anywhere but in the Northern District of Georgia.

controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum. *ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, No. 13-80239-CIV, 2013 WL 9827411, at *2 (S.D. Fla. June 14, 2013) (citation omitted).

a. <u>Forum's Familiarity with Governing Law</u>

This factor is of little value regarding an action grounded solely in federal law. Accordingly, it does not weigh against transfer.

b. <u>Trial Efficiency and Interests of Justice in Totality</u>

Defendant maintains court congestion favors transfer because this District has one of the busiest dockets in the country, and thus the interests of justice are not well served by retaining cases that could have been filed elsewhere on less congested dockets and have "virtually no meaningful connection to the District." (Mot. 13). Defendant also argues, "[t]he Northern District of Georgia has a legitimate interest in the outcome of this litigation, because that is where economic harm would result from a finding of liability." (*Id.* (alteration added) (citing *RSRI*, 2015 WL 224952, at *4)). The Court agrees.

Plaintiff insists "[t]rial efficiency and the interests of justice strongly favor keeping the case in this forum." (Resp. 15 (alteration added)). Plaintiff makes a number of arguments on this front, such as expressing concern for duplication of judicial effort. (*See id.*). This last point fails to persuade, as the Court's only substantive involvement to date has been this Order, and the only effort the Northern District of Georgia would be required to duplicate is issuing a scheduling order. Plaintiff focuses more on a transfer's potential effect on timing, arguing "transfer at this stage of the proceedings will result in *significant* administrative delay" and "a total loss of the February 2017 trial date." (*Id.* (emphasis in original)). Plaintiff goes so far as to

suggest transfer would delay trial until November of 2018.  (*See id.*).  This argument is disingenuous.  Plaintiff arrives at this date by assuming, upon transfer, the parties would begin at square one, completely disregarding what discovery and initial claim construction efforts have been completed to date.

Similarly, Plaintiff argues "the ongoing claim construction briefing and the imminence of the *Markman* hearing in just three weeks weigh very heavily against transfer" (*id.* 15), because "transfer to Atlanta would reset not just the trial period, but the entire *Markman* process" (*id.* 16).  Again, this argument rings needlessly melodramatic.  Provided Plaintiff does not shred its briefing and wipe its hard drives upon receipt of this Order, the parties will arrive in Atlanta exactly as prepared for their *Markman* hearing as they are today.  Accordingly, there is no reason why the parties could not advise the Northern District of Georgia of what progress has occurred in this District and even request the same trial date they were given here.  In sum, the public interest factors also weigh in favor of transfer.

*     *     *

Based on the foregoing section 1404(a) analysis, the Court finds both the private factors and the less-important public interest factors weigh in favor of transfer to the Northern District of Georgia.  Particularly in light of Plaintiff's selection of this District rather than its home forum, Defendant has met its burden of establishing the balance of factors strongly favors transfer.

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1.      The Motion **[ECF No. 34]** is **GRANTED**.

CASE NO. 15-24067-CIV-ALTONAGA/O'Sullivan

2.      The Clerk is directed to transfer this proceeding to the Northern District of

Georgia, and mark this case as **CLOSED** in this District.

**DONE AND ORDERED** in Miami, Florida this 15th day of April, 2016.

_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record