**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:16-CV-01241-TWT |
| THE COCA-COLA COMPANY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## <u>DEFENDANT THE COCA-COLA COMPANY'S RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................... 1

II. DISPUTED CLAIM TERMS ............................................ 2

    A.  "element" ............................................................... 2
    B.  "valve" .................................................................. 2
    C.  "coupling" ............................................................. 3
    D.  "dispensing section" ............................................. 3
    E.  "mixing chamber for mixing the beverage" ........... 5
    F.  "user interface module" ....................................... 7
    G.  "actuate" ............................................................... 8
    H.  "server" ................................................................ 9
    I.  "communication module" ..................................... 11
    J.  "configured to actuate the at least one valve to control an amount of the element to be dispensed … based on the user gene[r]ated beverage product preferences" .................................. 13
    K.  "configured … to actuate the mixing chamber based on the user gene[r]ated beverage product preferences" ........................ 15

III. CONCLUSION ............................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*,
  616 F.3d 1249 (Fed. Cir. 2010)..........................................................................4

*Cardsoft, LLC v. Veriphone, Inc.*,
  807 F.3d 1346 (Fed. Cir. 2015)......................................................................7, 8

*Engel Indus., Inc. v. Lockformer Co.*,
  96 F.3d 1398 (Fed. Cir. 1996)...........................................................................4

*Gaus v. Conair Corp.*,
  363 F.3d 1284 (Fed. Cir. 2004).........................................................................4

*Kraft Foods, Inc. v. Int'l Trading Co.*,
  203 F. 3d 1362 (Fed. Cir. 2000)........................................................................8

*Retractable Techs., Inc. v. Becton, Dickinson and Co.*,
  653 F.3d 1296 (Fed. Cir. 2011).........................................................................8

## I.   INTRODUCTION

Plaintiff RCDI's Opening Claim Construction Brief (D.E. 37) represents its attempt to salvage what remains of its infringement case against Coca-Cola by rewriting the claims of the poorly written '377 Patent.  RCDI repeatedly invokes the "heavy presumption" that claim terms are entitled to their plain and ordinary meanings, but then fails to demonstrate whether its own constructions are supported by the intrinsic record – *i.e.*, the patent itself, and its prosecution history.  For the reasons set forth below, Coca-Cola's proposed constructions should be adopted.

As stated in Coca-Cola's Opening Brief, RCDI refused to disclose its proposed constructions prior to the opening brief deadline.  (D.E. 36 at 1.)  Coca-Cola was, therefore, unaware of RCDI's claim construction positions until it received RCDI's Opening Brief.  Where possible, Coca-Cola has withdrawn its opposition to RCDI's proposed constructions, or modified its own proposed constructions to narrow the claim construction issues in dispute.

## II.   DISPUTED CLAIM TERMS

### A.   "element"

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "element" | Ordinary meaning- no construction required.<br><br>Alternatively, "a component" | "a component" |

Coca-Cola consents to RCDI's proposed alternative construction of "element" as "a component."

### B.   "valve"

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "valve" | Ordinary meaning- no construction required. | "a device for controlling the flow of a liquid or other material through a passage" |

There is no material dispute regarding the construction of the term "valve." As RCDI noted in its Opening Brief, the "ordinary meaning" of the term "valve" is "any device for halting or controlling the flow of a liquid, gas, or other material … through a passage."  (RCDI Opening Brief at 11).  RCDI's dictionary definition is virtually identical to the construction proposed by Coca-Cola.  Accordingly, Coca-Cola proposes that the Court construe the term "valve" to mean "a device for controlling the flow of a liquid or other material through a passage."

2

### C.   "coupling"

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "coupling" | Ordinary meaning- no construction required.<br><br>Alternatively, "connecting" | "connecting" |

Coca-Cola consents to RCDI's proposed construction of "coupling" to mean "connecting."  More particularly, the Court should specify that the term "coupling" is used as a verb (present participle) and not a noun.

### D.   "dispensing section"

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "dispensing section" | "a component for directing the flow of the beverage" | "a component for directing the flow of a mixed beverage" |

The parties' dispute regarding this term centers on whether the term "dispensing section" must be broadly construed to include a dispensing section that itself contains a mixing chamber.  As the claim makes clear, a "dispensing section" and a "mixing chamber" are two separate limitations.

RCDI's argument is based on an embodiment in the specification in which the dispensing section "mix[es] the various elements and direct[s] the mixture into

3

a receptacle." (RCDI Opening Brief at 11).  RCDI completely ignores the text of the claim itself, however, in which "dispensing section" and "mixing chamber" are two separate elements.  (*See, e.g*., Claim 11).  Indeed, "[w]here a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct components' of the patented invention." *Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (*quoting Gaus v. Conair Corp*., 363 F.3d 1284, 1288 (Fed. Cir. 2004)).  Thus, because the claim lists "dispensing section" and "mixing chamber" as two separate elements, the two "logically cannot be one and the same." *Engel Indus., Inc. v. Lockformer Co*., 96 F.3d 1398, 1404-05 (Fed. Cir. 1996).  Accordingly, RCDI's argument that Coca-Cola's construction should be rejected because "[i]t does not account for a dispensing section that contains a mixing chamber" (RCDI Opening Brief at 12), necessarily fails.

Coca-Cola's construction, however, which requires that the dispensing section direct the flow of the mixed beverage, is firmly rooted in the claim language and intrinsic evidence of the '377 Patent.  As discussed above, "dispensing section" and "mixing chamber" are two separate and distinct elements of Claim 11 of the '377 Patent.  They are two different components and RCDI's effort to conflate them should be rejected.  *Becton*, 616 F.3d at 1254.  Additionally,

4

as set forth in Coca-Cola's Opening Brief, the specification consistently describes an invention in which the elements required to make a customized beverage are blended together in the mixing chamber before being dispensed to the user through a dispensing section.  (Coca-Cola Opening Brief at 8-10).  Accordingly, Coca-Cola proposes a modified construction of "dispensing section" to mean "a component for directing the flow of a mixed beverage."

E.    **"mixing chamber"**

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
| --- | --- | --- |
| "mixing chamber" | "an area where beverage elements are combined" | "a component for holding and mechanically blending all of the elements required to produce the beverage, when actuated by the controller" |

RCDI's arguments regarding the "mixing chamber" term are confusing, but Coca-Cola understands there to be two central disputes regarding the correct construction of this term: 1) whether the mixing chamber somehow actively mixes the elements; and 2) whether all of the elements are required to be mixed in the mixing chamber.  Coca-Cola submits that its construction, which requires that the mixing chamber *actively* mixes *all* of the elements to produce a final product is correct.

The claim language and intrinsic evidence of the '377 Patent clearly requires that the mixing chamber is more than simply a passive "area where beverage elements are combined," as RCDI proposes.  Indeed, the term "mixing chamber" is used twice in Claim 11 of the '377 Patent.  The second use of the term discloses a controller "to actuate the mixing chamber."  ('377 Patent at 9:59-62).  As RCDI admits, "actuate" means "to put into action," which, when inserted into the language of Claim 11, reads "to put into action the mixing chamber."  (RCDI Opening Brief at 16-17).  In order for the mixing chamber to be "put into action," there must be some component which is active—surely RCDI cannot argue that Claim 11 discloses a controller which "puts into action" a passive housing or receptacle.  Indeed, RCDI specifically argued against Coca-Cola's construction of "actuate" as improperly "insert[ing] some unknown piece of machinery or equipment between … the controller and the mixing chamber."  (RCDI Opening Brief at 16).  It is necessary, therefore, that the mixing chamber itself can be actuated, or put into action, to mix the elements of the beverage.

RCDI provides no support for its own construction of this term, or for its opposition to Coca-Cola's construction, which requires that the mixing chamber mix **all** the elements required to produce a beverage.  Rather, RCDI relies solely on its unsupported conclusion that Coca-Cola's construction is "too limiting in view

6

of the claim language and the specification." (RCDI Opening Brief at 14).   As Coca-Cola discussed at length in its Opening Brief, however, both the claim language and the specification make clear that the mixing chamber is the point at which all of the elements are transferred from separate compartments to be combined.  (Coca-Cola Opening Brief at 10).  Accordingly, the Court should adopt Coca-Cola's construction that the mixing chamber is a "component for holding and mechanically blending all of the elements required to produce the beverage, when actuated by the controller."

      F.      "user interface module"

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "user interface module" | "a component that enables communication between a user and a dispenser" | "a component of the beverage dispenser for receiving input from the user and for displaying to the user information from the beverage dispenser" |

RCDI improperly attempts to broaden Claim 11 of the '377 Patent through its construction of "user interface module."  RCDI argues that Coca-Cola's construction is incorrect under the doctrine of claim differentiation because "[o]nly dependent claims 17 and 21 recite 'a display for displaying the product preferences to the user.'" (RCDI Opening Brief at 15).  However, the doctrine of claim differentiation "is merely a presumption … that does not trump the clear import of

7

the specification." *Cardsoft, LLC v. Veriphone, Inc.*, 807 F.3d 1346, 1353 (Fed. Cir. 2015).  Indeed, the Federal Circuit has repeatedly refused to apply the doctrine of claim differentiation to prevent exactly what RCDI is attempting to do—broaden the claims.  *See, e.g., Cardsoft, LLC*, 807 F.3d at 1353 (because the meaning of the term was "clear in light of the specification and prosecution history, claim differentiation does not change its meaning"); *Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1304-05 (Fed. Cir. 2011); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F. 3d 1362, 1367-68 (Fed. Cir. 2000).

The intrinsic record of the '377 Patent repeatedly discloses that the user interface module both "enable[s] communications between the user and dispenser" by "allow[ing] the user to identify themselves and/or input information" *and*, via a display screen," "relay[s] messages from the controller and/or from a server" back to the user. ('377 Patent at 6:64-7:6); (Coca-Cola Opening Brief at 13).  Thus, the doctrine of claim differentiation cannot trump the clear and unambiguous disclosures of the specification.  Accordingly, Coca-Cola's construction of "user interface module" should be adopted.

G.      **"actuate"**

8

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "actuate" | Ordinary meaning- no construction required.<br><br>Alternatively, "put into action." | "put into action" |

Coca-Cola consents to RCDI's alternative proposed construction of

"actuate" as "put into action."

**H.    "server"**

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "server" | Ordinary meaning- no construction required. | "a computerized database on which the user's product preferences are stored" |

Coca-Cola adapts its proposed construction of "server," and now proposes

that "server" be construed as "a computerized database on which the user's product

preferences are stored."  This construction should be adopted because it is

consistent with and supported by the intrinsic evidence of the '377 Patent.

RCDI ignores the specification of the '377 Patent in an improper attempt to

construe the term "server" in the abstract.  RCDI argues that Coca-Cola's

construction "precludes a server configuration that is efficient and dynamic" or that

"a person of ordinary skill in the art could write code to run on a server where said

code performs one or more operations on data received from a communication module without first storing it or storing any computational results (*i.e.* real-time operations)." (RCDI Opening Brief at 18).  RCDI's assertions may be true in the abstract, but lack any basis in the claims or specification, and are thus irrelevant to the inquiry at hand.  RCDI identifies no support in either the claims or the specification that require or even suggest that the term "server" include a server which is "efficient or dynamic" or "real-time operational."  Indeed, there is none.  Rather, as set forth in Coca-Cola's Opening Brief, the specification repeatedly states that the user's product preferences are **stored** on the server.  (Coca-Cola Opening Brief at 15-16).  Therefore, it is not Coca-Cola's construction that "reduces a server to an inelegant and cumbersome appliance required to store data either before or after processing it," but the intrinsic evidence of the '377 Patent. And it is the use of the term "server" in the intrinsic record that dictates claim construction, rather than some hypothetical possibility.  Coca-Cola's construction, which requires that the server store a user's product preferences, is firmly supported by the intrinsic evidence of the '377 Patent, and should be adopted.

I.      **"communication module"**

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "communication module" | "a component that enables communication between the dispenser and a computer on a network" | "a component of the beverage dispenser for receiving the user's product preferences from the server and for transmitting such user product preference information to the controller" |

Once again, RCDI ignores the express language of Claim 11 in an attempt to broaden the scope of its claims.  As RCDI admits in its Opening Brief, the term "communication module … does not have an ordinary meaning." (RCDI Opening Brief at 15).  However, rather than interpreting the term in the context of the claim, RCDI ignores the claim language and argues instead that its proposed construction "comports with the '377 patent's specification." (RCDI Opening Brief at 15). Ignoring the express claim language is especially improper when construing the term "communication module" because, in this case, the function of the "communication module" is expressly stated in Claim 11:

> a communication module transfigured to transmit the identity of the user and the identifier of the beverage to a server over a network, receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server and communication[sic] the user generated product preferences to the controller.

11

('377 Patent at 9:52-58).  Because RCDI ignores the language of Claim 11, its construction must be rejected.

RCDI's selective reading of the specification is not consistent with the full disclosure of the "communication module" disclosed in the '377 Patent.  As discussed in detail in Coca-Cola's Opening Brief, the specification consistently and unambiguously describes the specific process of the communication module receiving the user product preferences from the server and transmitting them to the controller.  (Coca-Cola Opening Brief at 17).  In fact, each time the term "communication module" is used, the specification describes both: 1) a communication module as a component of the beverage dispenser; and 2) the specific process of the communication module receiving the user product preferences from the server and transmitting them to the controller.  This clearly supports Coca-Cola's proposed construction, which requires that the "communication module" "receive the user's product preferences from the server" and "transmit[] such user product preference information to the controller."  Accordingly, Coca-Cola's construction should be adopted.

12

J.      **"configured to actuate the at least one valve to control an amount of the element to be dispensed … based on the user gene[r]ated beverage product preferences"**

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "configured to actuate the at least one valve to control an amount of the element to be dispensed … based on the user gene[r]ated beverage product preferences" | "capable of causing a valve to dispense an amount of a beverage element into a mixing chamber" | "able to cause the valve to dispense the amount of each element specified by the user to be included in the final product" |

RCDI again relies on a selective and misguided reading of the '377 Patent in connection with this term.  RCDI argues that Coca-Cola's proposed construction, which requires that the controller be configured to "cause the valve to dispense the amount of each element specified by the user to be included in the final product" is incorrect because "[n]o part of the '377 Patent requires the user to specify 'the amount of each element … to be included' in a beverage." (RCDI Opening Brief at 19).  RCDI's argument can only be based on a complete misunderstanding of its own patent.  Indeed, RCDI argues that "the user's only input is completing a questionnaire (*i.e.*, a series of questions regarding flavor preferences like lime or vanilla)."  That user is, therefore, not "specifying the percentage amount of each element to be dispensed to formulate a desired beverage." (RCDI Opening Brief at 19).  RCDI's argument fails for several reasons.

13

First, nothing in Coca-Cola's construction requires a "percentage" amount. To the extent RCDI improperly imported that requirement into Coca-Cola's construction as an additional means to argue for its own construction, RCDI's argument should be rejected.

Second, despite RCDI's assertion that "[n]o part of the '377 Patent requires the user to specify 'the amount of each element … to be included' in a beverage," the specification repeatedly discloses embodiments in which the user can do exactly that—*i.e.*, specify the amount of each element to be included in the user's final beverage.  For example, "[i]n the example of soda, the user can and will determine the amount of carbonation, the amount of sweetness for the beverage, and if any extra flavors, such as lemon or lime, will be added to the beverage." ('377 Patent at 6:20-24); *see also* ('377 Patent at 8:41-46) ("For instance, one specific beverage product preferences (BPP) may cause the dispenser to mix a certain amount of lemon flavoring into a cola beverage.  In another case, a user's beverage product preferences (BPP) could cause the dispenser to release additional sugar into the beverage.")

Finally, RCDI overstates the significance of the "questionnaire" embodiment of the '377 Patent in construing this term.  The "questionnaire" is not "the user's only input" means, as RCDI claims. (RCDI Opening Brief at 19).  The

14

"questionnaire" described in the specification of the '377 Patent is only used in one embodiment, in the event that "the server cannot locate the user's identity or the user's product preferences because the user is unknown to the database." ('377 Patent at 5:34-36).

Accordingly, RCDI's arguments should be rejected and Coca-Cola's construction should be adopted.

**K.** **"configured … to actuate the mixing chamber based on the user gene[r]ated beverage product preferences"**

| Claim Term | RCDI's Proposal | Coca-Cola's Proposal |
|---|---|---|
| "configured … to actuate the mixing chamber based on the user gene[r]ated beverage product preferences" | "capable of causing the mixing chamber to mix a beverage responsive to user's beverage product preference" | "able to cause the mixing chamber to hold and mix the elements of the final product responsive to the user's beverage preferences" |

Having now seen RCDI's proposed constructions, Coca-Cola modifies its proposed construction of "configured … to actuate the mixing chamber based on the user gene[r]ated beverage product preferences." Coca-Cola proposes the term be construed to mean "able to cause the mixing chamber to hold and mix the elements of the final product responsive to the user's beverage preferences." This new proposed construction presents a compromise between the parties' originally proposed constructions.

RCDI's position that the mixing chamber does not "hold" the beverage is baseless.  As an initial matter, RCDI does not support its statement that "the claim language and the specification discloses a mixing chamber which is transitory in nature" with citations from the claims or the specification—nor can it.  Further, RCDI's argument that "a beverage element is injected into the mixing chamber but does not reside in it for any prolonged period of time" is unsupported, even by the section of the patent RCDI cites.  Nothing in Coca-Cola's construction requires that the beverage be held in the mixing chamber for a "prolonged period of time." Coca-Cola's construction simply requires that the elements are **held** in the mixing chamber while they are being mixed.  Even RCDI acknowledges that the elements of a beverage are combined in the mixing chamber. (RCDI Opening Brief at 13-14).  Thus, the elements must necessarily be held in the mixing chamber for at least the period during which they are being mixed.

### III.    CONCLUSION

For these reasons, Coca-Cola respectfully requests that the Court enter a claim construction order in accordance with Coca-Cola's proposed constructions.

Respectfully submitted this day of 6 January 2017.

Dated: January 6, 2017                    ALSTON & BIRD LLP

                                          /s/ A. Shane Nichols
                                          A. Shane Nichols
                                          Georgia Bar No. 542654
                                          ALSTON & BIRD LLP
                                          1201 West Peachtree St. NW
                                          Atlanta, GA 30309
                                          Tel:  (404) 881-7000
                                          Fax: (404) 881-7777
                                          Email: shane.nichols@alston.com

                                          *Attorney for Defendant The Coca-Cola Company*

17

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2017, I electronically filed the foregoing RESPONSIVE CLAIM CONSTRUCTION BRIEF with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record who are deemed to have consented to electronic service.

 *s/ Shane Nichols*
A. Shane Nichols
(Ga. Bar No. 542654)

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

*/s/ Shane Nichols*
A. Shane Nichols
(Ga. Bar No. 542654)
ALSTON & BIRD LLP

*Attorney for Defendant The Coca—Cola Company.*

18