# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:16-CV-01241-TWT |
| THE COCA-COLA COMPANY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC'S
## REBUTTAL CLAIM CONSTRUCTION BRIEF

## **TABLE OF CONTENTS**

I.   REVIEW OF LEGAL STANDARDS ................................................................1

   A.  Claim Limitations May Not Be Imported from the Specification ...............2

   B.  Prosecution History Disclaimer Does Not Apply Unless There is a Clear and Unambiguous Disavowal of Claim Scope by the Inventor .........................3

   C.  Guidelines on the Use of Extrinsic Evidence................................................5

II.  ARGUMENT..........................................................................................................6

   A.  "Element" .....................................................................................................6

   B.  "Valve" .........................................................................................................8

   C.  "Dispensing Section" ...................................................................................9

   D.  "Coupling"..................................................................................................10

   E.  "Mixing Chamber".....................................................................................11

   F.  "Communications Module".........................................................................14

   G.  "User Interface Module".............................................................................16

   H.  "Actuate".....................................................................................................17

   I.  "Server".......................................................................................................18

   J.  "Configured to Actuate the at Least One Valve to Control an Amount of the Element to be Dispensed . . . based on the User Generated Beverage Product Preferences"...........................................................................................20

   K.  "Configured to Actuate the mixing chamber. . .Based on the User Generated Beverage Product Preferences".......................................................22

III.  CONCLUSION ....................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. TorPharm, Inc.,* 300 F.3d 1367 (Fed. Cir. 2002) ...........................4

*Biotech Biologische Naturverpackungen GmbH & Co. KG v. Biocorp. Inc.,*
249 F.3d 1341 (Fed. Cir. 2001)................................................................6

*CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356 (Fed. Cir. 2007) .........................16

*Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560 (Fed. Cir. 1988) ..........2

*Graco Children's Products Inc. v. Kids II, Inc.,* No. 1:13-cv-1183-TWT,
2016 WL 6994114 (N.D. Ga. Nov. 30, 2016) ....................................................3, 5

*Inverness Med. Switz. GmbHv. Princeton* Biomeditech *Corp.,*
309 F.3d 1365 (Fed. Cir. 2002)................................................................4

*KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351 (Fed. Cir. 2000)....................4

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998) .......................... 2, 15

*Liquid  Dynamics Corp. v. Vaughan Co.,* 355 F.3d 1361 (Fed. Cir. 2004)............11

*Middleton, Inc. v. Minn. Mining & Mfg. Co.,* 311 F.3d 1384 (Fed. Cir. 2002).........4

*Motorola, Inc. v. Vtech Commc'ns, Inc.,* No. 5080 5672,
2009 WL 2026137 (E.D. Tex. July 6, 2009) ............................................... 6, 8, 17

*Northern Telecom Ltd. v. Samsung Elec. Co.,* 215 F.3d 1281 (Fed. Cir. 2000).......4

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) ............................... 1, 3, 13

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ...10

*RF Delaware, Inc.  v. Pacific Keystone  Technologies, Inc.,*
326 F.3d  1255 (Fed. Cir. 2003).............................................................11

*Scripps Clinic & Research Foundation v. Genentech, Inc.,*

927 F.2d 1565 (Fed. Cir. 1991)..................................................................2

*ScriptPro LLC v. Innovation Associates, Inc.,* 833 F.3d 1336 (Fed. Cir. 2016) .....13

*Smithkline Diagnostics, Inc. v. Helena Labs, Corp.,*
   859 F.2d 878 (Fed. Cir. 1988)................................................................2

*Spectrum Pharm., Inc. v. Sandoz Inc.,* 802 F.3d 1326 (Fed. Cir. 2015)................19

*SRI Int 'I v. Matsushita Elec. Corp.,* 775 F.2d 1107 (Fed. Cir. 1985) ......................2

*SuperGuide Corp. v. DirectTV Enters., Inc.,* 368 F.3d. 870 (Fed. Cir. 2004)..........1

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996)........... *passim*

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997)................19

In accordance with the Court's Scheduling Order (Doc. 57) and LPR 6.5(b), Plaintiff Rothschild Connected Devices Innovations, LLC ("RCDI") hereby submits its rebuttal claim construction brief in response to Defendant The Coca-Cola Company's ("Coca-Cola") Opening Claim Construction Brief ("Def.'s Br."). Doc. 36.

## I.    REVIEW OF LEGAL STANDARDS

Coca-Cola's recitation of the legal standards fails to acknowledge a cardinal rule of claim construction: claim terms should be accorded their ordinary and customary meaning. *See* Def.'s Br., ¶ III. B.; *see also Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). This is the threshold issue in claim construction, with claims entitled to a "heavy presumption" that they carry their ordinary and customary meaning. *SuperGuide Corp. v. DirectTV Enters., Inc.*, 368 F.3d. 870, 874 (Fed. Cir. 2004). The applicable ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

Coca-Cola's claim construction positions disregard the actual claim language, and repeatedly and incorrectly import limitations appearing in the specification into the proposed construction of each disputed claim term. *See e.g.,* Def.'s Br., ¶ IV. A.

1

("This construction [for element] is consistent with the stated *purpose of the invention* and the use of the term in the specification.")(emphasis added).  In doing so, Coca-Cola violates yet another cardinal rule of claim construction:  prohibiting the importation of limitations into the claims from the specification.  *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (declaring a "well established principle that a court may not import limitations from the written description into the claims.").  In addition to those discussed in RCDI's opening brief, the following authorities are also relevant, or bear additional emphasis, especially in light of Coca-Cola's blatant omission of relevant legal standards and misapplication of the facts.

### A.    Claim Limitations May Not Be Imported from the Specification

Patent claims define the metes and bounds of an invention, not its specification.  *Smithkline Diagnostics, Inc. v. Helena Labs, Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1570-71 (Fed. Cir. 1988); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1122 (Fed. Cir. 1985).  The construction of claims is simply a way of elaborating the normally terse language of the claims, in order to understand and explain, but not to change, the scope of the claims.  *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1580 (Fed. Cir. 1991).  In construing the claims, it is improper to consult "the written description and prosecution history as a threshold step . . . before

any effort is made to discern the ordinary and customary meanings attributed to the words themselves." *Phillips,* 415 F.3d at 1320.  Although "the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Id.* Similarly, a claim interpretation that would *exclude* an embodiment described in the specification is "rarely, if ever, correct." *Vitronics Corp.*, 90 F.3d at 1583. As more fully set forth below, Coca-Cola's construed terms are improper and should be rejected due to its erroneous avoidance of well settled legal principles.

**B.     Prosecution History Disclaimer Does Not Apply Unless There is a Clear and Unambiguous Disavowal of Claim Scope by the Inventor**

As this Court has observed:

> In addition to the specification, the prosecution history may be used to determine if the patentee limited the scope of the claims during the patent prosecution. The prosecution history helps to demonstrate how the patentee and the Patent and Trademark Office ("PTO") understood the patent. However, because the prosecution history represents the ongoing negotiations between the PTO and the patentee, rather than a final product, it is not as useful as the specification for claim construction purposes.

*Graco Children's Products Inc. v. Kids II, Inc.,* No. 1:13-cv-1183-TWT, 2016 WL 6994114, at *1-2 (N.D. Ga. Nov. 30, 2016) (internal citations omitted). Indisputably, a patent's prosecution history is part of its intrinsic record. When referring to such history, an inventor only limits the scope of claims when he or she

*clearly and unambiguously disavows* certain claim coverage.  *KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351, 1356 (Fed. Cir. 2000).

The doctrine of prosecution history disclaimer does not provide that any words appearing in the prosecution history but not in the issued claims are forever banished, especially where such a construction would exclude all embodiments described in the specification. "The prosecution history inquiry asks not what words the patentee discarded, but what subject matter the patentee relinquished or disclaimed." *Abbott Labs. v. TorPharm, Inc.,* 300 F.3d 1367, 1372 (Fed. Cir. 2002).

The Federal Circuit had made clear that arguments made during prosecution to avoid specific prior art are *not* disclaimers of all claim scope.  *Middleton, Inc. v. Minn. Mining & Mfg. Co.,* 311 F.3d 1384, 1388-89 (Fed. Cir. 2002). Likewise, an inventor's discussion of the advantages of his invention is *not* a disavowal of claim scope. *Inverness Med. Switz. GmbH v. Princeton* Biomeditech *Corp.,* 309 F.3d 1365, 1371-72 (Fed. Cir. 2002). In these situations, there is no "clear and unambiguous disavowal" of claim scope. *See Northern Telecom Ltd. v. Samsung Elec. Co.,* 215 F.3d 1281, 1294 (Fed. Cir. 2000) (requiring prosecution history statements cited as narrowing claim scope to have "reasonable clarity and deliberateness").  In light of these exacting standards, and as demonstrated below, Coca-Cola's arguments for prosecution history disclaimer are unavailing and should be rejected.

**C.     Guidelines on the Use of Extrinsic Evidence**

Although Coca-Cola relies on extrinsic evidence, it fails to properly present all necessary steps in using such evidence. Rather, it only provides a cursory review of extrinsic evidence's role in claim construction. The law is well settled that courts may only resort to extrinsic evidence when intrinsic evidence fails to define a claimed term.  Should a court resort to extrinsic evidence, it is accorded less weight and is on the whole less reliable than the words of the patent itself (intrinsic evidence):

> Extrinsic evidence—such as expert and inventor testimony, dictionaries, and learned treatises—is only considered when the claim language remains genuinely ambiguous after considering all of the patent's intrinsic evidence. Although less reliable than the patent and prosecution history in determining construction of claim terms, extrinsic evidence may be used to help the Court understand the technology or educate itself about the invention. In particular, because technical dictionaries collect accepted meanings for terms in various scientific and technical fields, they can be useful in claim construction by providing a better understanding of the underlying technology and the way in which one skilled in the art might use the claim terms. But extrinsic evidence, including dictionary definitions, cannot be used to vary or contradict the terms of the patent claims.

*Graco Children's Products Inc.,* 2016 WL 6994114, at *1-2 (internal citations omitted).

## II.    ARGUMENT

### A.    "Element"

| RCDI | Coca-Cola |
|------|-----------|
| Ordinary meaning.  No construction required.  Alternatively, "a component." | one of several components of a consumable final product |

Contrary to Coca-Cola's argument, "element" – a common word appearing in the claims – should be afforded its ordinary and customary meaning.  Def.'s Br., ¶ IV. A.; *Biotech Biologische Naturverpackungen GmbH & Co. KG v. Biocorp. Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding district court committed no error in declining to construe the claim term "melting" because the meaning of "melting" does not appear to have required construction or to depart from its ordinary meaning.). To deviate from "element's" ordinary meaning, as Coca-Cola urges the Court, the Court must make a threshold determination whether "element" requires such deviation. And whereas here, deviating from "element's" ordinary meaning will be unduly limiting, confusing or redundant, this Court possesses, and should exercise, the power to determine that no construction is necessary.  *Motorola, Inc. v. Vtech Commc'ns, Inc.,* No. 5080 5672, 2009 WL 2026137, at *8 (E.D. Tex. July 6, 2009).

Should the Court proceed past its threshold inquiry, Coca-Cola's proposed construction of "element" is demonstrably incorrect.   Coca-Cola argues the

customized beverage disclosed in the '377 Patent "combines several different *components*." Def.'s Br., p. 6.  (emphasis added).  Even a cursory reading of the '377 Patent reveals the word "components" is used in the specification in the context of a ". . . CPU, a random access memory (RAM), a read only memory (ROM) and input/output (I/O) interface(s) such as a keyboard . . ." U.S. Patent No. 8,417,377 ("'377 Patent"), 3:18-23.  Contrary to Coca-Cola's argument, and common sense, a beverage is not a mixture of CPUs, RAM and I/O interfaces.

Worse, Coca-Cola's proposed construction of "element" is woefully redundant.  If the "components" of a product are referred to as "elements" in the specification – as Coca-Cola asserts – then defining the claim term "element" as a "component" is simply an exercise in repetition.  Coca-Cola's proposed construction simply adds no meaning to the claim term.

In fact, as explained in RCDI's Opening Brief (Doc. 37), Coca-Cola's proposed definition is illogical because it requires that in *every* instance, more than one element must be used to create a beverage, when obviously a beverage can consist of just one element such as plain Coca-Cola.

Coca-Cola's proposed construction should be rejected.  The term "element" should be afforded its ordinary and customary meaning.

**B.**     **"Valve"**

| RCDI | Coca-Cola |
|---|---|
| Ordinary meaning. No construction required. | a device for controlling the flow of a liquid or other material through a passage |

Coca-Cola's "valve" construction is unduly limiting, confusing, and redundant, and this Court should reject it in favor of the term's ordinary meaning. Def.'s Br., ¶ IV. B.; *Motorola, Inc.,* 2009 WL 2026137, at *8. Coca-Cola's proposed construction is confusing and incorrect because it combines necessarily the function of a "valve" with the function of a "controller." Each has a different function in the context of the '377 Patent.

Even when, as in a preferred embodiment, the "[valves] and controller are fabricated on a single integrated circuit chip," they are *separate* elements of a beverage dispenser. '377 Patent, 4:34-37. Moreover, Coca-Cola has reversed the roles of valves and controllers. The '337 Patent clearly states that valves are "controlled by a controller **212**, e.g., a microprocessor" – and valves themselves do not contain any control logic or semantics. '377 Patent, 4:23-25. Put another way, controllers control valves. Coca-Cola twists the roles and proposes that valves control. Valves exist separately from controllers and their control function – they are not one and the same. Because Coca-Cola's erroneous construction would imbue the

valve with "control" capabilities explicitly allocated to the "controller," its proposed construction is erroneous and should be rejected.

### C.    "Dispensing Section"

| RCDI | Coca-Cola |
|------|-----------|
| a component for directing the flow of a beverage | a component for directing the flow of a mixed beverage released from the mixing chamber |

Concerning "dispensing section," Coca-Cola's argument widely misses the mark. Coca-Cola relies heavily on the specification and Figure 4 of the '377 Patent to arrive at a construction of the dispensing section as being placed in a location *downstream* from the mixing chamber.  This is clearly incorrect.

There are two distinct types of "dispensing section[s]" in the beverage dispenser taught by the '377 Patent's specification.  On the one hand, there is a "dispensing section" that incorporates a mixing function.  '377 Patent, 6:42-44 ("[T]he dispensing section will mix the various elements and direct the mixture into a . . . cup.").  On the other hand, there is a "dispensing section" that simply receives a "flow" from a "mixing chamber," located somewhere *upstream* in the beverage dispenser. '377 Patent, 6:42-44 ("[T]he tubing will lead to a mixing chamber to mix the various elements before allowing the mixture to flow to the dispensing section."). Coca-Cola's construction fails to account for the embodiment in which the

9

dispensing section mixes "the various elements." *Vitronics Corp.*, 90 F.3d at 1583 (holding that a claim interpretation that would *exclude* an embodiment described in the specification is "rarely, if ever, correct.").

Unlike Coca-Cola's construction, which arbitrarily chooses one type of dispensing section configuration and excludes another taught by the specification, RCDI's proposed construction accounts for the possibility of both. Accordingly, RCDI's proposed construction should be adopted, and Coca-Cola's construction should be rejected.

### D.   "Coupling"

| RCDI | Coca-Cola |
|------|-----------|
| Ordinary meaning. No construction required. Alternatively, "connecting." | "connecting two items" |

Because RCDI argues that the term "coupling" should be afforded its ordinary meaning, and Coca-Cola argues that it should be construed, the Court must first determine whether it has a duty to construe the term.

Should the Court determine it has a duty to construe "coupling," Coca Cola's proposed construction is demonstrably incorrect and should be discarded because it fails to "stay true to the claim language and most naturally aligns with the patent's description of the invention." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). In fact, it contradicts the very words of the claim.

Claim 11 provides "at least one valve coupling the at least one compartment." '377 Patent, 9:46-47. Coca-Cola's proposed construction fails to account for the scenario contemplated by the claim language where, for example, *one* valve is coupled to *more than one* compartments. *Vitronics Corp.*, 90 F.3d at 1583 (holding that a claim interpretation that would *exclude* an embodiment described in the specification is "rarely, if ever, correct.").

Coca-Cola's misplaced reliance on extrinsic evidence in support of its erroneous construction should likewise be rejected because where the language of a patent claim is clear and unambiguous, it is erroneous to rely on extrinsic evidence to limit the claim. *Liquid Dynamics Corp. v. Vaughan Co.,* 355 F.3d 1361, 1368 (Fed. Cir. 2004); *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.,* 326 F.3d 1255, 1264 (Fed. Cir. 2003).

### E.    "Mixing Chamber"

| RCDI | Coca-Cola |
|---|---|
| an area where beverage elements are combined | a component for holding and mechanically blending all of the elements required to produce the beverage, when actuated by the controller |

Here, once again, Coca-Cola's proposed construction improperly limits the claim.   It implicitly assumes that solubility and homogenous mixtures (*i.e.,*

beverages) can only be achieved through the *mechanical* blending of ingredients. Neither the word "blend" nor the word "mechanically" appear anywhere in the claims, specification or prosecution history of the '377 Patent. The beverage dispenser embodiment disclosed in the specification discusses the mixing chamber in the following way:

> The dispensing section **409** will mix the various elements and direct the mixture into a receptacle **411**, e.g., a cup, bottle, can, etc. Alternatively, the tubing **406** will led [sic] to a mixing chamber **410** to mix the various elements before allowing the mixture to flow to the dispensing section **409**. The dispenser **400** will further include a water carbonation unit **418** to carbonate the beverage and refrigeration system **420** to cool the beverage and/or elements contained within the housing **402** of the dispenser **400**. . . .
> . . . .
> Once the dispenser has the user's beverage product preferences (BPP), the controller **412** of the dispenser will tell the valves **408** that are part of the dispenser how much of each of the separate stored elements (e.g., flavors, carbonation, etc.) to release into the mixing chamber **410** or dispensing section **409** (step **520**).

'377 Patent, 6:40-47, 8:36-41.

Coca-Cola's proposed construction forecloses the possibility that elements are mixed in any number of non-mechanical ways. For example, elements could be mixed due to pressure, temperature, or a number of other variables. Yet Coca-Cola's biggest leap is that "by disclosing a controller that actuates the mixing chamber," the '377 Patent *requires* the mixing chamber to "mechanically blend" the ingredients. Def.'s Br., p. 11. First, as RCDI has stated, the term "actuate" does

not carry a physical mechanical meaning; rather, it means simply to put a thing into action, as its ordinary meaning implies.  *See* § H ("Actuate"), *infra*.  Second, the controller in the beverage dispenser embodiment is "configured to actuate the mixing chamber."  '377 Patent, 4:50-57.  In other words, the controller does not actuate a mechanical arm *in* the mixing chamber, but rather the mixing chamber itself.

The final point on this issue is illustrative of Coca-Cola's fundamental misunderstanding of the '377 Patent.  There are two distinct embodiments in the specification of the '377 Patent:  (a) a product and (b) a beverage dispenser.  The preferred embodiment disclosure for the product does describe a mixing chamber which "will contain an actuator or mixing device . . ." '377 Patent, 4:48-57.  But the mixing chamber for the product and the mixing chamber of the beverage dispenser are not the same.  Rather, the mixing chamber present in the beverage dispenser simply operates to "mix the various elements" before allowing the mixture to flow to the dispensing section.  '377 Patent, 4:50-62.

In conflating the two embodiments, Coca-Cola commits two fatal errors.  First, it runs afoul of the Federal Circuit's warning against confining claims to the embodiments disclosed in the specification.  *Phillips*, 415 F.3d at 1312 (internal citations omitted).  Second, Coca-Cola's focus on one particular embodiment in the

specification cannot limit the invention "where that specification expressly contemplates other embodiments or purposes." *ScriptPro LLC v. Innovation Associates, Inc.,* 833 F.3d 1336, 1341 (Fed. Cir. 2016).

RCDI's proposed construction should be adopted, and Coca-Cola's proposed construction rejected.

### F.   "Communications Module"

| RCDI | Coca-Cola |
|------|-----------|
| a component that enables communication between the dispenser and a computer on a network | a component of the beverage dispenser for receiving the user's product preferences from the server and for transmitting such user product preference information to the controller |

As an initial matter, almost a year ago RCDI propounded discovery to Coca-Cola requesting Coca-Cola's proposed construction, on an element by element basis, of claim 11 of the '377 Patent.  Coca-Cola identified a number of claim terms but did not identify "communications module" as a term requiring construction.

Nevertheless, the construction Coca-Cola proposes now is plainly erroneous. Although the plain language of claim 11 specifically requires the communications module to (1) "transmit the identity of the user and the identifier of the beverage to a server"; (2) "receive user generated beverage product preferences . . ."; and (3) communicate "the user generated beverage product preferences" to the controller,"

14

Coca-Cola's proposed construction adopts only functions (2) – (3) above, and wholly discards the function (1) of transmitting of a user's identity and beverage identifier.   That alone should merit a ready rejection of Coca-Cola's proposed construction, as specifically contradictory to the actual claim language.  *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Coca-Cola is also imprecise in its discussion of the "communication module," going so far as referring to it as a "component."  Def.'s Br., pp. 16-17.  Yet in the opening lines of its brief, Coca-Cola asserts that a user "identifies and combines several different *components* to create a final" beverage.  Def.'s Br., p. 5 (emphasis added).  A communication module certainly cannot be considered a "component" of a beverage.  Therefore, the use of the term "component" in Coca-Cola's construction creates confusion and is erroneously imprecise.

Finally, and as it does continuously through its brief, Coca-Cola errs by attempting to import embodiments in the specification into the claim.  *See e.g.,* Def.'s Br., p. 17 ("Figure 4 also shows the communication module as being enclosed in the house of the beverage dispenser . . .").  *Laitram Corp.*, 163 F.3d at 1347 (declaring a "well established principle that a court may not import limitations from the written description into the claims.").  Again, the claim language clearly does not include any limitation regarding the physical location of the communication

15

module.  Coca-Cola's proposed construction seeks to improperly import limitations

into the claim from the specification, is therefore too limiting, and should be rejected.

### G. "User Interface Module"

| RCDI | Coca-Cola |
|---|---|
| a component that enables communication between a user and a dispenser | a component of the beverage dispenser for receiving input from the user and for displaying to the user information from the beverage dispenser |

Coca-Cola first argues that the use of the term "comprising" indicates

conclusively that the user interface module ("UIM") is physically present *within* the

beverage dispenser.  Def.'s Br., p. 11 ("[T]he claim term comprising is synonymous

. . . with . . . having . . . containing . . .").  But Coca-Cola's reliance on the claim term

"comprising" as support for this argument is misplaced.  As the Federal Circuit has

explained:

> In the patent claim context the term "comprising" is well understood to
> mean "including but not limited to." . . .[P]atent claims "use the signal
> 'comprising,' which is generally understood to signify that the claims
> do not exclude the presence in the accused device or method of factors
> [or components] in addition to those explicitly recited."

*CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360–61 (Fed. Cir. 2007).  The

term "comprising" does not indicate the physical location of a component within the

claimed invention.  Certainly, an invention can be "comprised" of various elements

in separate physical or even geographical locations.  Indeed, innovations of the type

16

embodied in the '377 Patent, which make use of wide area networks like the Internet usually include distributed physical components.  Accordingly, although the user interface module is certainly a part of the claimed invention, its placement, shape, or form are unencumbered by the word "comprising."  And, as a corollary, the input to a UIM by a user can occur remotely, or – alternatively - in the same physical housing as the beverage dispenser.  Both are allowed by the actual claim language.  Claim 11 does *not* limit the physical location of the UIM, only its *configuration.*  Therefore, RCDI's construction should be adopted and Coca-Cola's improper construction should be rejected.

### H.    "Actuate"

| RCDI | Coca-Cola |
|---|---|
| Ordinary meaning. No construction required. Alternative, "put into action." | to cause a device to operate |

Because RCDI argues that the term "actuate" should be afforded its plain and ordinary meaning, and Coca-Cola argues for a construction, the Court must first determine whether it has a duty to construe the term, guided by a determination as to whether the proposed construction (as opposed to the plain and ordinary meaning) may be unduly limiting, confusing or redundant. *Motorola, Inc.,* 2009 WL 2026137, at *8.   As more fully discussed in RCDI's opening claim construction brief, substituting Coca-Cola's proposed construction *verbatim* into the claim language

suggests some intermediary "device" resides between the controller and (a) the valve(s) and (b) the "mixing chamber."  This is precisely the type of danger in construing a term in a manner that may render the claim language confusing. Therefore, Coca-Cola's construction should be rejected, and RCDI's proposal should be adopted.

### I.    "Server"

| RCDI | Coca-Cola |
|------|-----------|
| Ordinary meaning. No construction required. | a computerized database on which the user's product preferences are stored and that is in electronic communication with the communication module |

Coca-Cola's claim construction is erroneous on three separate grounds.  First, the word "electronically" does not appear in the claims or the specification of the '377 Patent.  Second, Coca-Cola asserts that because the communication module is configured to transmit data to a server, the server is necessarily "electronically connected" to the communication module.  Def.'s Br., p. 15.  That proposition is incorrect.  A communication module could be configured to transmit data wirelessly or through a series of routers and switches in a wide area network.  None of these configurations requires the module to be "electronically connected" to the server and Coca-Cola does little to explain what "electronically connected" means.  Third, the term is also imprecise because it is confusing as to whether the connection requires

"electricity" or "electronics" or some other type of "connection."

Further, Coca-Cola asserts that because a communication module "receives" data from the server, "it clearly follows" the information must be "stored" on the server. Def.'s Br., p. 15. This is nothing more than a totally unsupported inference that discounts the numerous ways for data to be sent and received. Servers on a network may be configured to act as routers or network repeaters, simply broadcasting data from workstations within a broadcast domain.

Finally, Coca-Cola attempts to make a prosecution history disclaimer argument with regards to the "server" recited in claim 11. Def.'s Br., p. 16. Prosecution history disclaimer exists only when an applicant during prosecution either makes an argument evincing a clear and unmistakable surrender of subject matter or narrows a claim "to avoid the prior art, or otherwise to address a specific concern that arguably would have rendered the claimed subject matter unpatentable." *Spectrum Pharm., Inc. v. Sandoz Inc.,* 802 F.3d 1326, 1337 (Fed. Cir. 2015) (internal citations omitted) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30-31 (1997)). The arguments made here concern the "communication module" recited in claim 11, not the server. In other words, the patentee argued that the "prior art did not disclose or suggest a <u>communication module</u> . . ." configured in a certain manner. Def.'s Br., p. 16 (emphasis added).

Therefore, no clear and unmistakable surrender of subject matter, as it relates to the recited "server," took place.  The patentee simply amended his claims to address a rejection based on a communication module configuration disclosed by the prior art.  Thus, the prosecution statements do not constitute either a disclaimer, or much less "require" – as Coca-Cola confusingly puts it – that the server "transmit" product preferences, by "retaining" them.  Def.'s Br., p. 16.

The "server" recited in the claims of the '377 Patent is well known.  There is no need to unnecessarily and confusingly construe the term.  Therefore, RCDI's proposed definition should be adopted, and Coca-Cola's definition rejected.

**J.    "Configured to Actuate the at Least One Valve to Control an Amount of the Element to be Dispensed . . . Based on the User Generated Beverage Product Preferences"**

| RCDI | Coca-Cola |
|------|-----------|
| capable of causing a valve to dispense an amount of a beverage element into a mixing chamber | configured to actuate the at least one valve to control an amount of the element to be dispensed … based on the user gene[r]ated beverage product preferences" be construed as "able to cause the valve to dispense the amount of each element specified by the user to be included in the final product |

Coca-Cola asserts that its proposed construction "clarifies" that the elements are dispensed "in the amounts specified by the user's product preferences.  Def.'s Br., p. 18.  Unfortunately, instead of clarifying the claim language, Coca-Cola's

proposal is mystifying. Coca-Cola selectively quotes from the specification without including the most important passage which discusses how the beverage product preferences are generated:

> Referring to FIG. 5, initially, in step **502**, a user will go to a web site residing on a server **104** on the global computer network to register his identity at this site. At the web site, the server **104** will communicate with the user's computer **102** and transmit a questionnaire to the user for the user to fill out via a conventional browser interface, e.g., Microsoft™ Internet Explorer. This questionnaire will prompt information from the user where once completed, the server will use a software algorithm and with standard computer processing power to determine the user's beverage product preferences (BPP) (step **504**).

'377 Patent, 7:15-25.

It is worth repeating that a user interacting with the beverage dispenser has no knowledge of *how much* of each element should be utilized to mix a preferred beverage. In other words, a user does not become involved in the *formulation* of the beverage – that is a role squarely reserved for the internal mechanics of the dispenser. Users simply know what *types* of beverages they enjoy, and it is the algorithm and beverage dispenser's job to produce the final result with the expected consistency, flavoring and quality. The specification readily supports RCDI's proposed construction. '377 Patent, 5:61-6:4 ("The controller will then instruct the [valves] . . . as to the specific amount of fluids and/or solids that should be released into the mixing chamber.") Coca-Cola's erroneous construction should be rejected.

21

### K.    "Configured to Actuate the Mixing Chamber . . . Based on the User Generated Beverage Product Preferences"

| RCDI | Coca-Cola |
|---|---|
| capable of causing the mixing chamber to mix a beverage responsive to user's beverage product preference | able to cause the mixing chamber to hold and mix the elements of the final product for an amount of time determined by the user, and starting at a time determined by the user |

As discussed in detail above, Coca-Cola's proposed construction of a "mixing chamber" is erroneous and should be rejected because the beverage dispenser does not perform any "mechanical" blending. Coca-Cola argues that the "specification . . . makes clear that . . . the controller is configured to cause the mixing chamber to operate by holding and mixing, at a specific start time and for a specific amount of time." Def.'s Br., p. 20. This argument is unsurprisingly devoid of any citation to the '377 Patent's specification.

That is because the word "hold" does not appear in the '377 Patent. Indeed, Coca-Cola cannot deny that those of skill in the art would understand that the mixing process can occur simply by shooting streams of flavor (such as lime oil or Diet Coke syrup) into the carbonated water. And again, it bears repeating that the '377 Patent's specification does not place any type of temporal constraint on the duration of the mixing process. Coca-Cola's proposed construction should be readily rejected.

## III.   CONCLUSION

For the foregoing reasons, the disputed claim terms should be construed as

RCDI proposes.


Dated:  January 6, 2017         Respectfully submitted,


*/s/ John C. Carey*_____
John C. Carey (*pro hac vice*)
*jcarey@careyrodriguez.com*
Ernesto M. Rubi (*pro hac vice*)
*erubi@careyrodriguez.com*
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone:  (305) 372-7474
Facsimile:  (305) 372-7475

Jeffrey T. Breloski
Georgia Bar No. 858291
*jbreloski@atlawip.com*
ATLAWIP LLC
2065 Compton Way
Johns Creek, GA 30022
Telephone:  (706) 593-2865
Facsimile:  (770) 680-2461

*Counsel for RCDI*

## **CERTIFICATE OF COMPLIANCE**

I certify that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1B for documents prepared by computer.


By:  /s/ *John C. Carey*
       John C. Carey (*pro hac vice*)
       Counsel for RCDI

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 6, 2017 a true and correct copy of the

foregoing was electronically filed with the Clerk of the Court using CM/ECF.


By:     <u>*/s/ John C. Carey*</u>
          John C. Carey (*pro hac vice*)
          Counsel for RCDI