# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ROTHSCHILD CONNECTED
DEVICES INNOVATIONS, LLC

Plaintiff,

v.

THE COCA-COLA COMPANY,

Defendant.

Civil Case No.: 1:16-cv-01241-TWT

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ..........................................................................1

II. LEGAL STANDARDS....................................................................1

III. TCCC FAILS TO CARRY THE HEAVY BURDEN OF OVERCOMING
THE STATUTORY PRESUMPTION OF VALIDITY .......................................2

   A.   TCCC's Arguments Regarding the "Identifier of the Beverage"
   Limitation Are Too Late and Too Little...............................................2

      1.   TCCC's Arguments About the "Identifier of the Beverage" Limitation
      Are Waived for Failure to Raise Them Sooner ................................3

      2.   Genuine Issues of Material Fact Preclude Summary Judgment on
      TCCC's Arguments About the "Identifier of the Beverage" Limitation.....7

         a.   The Examiner's Amendment Carries a Weighty Presumption of
         Validity That Alone Precludes Summary Judgment ................................10

         b.   A Person of Ordinary Skill in the Art Would Have Recognized the
         Meaning of the "Identifier of the Beverage" Limitation in the Context of
         the '377 Patent Disclosure...............................................................12

   B.   TCCC's Freestyle Anticipation Argument Fails....................................19

      1.   TCCC's Written Description Argument Has No Merit, and the
      Critical Date for Priority Remains June 20, 2006 ............................20

      2.   TCCC Fails to Carry Its Heavy Burden of Proving by Clear and
      Convincing Evidence the Absence of a Genuine Issue of Material Fact as
      to Whether the Freestyle Anticipated the '377 Patent by the Alleged New
      Critical Date of January 31, 2013..............................................21

   C.   TCCC's Gutwein and Boland Anticipation Arguments Fail................26

      1.   Mr. Curley Provided a Proper Invalidity Analysis................................26

      2.   The Court Should Deny Summary Judgment as to Anticipation by
      Gutwein................................................................................28

         a.   TCCC's SUMF Reveals Genuine Disputes of Material Fact............28

         b.   There Are Genuine Disputes of Material Fact About Whether
         Gutwein Anticipates Dependent Claim 11 .................................29

i.  Limitation 11(b) – "at least one valve coupling the at least one compartment to a dispensing section configured to dispense the beverage" ................................................................29

ii.  Limitation 11(e) – "a communication module configured to transmit the identity of the user and the identifier of the beverage to a server over a network, receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server and communication the user generated beverage product preferences to the controller" ...................................30

(1)  Gutwein does not disclose "communication module configured to transmit the identity of the user and the identifier of the beverage to a server over a network" ...................................................30

(2)  Gutwein does not disclose "communication module configured to . . . receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server" ...................................................31

(3)  Gutwein does not disclose "communication module configured to . . . communicat[e] the user generated beverage product preferences to controller" ...................................................32

iii.  Limitation 11(f) – "the controller coupled to the communication module and configured to actuate the at least one valve to control an amount of the element to be dispensed and to actuate the mixing chamber based on the user generated beverage product preferences" 33

(1)  Gutwein does not disclose "the controller coupled to the communication module" ...................................................33

(2)  Gutwein does not disclose "the controller configured to . . . actuate the at least one valve to control an amount of the element to be dispensed" ...................................................34

(3)  Gutwein does not disclose "and to actuate the mixing chamber based on the user generated beverage product preference" .............35

**c. There are genuine disputes of material fact related to TCCC's argument that Gutwein anticipates at least dependent Claims 13, 17, and 21-23** ........................................................................................35

**i. Claim 13 – "wherein the product preference for at least one user is retrieved from the database based on the user's identity and transmitted to the controller"** .................................................36

**ii. Claims 17 and 21 – "wherein the user interface module is further configured to receive confirmation of the product preference from the user"**37

**iii. Claim 22 – "wherein . . . the communication module is configured to transmit the product preferences to the server"** ...........39

**iv. Claim 23 – "wherein the product preference is a formulation including a predetermined amount of at least one element"** ...............40

**3. The Court Should Deny Summary Judgment as to Anticipation by Boland** ............................................................................................42

**a. As a Preliminary Matter, the Court Has Already Ruled That Boland Does Not Anticipate the '377 Patent** ...........................................42

**b. TCCC Failed to Provide a Prima Facie Case of Anticipation of Independent Claim 11 Under Boland Related to Limitations 11(a), 11(b), 11(c), and 11(e)** ............................................................................42

**i. Limitation 11(a) – "at least one compartment containing an element of a beverage"** ............................................................42

**ii. Limitation 11(b) – Boland does not disclose the valve element or a dispensing section** ..........................................................43

**iii. Limitation 11(c) – Boland does not disclose the valve element or a dispensing section** ..........................................................43

**iv. Limitations 11(e) and 11(f) – Boland does not disclose an "identifier of the beverage" or a "communication module," nor does TCCC provide valid citations to its SUMF** ..........................................44

**(1) TCCC did not provide any valid citations to its SUMF for this limitation** ............................................................................44

iii

(2)  Boland does not disclose an "identifier of the beverage"..........45

(3)  Boland does not disclose a "communication module" ..............46

c.  There are genuine disputes of material fact related to TCCC's argument that Boland anticipates independent Claim 11 .......................46

i.  Limitation 11(e) – "communication module configured to . . . communication the user generated beverage product preferences to controller" .........................................................................................46

ii.  Limitation 11(f) – The parties dispute "the controller coupled to the communication module and configured to actuate the at least one valve to control an amount of the element to be dispensed and to actuate the mixing chamber based on the user generated beverage product preferences"..................................................................47

d.  There are genuine disputes of material fact related to TCCC's argument that Boland anticipates at least dependent Claims 13, 17, and 21-23....48

i.  Claim 13 – "a database for storing product preferences of a plurality of users; wherein the user interface module is further configured to receive an identity of the user, wherein the product preference for at least one user is retrieved from the database based on the user's identity and transmitted to the controller" ...........................49

ii.  Claim 22 – "the communication module is configured to transmit the product preference to the server" .....................................................50

IV. THE COURT SHOULD DENY SUYMMARY JUDGMENT OF NON-INFRINGEMENT...............................................................................................51

A.  Identifier of the Beverage ........................................................52

B.  Communication Module ...........................................................55

C.  TCCC's Arguments Are in Reality an Improper Attempt to Pursue New Claim Construction ........................................................................58

V.  THE COURT SHOULD DENY PARTIAL SUMMARY JUDGMENT AS TO DAMAGES .............................................................................................67

VI. CONCLUSION ............................................................................75

iv

# TABLE OF AUTHORITIES

*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003) ............................................................80

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 12-CV-00630-LHK, 2014 WL 252045, at *3-4 (N.D. Cal. Jan. 21, 2014)...80

*ArcelorMittal France v. AK Steel Corp.*,
    786 F.3d 885 (Fed. Cir. 2015) ....................................................... 56, 57

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) ...........................................................18

*Ascion, LLC v. Ashley Furniture Industries, Inc.*,
    No. 2021-1857, 2022 WL 1197338 (Fed. Cir. Apr. 22, 2022)............................21

*Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*,
    793 F. App'x 896 (11th Cir. 2019)......................................................28

*Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*,
    No. 1:11-CV-1634-HLM, 2015 WL 11142427, at *5 (N.D. Ga. May 21, 2015)15

*Blue Calypso, LLC v. Groupon, Inc.*,
    815 F.3d 1331 (Fed. Cir. 2016) ..................................................... 21, 30

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
    977 F.2d 1555 (Fed. Cir. 1992) ...........................................................20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................10

*Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007) ...........................................................80

*Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*,
   723 F.3d 1376 (Fed. Cir. 2013) ...........................................................70

*ChemFree Corp. v. J. Walter, Inc.*,
   250 F.R.D. 570 (N.D. Ga. 2007) ................................................... 14, 15

*Commonwealth Sci. & Indus. Rsch. Org. v. Buffalo Tech. (USA), Inc.*,
   542 F.3d 1363 (Fed. Cir. 2008) ...........................................................18

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
   868 F2d 1251 (Fed. Cir. 1989) ............................................................85

*Dolly, Inc. v. Spalding Evenflo Cos.*,
   16 F.3d 394 (Fed. Cir. 1994) ...............................................................85

*Donaldson Co. v. Baldwin Filters, Inc.*,
   No. 09-CV-1049 (PJS), 2011 WL 2183179, at *8-9 (D. Minn. June 6, 2011) ....81

*Engel Indus., Inc. v. Lockformer Co.*,
   166 F.3d 1379 (Fed. Cir. 1999) ...........................................................56

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ...........................................................87

*Falko-Gunter Falkner v. Inglis*,
   448 F.3d 1357 (Fed. Cir. 2006) ...........................................................17

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 ....................................................................................87

*Fireman's Fund Ins. Co. v. Videfreeze Corp.*,
   540 F2d 1171 (3d Cir. 1976) ...............................................................11

*Friedman v. Navient Solutions*,

No. 1:19-CV-0083-CC-WEJ, 2019 WL 4751870, at *1 (N.D. Ga. Aug. 27, 2019) ...................................................................................................................59

Garner v. Acuity Brands Lighting, Inc.,
   No. 1:16-CV-0365-LMM-JSA, 2017 WL 10753617, at *14 (N.D. Ga. July 6, 2017) ..............................................................................................................28

Hewlitt–Packard Co. v. Bausch & Lomb Inc.,
   909 F.2d 1464 (Fed. Cir. 1990) ...................................................................79

Hilgraeve Corp. v. Symantec Corp.,
   265 F.3d 1336 (Fed. Cir. 2001) ...................................................................87

Immunex Corp. v. Sandoz Inc.,
   964 F.3d 1049 (Fed. Cir. 2020) ...................................................................17

In re Gosteli,
   872 F.2d 1008 (Fed. Cir. 1989) ...................................................................17

In re Snyder,
   480 F.2d 1376 (C.C.P.A. 1973) ..................................................................20

Intel Corp. v. U.S. Int'l Trade Comm'n,
   946 F.2d 821 (Fed. Cir. 1991) ....................................................................85

Interactive Gift Express, Inc. v. Compuserve Inc.,
   256 F.3d 1323 (Fed. Cir. 2001) ............................................................ 80, 82

Kara Tech. Inc. v. Stamps.com Inc.,
   582 F.3d 1341 (Fed. Cir. 2009) ...................................................................82

Markman v. Westview Instruments, Inc.,
   517 U.S. 370 (1996) .....................................................................................70

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-cv-5341 YGR, 2014 WL 690161, at *6 (N.D. Cal. Feb. 21, 2014) .........15

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003) ...........................................................................86

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011) ....................................................................................... 11, 30

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
   --- F.4th ---, No. 2022-1001, 2022 WL 17814226, at *8 (Fed. Cir. Dec. 20, 2022)
   ...............................................................................................................................31

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...........................................................................82

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...........................................................................82

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) ...........................................................................17

*Pozen Inc. v. Par Pharma., Inc.*,
   696 F.3d 1151 (Fed. Cir. 2012) ..................................................................... 17, 21

*Prisua Eng'g Corp. v. Samsung Elecs. Co.*,
   No. 1:16-cv-21761-KMM, 2018 WL 11352591, at *9-*10 (S.D. Fla. Feb. 15,
   2018) ....................................................................................................................12

*Purdue Pharma L.P. v. Faulding Inc.*,
   230 F.3d 1320 (Fed. Cir. 2000) ..................................................................... 17, 21

*Radio Corp. of Am. v. Radio Eng'g Labs., Inc.*,
   293 U.S. 1 (1934 ..................................................................................................11

*Ralston Purina Co. v. Far–Mar–Co, Inc.,*
  772 F.2d 1570 (Fed. Cir. 1985)) ..........................................................................17

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133 (2000) ............................................................................................10

*Rothschild Connected Devices Innovations, LLC v. Coca-Cola Co.,*
  813 F. App'x 557 (Fed. Cir. 2020) ...................................................................86

*Salazar v. Proctor & Gamble Co.,*
  414 F.3d 1342 (Fed. Cir. 2005) ........................................................................82

*Teashot LLC v. Green Mountain Coffee Roasters, Inc.,*
  595 F. App'x 983 (Fed. Cir. 2015) ...................................................................12

*Toro Co. v. White Consol. Indus., Inc.,*
  266 F.3d 1367 (Fed. Cir. 2001) ........................................................................86

*Twiss v. Kury,*
  25 F.3d 1551 (11th Cir.1994) ...........................................................................10

*United States v. Certain Real & Personal Prop. Belonging to Hayes,*
  943 F.2d 1292 (11th Cir. 1991) ........................................................................11

*Vas-Cath Inc.. v. Mahurkar,*
  935 F.2d 1555 (Fed. Cir. 1991) ................................................................. 17, 30

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,*
  944 F.2d 870 (Fed. Cir. 1991) ..........................................................................80

*Virnetx, Inc. v. Cisco Sys., Inc.,*
  767 F.3d 1308 (Fed. Cir. 2014) ................................................................. passim

*Wi-LAN USA, Inc. v. Ericsson, Inc.,*
  675 F. App'x 984 (Fed. Cir. 2017) ........................................................... passim

**Statutes**

35 U.S.C. § 103 ...........................................................................................15

35 U.S.C. § 112(a) ................................................................................ passim

35 U.S.C. § 132(a) ....................................................................... 12, 18, 19, 20

35 U.S.C. § 271(a) ........................................................................................88

35 U.S.C. § 282(a) ........................................................................................11

U.S. Patent & Trademark Office, Manual of Patent
    Examining Procedure § 1302.04..........................................................19

**Rules**

N.D. Ga. L.R. 56.1(B)(1) ........................................................... 42, 69, 71

**Other Authorities**

U.S. Patent No. 7,762,181........................................................................57

U.S. Patent No. 8,417,377................................................................ 12, 57

## INDEX OF EXHIBITS

| EXHIBIT | SEALED | DESCRIPTION |
|:---:|:---:|:---|
| A | | U.S. Patent No. 8,417,377 |
| B | | TCCC's Supplemental Invalidity Contentions |
| C | | 2022 Deposition Transcript of Peter Wolski |
| D | | 2022 Deposition Transcript of Charles M. Curley |
| E | | Declaration of Charles M. Curley |
| F | ✓ | 2018 Deposition Transcript of Peter Alexander |
| G | | 2018 Opening Invalidity Report of Peter Alexander |
| H | ✓ | 2018 Deposition Transcript of Scott Cuppari |
| I | ✓ | TCCC00154932 |
| J | ✓ | TCCC00154934 |
| K | ✓ | 2022 Opening Damages Report of David Kennedy |
| L | | TCCC Press Release |
| M | | 2022 Responsive Validity Report of Charles M. Curley |
| N | | 2018 Responsive Validity Report of Charles M. Curley |
| O | | 2022 Deposition Transcript of Peter Alexander |
| P | ✓ | Opening Infringement Report of Charles M. Curley |
| Q | ✓ | Rebuttal Infringement Report of Charles M. Curley |
| R | ✓ | Opening Infringement Report of Walter Overby |
| S | ✓ | Rebuttal Infringement Report of Walter Overby |
| T | ✓ | [reserved] |
| U | ✓ | Rebuttal Damages Report of David Kennedy |
| V | | Deposition Transcript of David Kenendy |

## I.   <u>INTRODUCTION</u>

Plaintiff Rothschild Connected Devices Innovations, LLC ("RCDI") sued defendant The Coca-Cola Company ("TCCC") in 2015—over seven years ago— asserting infringement of claims 11-12, 17 and 21-23 (the "Asserted Claims") of RCDI's U.S. Patent No. 8,417,377 (the "'377 Patent"). ('377 Patent, Ex. A.) TCCC moved for summary judgment in 2018, which the Court granted in part, but the summary judgment was reversed on appeal.  Now, on remand, TCCC again moves for summary judgment (Doc. 320-3) (the "Motion")), raising arguments that TCCC did not even try to make last time.  The new arguments fare no better than the old. The Motion should be denied.

## II.   <u>LEGAL STANDARDS</u>

A party seeking summary judgment bears the heavy burden of demonstrating the absence of even one genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "If reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir.1994).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The Court has the discretion "to deny even a well-supported

1

motion for summary judgment, if it believes the case would benefit from a full hearing." *United States v. Certain Real & Personal Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir. 1991).

### III. TCCC FAILS TO CARRY THE HEAVY BURDEN OF OVERCOMING THE STATUTORY PRESUMPTION OF VALIDITY

Section 282(a) of the patent statute states that a patent is presumed valid and the burden of proof is on the party challenging validity:

> A patent shall be presumed valid.  Each claim of a patent . . .
> shall be presumed valid independently of the validity of other
> claims . . . . The burden of establishing invalidity of a patent or
> any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. § 282(a).  A heightened standard of proof applies: clear and convincing evidence, not a mere preponderance of the evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011).  This is a "'a heavy burden of persuasion.'"  *Id.* at 102 (quoting *Radio Corp. of Am. v. Radio Eng'g Labs., Inc.*, 293 U.S. 1, 8 (1934)). Entering judgment as a matter of law for the party having the burden of proof is especially rare and is reserved for extreme circumstances.  *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F2d 1171, 1177 (3d Cir. 1976).

#### A. TCCC's Arguments Regarding the "Identifier of the Beverage" Limitation Are Too Late and Too Little

TCCC argues that the introduction of the "identifier of the beverage" limitation by examiner's amendment renders the claims invalid under the written

description requirement of 35 U.S.C. § 112(a), under the new matter prohibition of 35 U.S.C. § 132(a), and by making the Freestyle dispenser itself prior art to the claims at the time of the amendment.  TCCC cannot raise these arguments for the first time at this stage of the proceedings, and even if it could, material issues of fact preclude summary judgment.

### 1.  TCCC's Arguments About the "Identifier of the Beverage" Limitation Are Waived for Failure to Raise Them Sooner

In the ordinary course of patent litigation, the parties exchange infringement and invalidity contentions, and identify claim terms that warrant construction beyond the ordinary meaning of the words.  A party who fails to identify a theory of invalidity or a claim term requiring construction waives the ability subsequently to raise those issues.  *See, e.g.*, *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x 983, 987 (Fed. Cir. 2015); *Prisua Eng'g Corp. v. Samsung Elecs. Co.*, No. 1:16-cv-21761-KMM, 2018 WL 11352591, at *9-*10 (S.D. Fla. Feb. 15, 2018) (holding defendant waived invalidity argument under § 112 by failing to raise it in invalidity contentions).

TCCC waived its invalidity arguments regarding the "identifier of the beverage" limitation by failing to raise them sooner.  This case was filed in the Southern District of Florida in October 2015 and transferred to this Court in April 2016.  The parties did not exchange infringement and invalidity contentions, because

the Florida local rules did not require them.  But at no time until the present motion for summary judgment—on remand after appeal—did TCCC argue that the "identifier of the beverage" limitation could not be understood.  Claim construction briefing began in the Florida district court in March 2016 (Docs. 36, 37) and was completed in this Court in January 2017 (Docs. 58, 59).  The Court issued its claim construction order in November 2017.  (Doc. 79.)  Perhaps the most hotly contested claim construction concerned the "user interface module" element, which contains the "identifier of the beverage" limitation, *viz.*: "a user interface module configured to receive an[] identity of a user and an identifier of the beverage."  (*See id.* at 13-14.)  At no point in the process did TCCC argue that the "identifier of the beverage" limitation required construction, much less that it could not be construed at all.  The dispute concerned other arguments about the "user interface module" limitation.

That was over five years ago.  In the interim, RCDI appealed a grant of summary judgment that rested largely on the Court's interpretation of the "user interface module" element.  Neither party questioned the limitation "identifier of the beverage," even though the limitation is part of the "user interface module" element that lay at the center of the appeal.  The Federal Circuit reversed, stating: "All the claim requires is that the user interface module be 'configured to' receive the user and beverage identifiers."  (Doc. 251 at 13.)  Despite numerous references to the

4

"identifier of the beverage" and "beverage identifier," the Federal Circuit cast no doubt on the limitation's meaning.  (*Id.* at 5, 6, 11, 12, 13.)

On remand, the parties exchanged infringement and invalidity contentions—at TCCC's request (Doc. 272 at 13:22-14:1)—and engaged in a new round of discovery including revised expert reports and another round of expert depositions. Tucked into TCCC's invalidity contentions was a barebones, unexplained contention that a laundry list of claim terms lacked adequate written description under § 112: mixing chamber; dispensing section; user interface module; controller; actuate the mixing chamber based on the user gene[r]ated beverage product preferences; identifier of a [sic] beverage; and beverage product preferences. (TCCC's Supplemental Invalidity Contentions on Remand, Ex. B at 12.)

Barebones invalidity contentions, unaccompanied by explanation, are insufficient.  "[I]nvalidity contentions serve a function far more important than the mere identity and disclosure of potentially relevant evidence: they explain exactly how the opposing party will use that evidence to invalidate the patents." *ChemFree Corp. v. J. Walter, Inc.*, 250 F.R.D. 570, 573 (N.D. Ga. 2007).  That function would be disserved if parties were "permitted to make initial 'place holder' disclosures regarding infringement or invalidity, then make[] substantial changes or additions to those contentions immediately prior to or after the close of fact discovery." *Id.*  An

invalidity contention based on § 112 must "giv[e] the other party sufficient notice for it to engage in meaningful discovery and preparation of its case," *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 690161, at *6 (N.D. Cal. Feb. 21, 2014), a requirement that is not satisfied if the contention "does not . . . explain in even the most basic terms why [the party] contends that the written specification did not disclose" the claim term in dispute, *id.* Invalidity contentions not sufficiently disclosed are barred from being pursued later in the proceeding. *Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*, No. 1:11-CV-1634-HLM, 2015 WL 11142427, at *5 (N.D. Ga. May 21, 2015); *MediaTek*, 2014 WL 690161, at *1; *ChemFree*, 250 F.R.D. at 253.

TCCC's barebones laundry list of claim terms, unaccompanied by explanation of why each lacks support in the written description, is exactly the kind of placeholder disclosure that this Court held insufficient in *ChemFree*, 250 F.R.D. at 573. Notably, TCCC does not move for summary judgment on any of the other items in the laundry list, underscoring how prejudicial it would be to expect RCDI to have predicted which term among the bevy of decoys was really at stake.

In subsequent expert reports and depositions, TCCC never pursued, and thus abandoned, its barebones § 112 assertion. Its own expert report on invalidity served in March 2022 did not raise any ground of invalidity under § 112, instead raising

only anticipation and obviousness under 35 U.S.C. §§ 102 and 103.  (Doc. 320-23.)
The report noted in passing that the specification "does not specify the scope of 'an
identifier of the beverage'" (*id.* at 24), but the report did not explore that assertion
or develop it into an allegation of invalidity.[1]  At deposition barely a month before
the summary judgment deadline, the same expert confirmed he was not advancing
any theories other than those in his report.  (Wolski Depo Tr.., Ex. C at 68:12-17.)

Now, after seven years of litigation, on remand after appeal, in a second bite
at the summary-judgment apple, and without the parties laying the evidentiary
groundwork, TCCC attempts to argue that the claims are invalid because the
"identifier of the beverage" limitation lacks support in the specification.  It is simply
too late.  TCCC's attempt to inject this entirely new theory into the case should be
denied as waived.

### 2. Genuine Issues of Material Fact Preclude Summary Judgment on TCCC's Arguments About the "Identifier of the Beverage"

---

[1] TCCC's expert report on non-infringement contains a section asserting that the
"identifier of the beverage" limitation lacks support in the written description
(Doc. 321-10 (filed under seal) ¶¶ 62-65), but the same expert admitted at
deposition that he has not made any opinion on invalidity based on written
description, nor any invalidity opinions of any kind.  (Ex. O, 2022 Alexander Dep.
Tr. 93:1-10.)  This underscores the waiver.  It is further proof that TCCC was
aware of the alleged issue, but failed to seek leave to amend its invalidity
contentions or its expert report on invalidity.  Leave would not have been
warranted at such a late stage, but TCCC did not even try.

### Limitation

"'Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date.'" *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1063 (Fed. Cir. 2020) (quoting *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006)).  An applicant "'does not have to describe exactly the subject matter claimed,'" *Vas-Cath Inc.. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (quoting *In re Gosteli,* 872 F.2d 1008, 1012 (Fed. Cir. 1989)), and "the disclosure as originally filed does not have to provide *in haec verba* support for the claimed subject matter at issue," *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000).  Rather, the disclosure need only "describe[] the invention in such a way that it is understandable to a person of ordinary skill in the art." *Pozen Inc. v. Par Pharma., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012); *see also Purdue*, 230 F.3d at 1323 (holding that disclosure need only "convey with reasonable clarity to those skilled in the art that . . . [the inventor] was in possession of the invention" (alteration in original)).  "'[T]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'" *Id.* (quoting *Ralston Purina Co. v. Far–Mar–Co, Inc.,* 772 F.2d 1570, 1575 (Fed. Cir. 1985)).  As the Federal Circuit has instructed:

> We have explained that to satisfy the written description require, the missing descriptive matter must necessarily be present in the original application's specification, such that one skilled in the art would recognize such a disclosure. This requires that the written description actually or inherently disclose the claim element.

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (internal punctuation and citations omitted).

New matter is likewise a question of fact. *Commonwealth Sci. & Indus. Rsch. Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008) ("The question whether new matter has been added to an application is a question of fact."). Technically, the new matter prohibition of § 132 governs patent prosecution procedure and does not constitute an independent defense in patent infringement litigation; rather, new matter arguments in litigation are treated as written description arguments under § 112. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1348 (Fed. Cir. 2010) (*en banc*) ("[Section] 132 is an examiner's instruction . . . . [P]rohibiting adding new matter to the claims has properly been held enforceable under § 112, first paragraph.").

TCCC's written description and new matter arguments are disputed questions of material fact, and ample evidence in this case precludes their resolution on summary judgment.

### a. The Examiner's Amendment Carries a Weighty Presumption of Validity That Alone Precludes Summary Judgment

The patent examiner's determination that the "identifier of the beverage" limitation had support in the specification is entitled to a weighty presumption of validity and is alone sufficient to create a genuine issue of material fact.

As a preliminary matter, TCCC characterizes the "identifier of the beverage" limitation as "new matter that the patent examiner first introduced during prosecution to overcome the prior art." (Doc. 320-3 at 2.) That makes it sound like the examiner acted alone, but patent prosecution does not work that way. The term "examiner's amendment" does not mean the patent examiner made a decision for the applicant; it is simply a mechanism for the applicant to amend the application without filing a formal amendment document. *See* U.S. Patent & Trademark Office, Manual of Patent Examining Procedure § 1302.04 (describing examiner's amendment as necessarily "approved by applicant") [hereinafter, "MPEP"]; *see also* (Curley Depo Tr., Ex. D at 259:9-15 ("[E]xaminers don't – don't dictate patent language. So obviously, the applicant has amended the language and the patent examiner is agreeing to that amendment.").) Thus, the prosecution history in this case shows not only the amendment adding the claim limitation, but that "[a]uthorization for this examiner's amendment was given in a telephone interview with Applicant's representative." (Doc. 320-18 at 176.)

10

The collaborative nature of the amendment does, however, signify the examiner's agreement that the amendment is allowable, which carries with it a determination that the amendment does not contain new matter. *See* MPEP § 2163.06 ("If new subject matter is added to the disclosure, . . . the examiner should object to the introduction of new matter under 35 U.S.C. 132 or 251 as appropriate, and require applicant to cancel the new matter.  If new matter is added to the claims, the examiner should reject the claims under 35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph – written description requirement.").  The examiner's decision that an amendment does not constitute new matter is entitled to a weighty presumption of correctness, and thus is powerful evidence against an argument to the contrary. *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574-75 (Fed. Cir. 1992) ("'[T]he fact that the Patent Office allows . . . an amendment without objection thereto as new matter (within the meaning of Title 35 U.S.C. § 132) is entitled to an especially weighty presumption of correctness.'" (quoting *In re Snyder*, 480 F.2d 1376, 1385 n.5 (C.C.P.A. 1973))).

Here, the examiner's agreement to enter the amendment adding the "identifier of the beverage" limitation, cloaked in an "especially weighty presumption of correctness," is itself evidence precluding summary judgment.  The examiner was duty-bound to reject the claims, not allow them, if the limitation constituted new

11

matter.  His determination evidenced by the record in this case is ample ground for denying summary judgment.

### b. A Person of Ordinary Skill in the Art Would Have Recognized the Meaning of the "Identifier of the Beverage" Limitation in the Context of the '377 Patent Disclosure

TCCC argues that "identifier of the beverage" limitation has no support in the specification.  TCCC is wrong.  While the specification does not recite the limitation verbatim, a person of ordinary skill in the art would have no trouble recognizing the meaning of the limitation in the context of the specification.

The Federal Circuit has made clear that "the disclosure as originally filed does not have to provide *in haec verba* support for the claimed subject matter at issue," *Purdue*, 230 F.3d at 1323, and need only "describe[] the invention in such a way that it is understandable to a person of ordinary skill in the art," *Pozen*, 696 F.3d at 1167. The court has applied these principles in numerous cases.  In *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331 (Fed. Cir. 2016), the Federal Circuit was "troubled" by a Patent Office decision that held claims unpatentable where terms did not appear in the specification, and expert testimony was "abstract and untethered from the context provided" by the patent, *id.* at 1345-46.  In *Pozen*, the defendant argued several claim terms "were added during prosecution," 696 F.3d at 1166, and "there was no description of these limitations," *id.*, but the Federal Circuit affirmed the

district court's decision that a person of ordinary skill in the art would understand the limitations, *id.* at 1166-67.   Perhaps even more precisely over the target, the defendant in *Ascion, LLC v. Ashley Furniture Industries, Inc.*, No. 2021-1857, 2022 WL 1197338 (Fed. Cir. Apr. 22, 2022), had convinced a district court to grant summary judgment on the basis that claim limitations added by examiner's amendment did not appear in the specification.   The Federal Circuit reversed, holding that "a reasonable factfinder could conceivably find that a skilled artisan would understand that the specification discloses" the limitations at issue.   *Id.* at *2.

In the present case, a person of ordinary skill in the art would have no trouble recognizing the meaning of the "identifier of the beverage" limitation in the context of the '377 Patent disclosure.   The '377 Patent discloses two embodiments exemplifying the claimed inventions: a "system . . . for creating a personalized consumer product" (Ex. A at 2:57-58), and a "beverage dispenser" (*id.* at 6:6; *id.* at 6:26-27; *id.* at 6:30).   The product embodiment is a broad version of the invention encompassing various types of products (*see id.* at 2:53-56 (referring to "the mixing of many consumable products, including toothpaste, shampoos, conditioners, beverages, soaps, etc."); *id.* at 4:18-19 (referring to the "elements, e.g., fluids and/or solids, to be mixed to produce the final product")), while the beverage embodiment pertains to one particular type of product, i.e., beverages (*see id.* at 6:33-35 (referring

to the "elements of the beverages, for instance, soda syrup, additional flavorings such as lemon or lime, additional sweeteners for the beverage, etc.")).  In essence, the product embodiment is a genus and the beverage embodiment is a species.

A person of ordinary skill in the art would therefore understand the beverage embodiment not only from reading the description of that embodiment in isolation, but from reading the description of the broader product embodiment, as well as the rest of the disclosure including the abstract and the drawings.  The examiner's statement of reasons for allowance reflects just such an understanding.  (Doc. 320-18 at 176 (describing invention as, inter alia, "[a] beverage or product dispenser which receives beverage or product identifier and a user identity").)

The specification discloses a product identifier in connection with the product embodiment, and a person of ordinary skill in the art would easily understand the beverage identifier to be a beverage-specific version of the product identifier.  The abstract explains that the invention "includes the steps of identifying a product to a server over the network; identifying a user to the server over the network; [and] retrieving the user's product preferences from a database at the server based on the product's identity and user's identity."  (Ex. A at Abstract.)  Figure 3 of the drawings illustrates the invention with a flow chart showing element 304 labeled "IDENTIFY PRODUCT TO SERVER" and element 305 labeled "IDENTIFY USER."  (*Id.* Fig.

3.)  The specification explains various ways that the identification of the product can be accomplished.  (*Id.* at 5:3-22.)  All of these disclosures date back to the original parent application filed in 2006.  And while TCCC complains that the beverage-identifier limitation was added to the claims in 2013, the correlative product-identifier limitation was recited in numerous claims originally filed in 2006.  (Curley Decl., Ex. E at ¶ 8  (reciting, in claims 1, 2-4, 22, 25 and 26, claim terms including "identifying a product," "the product's identity," "the identifying a product step," "an identifier of the product," "the identifier of the product," "an identity of at least one product" and "the identity of the at least one product).

TCCC's own expert defines a person of ordinary skill in the art as highly educated, with significant work experience in the beverage-dispensing field.  (Doc. 320-23 at ¶ 60 (assessing a person of ordinary skill in the art to have "a bachelor degree in engineering or a related field, and at least two years of work experience in an area involving computer networking, user interfaces, and beverage dispensers, especially including the application of computer networking and user interfaces in the post-mix beverage dispensing industry").)  Surely a reasonable jury could find that a person of such education and experience would understand the "identifier of the beverage" limitation to be a simple variant of the "identifier of the product" limitation disclosed in the '377 Patent specification.

Notably, TCCC's argument consists entirely of attorney argument unsupported by expert testimony. As detailed above (*see supra* p. 6-7), the report of TCCC's expert on invalidity did not make ***any*** reference to the written description requirement of § 112, much less assert it as a ground for invalidity. (Doc. 320-23.) Indeed, TCCC's experts have consistently admitted that the priority date governing validity analysis is the June 20, 2006 filing date of the parent application. (Alexander 2018 Depo Tr., Ex. F at ¶ 67); (Alexander 2018 Invalidity Report, Ex. G); (Wolski's 2020 Invalidity Report, Doc. 320-23 at ¶ 70).)

At deposition the month before the summary judgment motion was filed, TCCC's invalidity expert admitted that his report contained no analysis of written description (Wolski Depo, Ex. C at 81-82), that he was not planning to testify about written description at trial (*id.* at 82), and that he was offering no further opinions on invalidity (*id.* at 68.) The expert further testified readily that he understood the "identifier of the beverage" limitation to mean "something that identifies the beverage associated with the user" (*id.* at 145), including "a method, a symbol, a name, some way of identifying a specific beverage" (*id.*) or "any kind of symbolic representation used in common communications" (*id.*), and he agreed it could be "an alphanumeric value" (*id.*), "text" (*id.*) or "a symbol" (*id.*).

TCCC deposed RCDI's validity expert a week later and asked where the

"identifier of the beverage" limitation could be found in the specification.  Despite being tasked with responding to a question that was never raised before, and on which there had been no opportunity to review applicable legal standards, the expert recognized that the specification disclosed the "identifier of the product."  (Curley Depo, Ex. D at 264:6.)  With barely six weeks before the summary-judgment deadline, TCCC failed to ask RCDI's validity expert whether the "identifier of the beverage" limitation rendered the claims invalid, or whether a person of ordinary skill in the art would recognize the "identifier of the beverage" limitation as a simple corollary of the "identifier of the product" disclosure.  (*See* Curly Depo, Ex. D.)

The present motion for summary judgment is therefore the first time in the seven-year history of this case that TCCC has challenged the validity of the '377 Patent based on alleged infirmity of the "identifier of the beverage" limitation. Because TCCC never raised the theory before, RCDI's expert was deprived of the opportunity to offer any opinion on it.  RCDI has accordingly filed herewith a supplemental declaration by its validity expert, Charles M. Curley ("Mr. Curley"), who has over four decades of experience in electromechanical machinery including a wide variety of beverage and other dispensers.  (*See* Curley Dec., Ex. E.)  Mr. Curley's declaration validates RCDI's position that a person of ordinary skill in the art would have no trouble recognizing the meaning of the "identifier of the beverage"

limitation in the context of the '377 Patent disclosure.  (*Id.* ¶¶ 5-10.)  In short, Mr. Curley's opinion is that "[a] person of ordinary skill in the art would have no trouble recognizing the 'identifier of the beverage' limitation as a simple beverage-specific variation of the 'identifier of the product' disclosed and claimed in the original parent application" (*id.* ¶ 9), and that "those of ordinary skill in the art at the time of the invention in 2006 would have understood from the written description that the inventor invented what is claimed and was in possession of the 'identifier of the beverage' aspect of the invention recited in the asserted claims" (*id.* ¶ 10).

The expert evidence before the Court therefore consists of the opinion of RCDI's expert that the "identifier of the beverage" limitation has support in the patent disclosure and would be understood by a person of ordinary skill in the art, and no countervailing opinion of TCCC's expert except that he has no trouble understanding the meaning of the limitation.  As it stands, there is no genuine dispute in the expert testimony; the only opinion is that of Mr. Curley, favoring RCDI.

TCCC should be barred from introducing any supplemental expert testimony on reply, having failed to obtain leave to supplement its invalidity contentions and expert report in the many months that it could have done so prior to filing the motion for summary judgment, and having no basis for showing excusable neglect.  *See Garner v. Acuity Brands Lighting, Inc.*, No. 1:16-CV-0365-LMM-JSA, 2017 WL

10753617, at *14 (N.D. Ga. July 6, 2017) (refusing to consider new declaration filed with reply in support of summary judgment). If TCCC attempts and is permitted to file an inexcusably untimely supplemental expert declaration, RCDI will be entitled as a matter of right to file a sur-reply. *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 901-02 (11th Cir. 2019). The Court should not go down that path in this already-bloated summary judgment proceeding. And there would be no point. Either way, a reasonable jury would be entitled to credit Mr. Curley's testimony and all of the other evidence favoring RCDI, and conclude that a person of ordinary skill in the art would recognize the meaning of the "identifier of the beverage" limitation in the context of the '377 Patent disclosure.

The genuine dispute of material fact as to the "identifier of the beverage" limitation precludes summary judgment on TCCC's newfound theory.

### B. TCCC's Freestyle Anticipation Argument Fails

TCCC argues that the Freestyle dispenser is itself prior art to the '377 Patent, based entirely on TCCC's theory that the "identifier of the beverage" limitation lacked support in the written description of the '377 Patent's parent application filed on June 30, 2006. According to TCCC, the limitation constituted new matter and reset the critical date for prior art to the January 31, 2013 date of the examiner's amendment, at which point the Freestyle dispenser itself anticipated the claims in

suit.

The argument fails for two reasons.  First, TCCC's written description argument has no merit for the reasons discussed above.  (*See supra* Part III(A)(1).) Second, TCCC fails to carry its burden of proving that each and every limitation of the claims was present in the Freestyle before the alleged new January 31, 2013 critical date.  Summary judgment should be denied.

### 1.  TCCC's Written Description Argument Has No Merit, and the Critical Date for Priority Remains June 20, 2006

TCCC argues that the "identifier of the beverage" limitation lacked support in the written description and constituted new matter, that the critical date for prior art is the January 31, 2013 date of the examiner's amendment, and that the Freestyle dispenser itself predates the new alleged critical date (Doc. 320-3 at 23).

For the reasons discussed above, the written description and new matter arguments have no merit.  (*See supra* Part III(A)(1).)  The arguments were waived, and even if they were not, a reasonable jury could find that a person of ordinary skill in the art would have recognized the meaning of the "identifier of the beverage" limitation in the context of the '377 Patent disclosure.  Upon such a finding, the June 30, 2006 priority date of the '377 Patent would stand, and TCCC's Freestyle anticipation argument would fail.  *Cf. Vas-Cath*, 935 F.2d 1555 (reversing finding that claims lacked support in written description of parent application, and reversing

summary judgment because priority date of parent application antedated prior art).

**2. TCCC Fails to Carry Its Heavy Burden of Proving by Clear and Convincing Evidence the Absence of a Genuine Issue of Material Fact as to Whether the Freestyle Anticipated the '377 Patent by the Alleged New Critical Date of January 31, 2013**

"A claim is anticipated only if each and every element is found within a single prior art reference, arranged as claimed." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1323 (Fed. Cir. 2014). Anticipation is a question of fact, *Blue Calypso*, 815 F.3d at 1341, and in view of the presumption of validity and heightened standard of proof (clear and convincing evidence), the burden of proof is a heavy one, all the more so on summary judgment:

> The burden of proof to invalidate Ridge's patent claims is a heavy one – clear and convincing evidence – and it is a burden that rests squarely on Mosaic. *See Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 95, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011). To obtain summary judgment of invalidity, Mosaic's challenge was even greater: to show that no reasonable factfinder, taking the evidence in the light most favorable to Ridge, could do anything other than find clear and convincing evidence of anticipation.

*Mosaic Brands, Inc. v. Ridge Wallet LLC*, --- F.4th ---, No. 2022-1001, 2022 WL 17814226, at *8 (Fed. Cir. Dec. 20, 2022). All that is needed to defeat summary judgment is a genuine dispute about whether a single element of the claim is disclosed in the prior art reference, *see Virnetx, Inc.*, 767 F.3d at 1323, or about what the prior art discloses, *see Wi-LAN USA, Inc. v. Ericsson, Inc.*, 675 F. App'x 984,

988 (Fed. Cir. 2017) ("[T]he parties' experts demonstrate that there is a dispute as to which interpretation [of a disclosure in the prior art reference] is correct.  Such ambiguity is best left for determination by a factfinder.").

TCCC's Freestyle anticipation argument does not even state a claim that would survive a motion to dismiss, let alone carry the especially heavy burden on summary judgment.  The premise of TCCC's theory is that RCDI alleges infringement, and whatever literally infringes if later in time would anticipate if earlier in time.  The problem is that RCDI does not allege that the Freestyle infringed as of the alleged new critical date of January 31, 2013.  Nor could RCDI make such an allegation.  January 31, 2013 is the date of the examiner's amendment; the '377 Patent did not issue until April 9, 2013.  (Ex. A at Title Page.)  RCDI could not and does not allege infringement prior to April 9, 2013, the date the patent issued.  (Ex. A.)  The allegation of infringement therefore does not concede anything as of January 31, 2013.

Having relied on an erroneous assumption about the relevant dates, TCCC makes no real effort to establish that each and every element of the claimed inventions was present in the Freestyle system prior to January 31, 2013.  Like the written description and new matter arguments, the Freestyle anticipation theory is entirely new and untimely, never raised until the motion for summary judgment.  The

theory is found nowhere in TCCC's invalidity contentions, expert report on invalidity, or expert deposition testimony.  (*See supra* Part III(A)(1).)

What little evidence TCCC cites is woefully insufficient.   TCCC cites evidence that the Freestyle was first introduced in 2009, and the Freestyle App was first introduced in 2011.  But that merely begs the question what elements were present in the Freestyle system at those points in time. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (Doc. 321-5 (filed under seal) at 2.) ▮▮▮

▮▮▮▮▮▮▮ (Doc. 321-6 (filed under seal) at 15-16 (▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮) ▮▮▮▮

▮▮▮▮ (Doc. 321-7 (filed under seal) at 3 (▮▮▮▮

▮▮▮▮▮▮▮▮

▮ ▮▮ ▮▮ ▮▮▮ ▮▮ ▮ ▮ ▮▮

▮▮▮▮▮▮▮▮

choices).

User identification did not become possible until the Freestyle App was developed, but that too unfolded over a period of years.  TCCC cites the report of its damages expert, which simply states that the Freestyle App "launched in 2011." (Doc. 321-8 (filed under seal) at ¶ 30.)  But again, that begs the question what the app did at that time.  The expert report claims that the app "allowed users to (i) utilize a location finder to find a nearby dispenser; (ii) to save favorited drinks; (iii) to customize drink mixes to pour; and (iv) offered a loyalty program to incentivize ongoing use of the app." (*Id.*)  The proffered basis for that claim is a passage from the 2018 deposition testimony of TCCC employee Scott Cuppari. (*Id.* at n.41.)  That testimony, however, clearly concerns what functions the app performed ***at the time of the deposition in 2018***, not what functions the app performed in 2011 (or at any other point before January 31, 2013). (Cuppari Depo Tr., Ex. H at 17:3-18:4.)  For TCCC to offer testimony about what the app did in 2018 as evidence of priority on January 31, 2013 is objectively baseless and fails to satisfy TCCC's burden of overcoming the presumption of validity with clear and convincing evidence.

██████████████████████████████████████████████

███████████████████████████████. (Doc. 321-8 (filed under seal) at ¶ 30 and

n.40.) ████████████████████████████████████████████



(TCCC00154932, Ex. I.)

(TCCC00154934, Ex. J.)

Other evidence of record suggests that time may not have arrived until 2014. The Cuppari testimony was that the Freestyle system's consumer data aggregator or CDA—the database server for storing users' beverage preferences—was not created until fall 2013.  (Cuppari Depo Tr., Ex. H at 22-26.)  Plainly, if the server did not exist until fall 2013, there could have been no anticipation in January 2013.  Further, as explained in RCDI's expert report on damages (Kennedy Opening Damages Report, Ex. K at ¶ 122), a May 5, 2014 TCCC press release trumpeted the release of a new version of the Freestyle App permitting beverage customization "for the first time":

> Coca-Cola Freestyle® is about to make the consumer experience even more personal.  Beginning this month, an enhanced "Create Your Own Mix" feature on the popular Coca-Cola Freestyle app will allow users to choose from 100+ drink options to create a custom mix of their own and then, for the first time, connect their smartphones to dispensers at participating outlets and pour it on the spot.

25

. . . .

> During May and June, foodservice operators at about 2,000 locations across the country will participate in a pilot test of the Coca-Cola Freestyle mobile app's new feature before its nationwide launch later this year.

Press Release, The Coca-Cola Company, New App Enhancement Connects Coca-Cola Freestyle® with Users to Dispense Their Own Personal Beverage Mix (May 14, 2014), Ex. L.

TCCC fails to carry its burden of proving by clear and convincing evidence the absence of a genuine issue of material fact as to whether each and every element of the claimed inventions was present in the Freestyle by the alleged new critical date of January 31, 2013.  Summary judgment should be denied.

### C. TCCC's Gutwein and Boland Anticipation Arguments Fail

TCCC fails to carry its heavy burden of proving by clear and convincing evidence the absence of a genuine issue of material fact as to whether the '377 Patent is anticipated by U.S. Patent No. 6,759,072 ("Gutwein") and U.S. Patent No. 7,762,181 ("Boland").

### 1.  Mr. Curley Provided a Proper Invalidity Analysis

TCCC reargues, as it did in its previous motion for summary judgment (Doc. 138 at 34), that Mr. Curley's expert report provides "only general arguments, in the absence of a responsive claim-by-claim analysis" and, therefore, is not a proper

rebuttal report (Doc. 320-3 at 24).  The Court rejected TCCC's argument before and should reject it again.  (Doc. 201 at 50-51.)

The Court's previous opinion states: "The Court agrees that Rothschild is not obligated to provide a claim-by-claim analysis to defeat a claim of invalidity."  (*Id.* at 50.)  And Mr. Curley's report does, in fact, provide a claim-by-claim analysis.  He addressed, in his expert report, every asserted independent and dependent claim against TCCC's Gutwein and Boland references.  *See* 2022 Responsive Invalidity Report of Charles M. Curley, Ex. M at Section IX, 22-39 (titled "Response to Exhibit A (Anticipation by Gutwein)") and Section XIII, 71-79 (titled "Response to Exhibit C (Anticipation by Boland)").

Regarding TCCC's "element-by-element" argument, Mr. Curley's report acknowledges every limitation of every asserted claim with respect to the Gutwein and Boland references.  *See* Ex. M at 22-24 (Gutwein analysis chart) and 72-73 (Boland analysis chart).  Mr. Curley testified that he focused his analysis on some of the asserted claim limitations because it is unnecessary for RCDI to prove that every single limitation of the asserted claims is absent from the prior art.  *See* Curley Depo Tr., Ex. D at 29:21-31:10.

TCCC's assertion that Mr. Curley has not provided a claim-by-claim or element-by-element analysis has no merit.

### 2. The Court Should Deny Summary Judgment as to Anticipation by Gutwein

#### a. TCCC's SUMF Reveals Genuine Disputes of Material Fact

TCCC's SUMF extensively quotes verbatim portions of the expert invalidity reports of Mr. Curley (Ex. M at ¶¶ 236-57) and TCCC's expert, Peter Wolski ("Mr. Wolski") (Doc. 320-23 at ¶¶ 287-295). Many of these quotations demonstrate a genuine dispute of material fact as to whether limitations of the Asserted Claims read on specific elements of Gutwein. For example, Mr. Curley repeatedly states "[i]n my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions" and then proceeds to point out the specific limitations from the asserted claims that are not disclosed in Gutwein. (*See* RCDI response to SUMF at ¶¶ 237, 240, 243, 245, 247-50.) Conversely, Mr. Wolski repeatedly states that "Mr. Curley's conclusions are incorrect" related to his interpretation of the Gutwein disclosures. (*See* RCDI response to SUMF at ¶¶ 287-94.) TCCC's SUMF thus cites portions of Wolski's report that explicitly state Wolski's disagreement with Curley's conclusion, which on its face reveals a genuine dispute between the parties' experts on the interpretation of Gutwein's disclosures. *See Wi-LAN*, 675 F. App'x at 991-92.

### b. There Are Genuine Disputes of Material Fact About Whether Gutwein Anticipates Dependent Claim 11

Summary judgment is unwarranted because the expert reports and testimony of Messrs. Curley and Wolski present many genuine issues of disputed fact as to the interpretation of Gutwein's disclosures. *See Wi-LAN*, 675 F. App'x at 991-92.

### i. Limitation 11(b) – "at least one valve coupling the at least one compartment to a dispensing section configured to dispense the beverage"

TCCC cites Mr. Wolski's opinion that Gutwein anticipates limitation 11(b) of Claim 11. (*See* Doc. 320-3 at 28-30.) Yet TCCC ***admits*** that "RCDI contends that Gutwein does not disclose a 'dispensing section configured to dispense the beverage'" and cites to paragraph 56 of Mr. Curley's Responsive Invalidity Report. (*See* Doc. 320-3 at 28.) TCCC is correct; Mr. Curley opined the following in paragraph 56 related to Mr. Wolski's opinion on this limitation:

> 56.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No ***dispensing section configured to dispense the beverage*** is disclosed.
> - No disclosure teaches how Robins' valve 24 is ***coupling the at least one compartment to a dispensing section configured to dispense the beverage***.
>
> Therefore, Wolski's cited disclosures do not teach all of the asserted elements.

(Ex. M ¶ 56.) TCCC questioned Mr. Curley about his opinion at deposition, to no avail. (Ex. D, Curley depo]] at 219-21.) TCCC's position is that Mr. Curley's

opinion "is not a reasonable analysis of Gutwein," (Doc. 320-3 at 28), but that simply calls for the Court to resolve the question of fact presented by the experts' disagreement.

The Court should deny summary judgment as to this limitation because the above conflicting opinions show that there is a genuine dispute as to the presence of limitation 11(b) in Gutwein, *see Virnetx*, 767 F.3d at 1323 and the interpretation of the cited disclosures in Gutwein, *see Wi-LAN*, 675 F. App'x at 991-92.

> ### ii. Limitation 11(e) – "a communication module configured to transmit the identity of the user and the identifier of the beverage to a server over a network, receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server and communication the user generated beverage product preferences to the controller"
>
> #### (1) Gutwein does not disclose "communication module configured to transmit the identity of the user and the identifier of the beverage to a server over a network"

TCCC *admits* that Dr. Curley "claims that Gutwein does not teach this element of the '377 patent because there is no disclosure of the 'configuration' of network communication device (509)." (Doc. 320-3 at 34-35.)  TCCC is correct; Dr. Curley opined the following in paragraph 59 related to Mr. Wolski's opinion:

> 59.    In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that Gutwein's "network communication device 509" *transmits to a server over a network*, such as "data store 106."
> - No disclosure teaches that Gutwein's "network communication device 509" transmits *the identity of the user* or *the identifier of the beverage* to a server over a network.

(*See* Ex. M ¶ 59.)  TCCC cites Mr. Wolski's opinion, but that simply calls for the Court improperly to resolve the issue presented by the experts' disagreement.

> **(2) Gutwein does not disclose "communication module configured to . . . receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server"**

TCCC ***admits*** that Dr. Curley "claims that Gutwein does not disclosure this element because it does not disclose the configuration of 'network communication device 509,' how it receives any information from 'data store 106,' or what information it receives from 'data store 106.'"  (Doc. 320-3 at 36.)  This is correct; Dr. Curley opined the following in paragraph 61 related to Mr. Wolski's opinion on this limitation:

> 61.    In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:

- No disclosure teaches that Gutwein's "network communication device 509" *is configured to receive* information from a server such as "data store 106."
- No disclosure teaches that Gutwein's "network communication device 509" receives *user generated beverage product preferences based on the identity of the user* or *identifiers of the beverage* from a server such as "data store 106."

(*See* Ex. M ¶ 61.)

To dispute Dr. Curley's opinion, TCCC cites Mr. Wolski's opinion, but that merely highlights the existence of the issue presented by the experts' disagreement, an issue not properly resolved by the Court on summary judgment.

### (3) Gutwein does not disclose "communication module configured to . . . communicat[e] the user generated beverage product preferences to controller"

TCCC *admits* that Dr. Curley "states that Gutwein does not disclose that the 'network communication device 509' communicat[e] the user generated beverage product preferences to the customization director." (Doc. 320-3 at 37.) This is correct; Dr. Curley opined the following in paragraph 63 related to Mr. Wolski's opinion on this limitation:

> 63.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that "network communication device 509" **communicates** with "customization director 104."
> - No disclosure teaches that "network communication device 509" communicates **the user generated beverage product preferences** to "customization director 104."

(*See* Ex. M ¶ 63.)  To dispute both of Mr. Curley's points above, TCCC cites Mr. Wolski's opinion, but that merely highlights the experts' conflicting opinions, which reflect a genuine dispute as to the presence of the 11(e) limitation in Gutwein, *see Virnetx, Inc.*, 767 F.3d at 1323, and the interpretation of the cited disclosures in Gutwein, *see Wi-LAN*, 675 F. App'x at 991-92.

          iii.   **Limitation 11(f) – "the controller coupled to the communication module and configured to actuate the at least one valve to control an amount of the element to be dispensed and to actuate the mixing chamber based on the user generated beverage product preferences"**

          (1) **Gutwein does not disclose "the controller coupled to the communication module"**

TCCC ***admits*** that Dr. Curley opines that "no disclosure teaches that 'network communication device 509 is coupled to customization director 104.'"  (Doc. 320-3 at 38.)  This is correct; Dr. Curley opined the following in paragraph 66 related to Mr. Wolski's opinion on this limitation:

> 66.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that "network communication device 509" *is coupled to* "customization director 104."

(*See* Ex. M ¶ 66.)  TCCC attempts to overcome Mr. Curley's opinion by citing Mr. Wolski's opinion, thus highlighting the genuine dispute as to the presence of the limitation in Gutwein, a dispute not properly resolved on summary judgment.

### (2) Gutwein does not disclose "the controller configured to . . . actuate the at least one valve to control an amount of the element to be dispensed"

TCCC *admits* that Dr. Curley "claims that Gutwein does not teach that 'customization director 104' actuates a valve within the 'beverage delivery system 109' that controls an amount of an element to be dispensed."  (Doc. 320-3 at 38-39.) This is correct; Dr. Curley opined the following in paragraph 68 related to Mr. Wolski's opinion on this limitation:

> 68.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure mentions "customization director 104" or teaches that it *actuates a valve* within "beverage delivery system 109."
> - No disclosure teaches *a valve* within "beverage delivery system 109" that "controls an amount of the element to be dispensed."

(*See* Ex. M ¶ 68.)  TCCC attempts to overcome Mr. Curley's opinion by citing Mr. Wolski's opinion, thus highlighting the genuine dispute as to the presence of the limitation in Gutwein, a dispute not properly resolved on summary judgment.

### (3) Gutwein does not disclose "and to actuate the mixing chamber based on the user generated beverage product preference"

TCCC *admits* that Dr. Curley "states that Gutwein does not teach that 'customization director 104' is configured to actuate a mixing chamber." (Doc. 320-3 at 39.)  This is correct; Dr. Curley opined the following in paragraph 70 related to Mr. Wolski's opinion on this limitation:

> 70.    In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that "customization director 104" *is configured to actuate a mixing chamber*.

(*See* Ex. M ¶ 70.)  To dispute Mr. Curley's points above, TCCC cites Mr. Wolski's invalidity report, thus highlighting the genuine dispute as to the presence of the 11(f) limitation in Gutwein, *see Virnetx*, 767 F.3d at 1323, and the interpretation of the cited disclosures in Gutwein, *see Wi-LAN*, 675 F. App'x at 991-92.

### c.  There are genuine disputes of material fact related to TCCC's argument that Gutwein anticipates at least dependent Claims 13, 17, and 21-23

Local Rule 56.1(B)(1) states: "The Court will not consider any fact . . . set out only in the brief and not in the movant's statement of undisputed facts."  N.D. Ga. L.R. 56.1(B)(1).  Nor may the Court rely on unsupported statements of counsel; such statements "are attorney argument, not record evidence, and relying on these bare assertions [sic] improper."  *See Wi-LAN*, 675 F. App'x at 990-91.

TCCC raises many arguments under Gutwein against the asserted dependent claims that are totally unsupported by facts in TCCC's SUMF (*see* Doc. 320-3 at 25-45), and the Court should disregard all such citations.  Even if the Court were to consider those citations, they still reveal a genuine dispute of material fact between the positions taken by TCCC in its motion for summary judgment and the expert opinion of Mr. Curley.

### i. Claim 13 – "wherein the product preference for at least one user is retrieved from the database based on the user's identity and transmitted to the controller"

TCCC asserts that Mr. Wolski cited disclosures from Gutwein that anticipate Claim 13 (Doc. 320-3 at 41-42), yet TCCC *admits* that "RCDI argues that Gutwein does not disclose that the customization profile is retrieved from the database" (*id.* at 41).  TCCC is correct; Mr. Curley opined the following in paragraphs 72-73 related to Mr. Wolski's opinion on this limitation:

> 72.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that the customization profile *is retrieved from the database*.
>
> 73.   The disclosures teach that the customization director transmits "the identification number and password" to the database (Wolski cite to Gutwein at 27:32-37), but it does not state the location from which the customization director retrieves the user's profile. Further, the disclosures teach that "the <u>customization director retrieves</u> Frank's customization profile and analyzes the profile to determine the beverage options to display to Frank" (*id.*)(emphasis added). Yet, this does not teach the location from where the customization director retrieves the customization profile. Therefore, Wolski's cited disclosure of Gutwein's "data store" does not disclose this asserted element.

*See* Ex. M, Curley Report ¶¶ 72-73.

To dispute Mr. Curley's points above, TCCC does not cite to any portion of its SUMF, nor Mr. Wolski's invalidity reports, but cites directly to Gutwein.  Under Local Rule 56.1(B)(1), the Court should disregard all citations not made to the SUMF.  N.D. Ga. L.R. 56.1(B)(1); *Wi-LAN*, 675 F. App'x at 990-91.

Even if the Court were to consider these inappropriate citations, they merely highlight the disagreement between TCCC's attorney argument and the expert opinion of Mr. Curley, a dispute that should not be resolved on summary judgment.

        **ii.  Claims 17 and 21 – "wherein the user interface module is further configured to receive confirmation of the product preference from the user"**

TCCC asserts that Mr. Wolski cited disclosures from Gutwein that anticipate Claims 17 and 21 (Doc. 320-3 at 42-43), yet TCCC **admits** that "RCDI argues that Gutwein does not disclose that the user interface module is further configured to receive confirmation" (Doc. 320-3 at 43).  TCCC is correct; Mr. Curley opined in the following in paragraph 76 related to Mr. Wolski's opinion on this limitation:

> 76.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that *the interface module is further configured to receive confirmation*.
>
> The disclosures teach that "the user may either save the customized beverage formulation via selection of the save icon 806, _**or**_ the user may have the system 100 dispense the beverage via selection of the dispensing icon 808" (Wolski cite to Gutwein at 7:58-63)(emphasis added). This disclosure describes an either/or option between saving the customized beverage formulation or having the system produce it. Nowhere does this disclosure point to the system "receiving confirmation" of the product preference. Therefore, Wolski's cited disclosure on the user's ability to "save the customized beverage formulation" does not disclose this asserted element.

*See* Ex. M, Curley Report ¶¶ 76.

To dispute Mr. Curley's points above, TCCC does not cite to any portion of its SUMF, nor Mr. Wolski's invalidity reports, but cites directly to Gutwein.  Under Local Rule 56.1(B)(1), the Court should disregard all citations not made to the SUMF.  N.D. Ga. L.R. 56.1(B)(1); *Wi-LAN*, 675 F. App'x at 990-91.

Even if the Court were to consider these inappropriate citations, they merely highlight the disagreement between TCCC's attorney argument and the expert opinion of Mr. Curley, a dispute that should not be resolved on summary judgment.

### iii. Claim 22 – "wherein . . . the communication module is configured to transmit the product preferences to the server"

TCCC asserts that Mr. Wolski cited disclosures from Gutwein that anticipate Claim 22 (Doc. 320-3 at 42-43), yet TCCC *admits* that RCDI argues that "'network communication device 509' does not transmit product preferences to the server" (Doc. 320-3 at 44).   TCCC is correct; Mr. Curley opined in the following in paragraph 78 related to Mr. Wolski's opinion on this limitation:

> 78.    In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure mentions "network communication device 509," or teaches that "network communication device 509" transmits product preferences to the server.
>
> Wolski previously pointed to "network communication device 509" as the asserted "communication module." Therefore, none of these disclosures disclose this asserted element.

*See* Ex. M, Curley Report ¶¶ 78.

To dispute Mr. Curley's points above, TCCC does not cite to any portion of its SUMF, nor Mr. Wolski's invalidity reports, but instead cites directly to Gutwein.

Under Local Rule 56.1(B)(1), the Court should disregard all citations not made to the SUMF.  N.D. Ga. L.R. 56.1(B)(1); *Wi-LAN*, 675 F. App'x at 990-91.

Even if the Court were to consider these inappropriate citations, they merely highlight the disagreement between TCCC's attorney argument and the expert opinion of Mr. Curley, a dispute that should not be resolved on summary judgment.

### iv. Claim 23 – "wherein the product preference is a formulation including a predetermined amount of at least one element"

TCCC asserts that Mr. Wolski cited disclosures from Gutwein that anticipate Claim 23 (Doc. 320-3 at 44-45), yet TCCC *admits* that RCDI argues that "Gutwein does not disclose this element" (Doc. 320-3 at 44).  TCCC is correct; Mr. Curley opined in the following in paragraph 81 related to Mr. Wolski's opinion on this limitation:

> 81.    In my opinion, the above disclosures fail to point out <u>any</u> part of this element. First, Wolski does not explain how Gutwein's "predetermined icons and labels 708" relate to the claimed "predetermined amount of at least one element" because one is a digital icon or label on a GUI and the other is a volume of liquid;

> these are not the same. Second, Gutwein's "standard beverage formulations" cannot relate to the "beverage product preferences" of independent claim 11 or dependent claim 23 because, as explained in the uncited portion of Gutwein, the "standard beverage formulations" are displayed to every user and may be altered unilaterally by system 100. Consequently, the "standard beverage formulations" are not disclosed from the beverage preferences of the individual user. Therefore, none of these disclosures serve discloses this asserted element.

*See* Ex. M, Curley Report ¶¶ 81.

To dispute Mr. Curley's points above, TCCC does not cite to any portion of its SUMF, but instead cites directly to the Gutwein reference.  Under Local Rule 56.1(B)(1), the Court should disregard all citations not made to the SUMF.  N.D. Ga. L.R. 56.1(B)(1); *Wi-LAN*, 675 F. App'x at 990-91.

Even if the Court were to consider these inappropriate citations, they merely highlight the disagreement between TCCC's attorney argument and the expert opinion of Mr. Curley, a dispute that should not be resolved on summary judgment.

TCCC's attempt to overcome the expert opinions of Mr. Curley simply show the existence of a genuine dispute as to the presence of the above limitations of dependent Claims 13, 17, and 21-23 in Gutwein, *see Virnetx, Inc.*, 767 F.3d at 1323, and as to the proper interpretation of the cited disclosures in Gutwein, *see Wi-LAN*, 675 F. App'x at 991-92.  Summary judgment is unwarranted.

### 3. The Court Should Deny Summary Judgment as to Anticipation by Boland

#### a. As a Preliminary Matter, the Court Has Already Ruled That Boland Does Not Anticipate the '377 Patent

TCCC has already moved for summary judgment of anticipation based on the Boland reference. (Doc. 138 at 36-42.) The Court denied summary judgment on that ground. (Doc. 201 at 51-56.) Nevertheless, TCCC has moved again for summary judgment of invalidity based on Boland. (Doc. 320-3 at 45-61.) The Court should deny TCCC's repetitious assertion of this argument.

#### b. TCCC Failed to Provide a Prima Facie Case of Anticipation of Independent Claim 11 Under Boland Related to Limitations 11(a), 11(b), 11(c), and 11(e)

A reference is anticipatory "if the prior art reference discloses each and every feature of the claimed invention, either explicitly or inherently." *See Wi-LAN*, 675 F. App'x at 988. TCCC fails to analyze each and every feature of the claimed invention.

##### i. Limitation 11(a) – "at least one compartment containing an element of a beverage"

Nowhere does TCCC point to any specific disclosure in Boland stating that Boland's "ingredient storage module" contains "an element of a beverage." (*See* Doc. 320-3 at 48.) TCCC haphazardly asserts, without citation, that "Boland teaches that such embodiments can contain flavorings, texturing, ingredients, liquids, water,

42

juice, milk, other [sic] potable liquids" (*see* Doc. 320-3 at 55), but that assertion is is "attorney argument, not record evidence." *See Wi-LAN*, 675 F. App'x at 990-91.

### ii. Limitation 11(b) – Boland does not disclose the valve element or a dispensing section

In its argument against limitation "11(b)", nowhere does TCCC point to any specific element in Boland that constitutes a "dispensing section configured to dispense the beverage." (*See* Doc. 320-3 at 48-50.)  The limitation also recites "at least one valve coupling the at least one compartment to a dispensing section configured to dispense the beverage." ('377 Patent at 9:46-48.)  As Mr. Curley testifies in his 2018 and 2022 expert reports, Boland does not disclose this element. TCCC admits that the word "valve" appears nowhere in Boland. (*See* Doc. 320-3 at 49.)  Even though the disclosed ingredient compartments "contain processing liquids such as water, milk or other potable liquid" (Boland at 5:48-49), there are no disclosed valves coupling Boland's compartments to Boland's dispensing section. Rather, Boland teaches the delivery of ingredients using motors and pumps.  (*See* Boland at 12:13-14 (stating that system "sends the signal to the motors and pump to deliver" ingredients); *id.* at 12:15 ("At step 16 the ingredients are delivered by liquid pumps . . . ."); *id.* table 1, action 16 (same).)

### iii. Limitation 11(c) – Boland does not disclose the valve element or a dispensing section

In its argument against limitation "11(c)" (*see* Doc. 320-3 at 50-51), the "Figure 3" upon which TCCC relies does not appear anywhere in the SUMF, and therefore should be disregarded.  *See* N.D. Ga. L.R. 56.1(B)(1); *see also Friedman v. Navient Solutions*, No. 1:19-CV-0083-CC-WEJ, 2019 WL 4751870, at *1 (N.D. Ga. Aug. 27, 2019).  Also, TCCC asserts that "RCDI's expert did not rebut that Boland teaches this claim element" (*see* Doc. 320-5 at 58), but provides no citation to support this assertion, which constitutes "attorney argument, not record evidence."  *See Wi-LAN*, 675 F. App'x at 990-91.

### iv. Limitations 11(e) and 11(f) – Boland does not disclose an "identifier of the beverage" or a "communication module," nor does TCCC provide valid citations to its SUMF

#### (1) TCCC did not provide any valid citations to its SUMF for this limitation

For limitations 11(e) (*see* Doc. 320-3 at 59-62) and 11(f) (*see* Doc. 320-3 at 62-64), the only portion of TCCC's SUMF to which TCCC cites is paragraph 25 (*see* Doc. 320-3 at 59), which concerns a non-infringement opinion by TCCC's infringement expert and has nothing to do with the anticipation issue.  TCCC fails to cite any expert report or testimony, in support of its anticipation argument for these limitations.  The Court should disregard all of these citations for failure to cite to the SUMF. *See* N.D. Ga. L.R. 56.1(B)(1); *see also Wi-LAN*, 675 F. App'x at 990-

91. TCCC has therefore failed to present a prima facie case of anticipation under Boland for this limitation.

### (2) Boland does not disclose an "identifier of the beverage"

Boland's system operates in a different manner to achieve a different goal than the system of the '377 Patent. Boland contemplates a "health profile of the customer" with the customer's personal health information (*see* Boland at Abstract; 14:53-15:2) and the system formulates a product for the user based on this profile (*see* Boland at Fig. 9; 7:46-52). The Boland system needs only a user identification before it retrieves a health profile, which in turn is used to formulate what the user should consume. *See* Boland at 11:7-44; Fig. 4; and Table 1. Based on that profile, the system determines what the user should consume. *See* Boland at 17:56-60 ("[T]he system works through a further logic tree to determine what the drink is that most closely matches the requirements of the customer's health status and the customer's personal preferences.").

However, independent Claim 11 recites that a beverage is created in-part based on an "identifier of the beverage," not a health profile, that is received by the user interface module (*see* Ex. A at Claim 11). Nowhere does Boland disclose that Boland's system selects a beverage based on an "identifier of the beverage." The

system recited in Claim 11 requires an "identifier of the beverage," whereas Boland

employs user profiles, not beverage identifiers, to select a beverage.

### (3) Boland does not disclose a "communication module"

The Boland system does not disclose how the user identifier is transferred to

the database of the system. *See generally* Boland at 11:7-44.  However, Claim 11

states that a communication module transmits the identity of the user to a server over

a network.  See Asserted Patent at Claim 11.

Because these limitations do not appear in Boland, Boland cannot anticipate

Claim 11.  *See Virnetx*, 767 F.3d at 1323 ("A claim is anticipated only if each and

every element is found within a single prior art reference, arranged as claimed.").

Summary judgment of invalidity of Claim 11 under Boland should be denied.

### c. There are genuine disputes of material fact related to TCCC's argument that Boland anticipates independent Claim 11

### i. Limitation 11(e) – "communication module configured to . . . communication the user generated beverage product preferences to controller"

TCCC asserts that Mr. Wolski cited disclosures from Boland that anticipate

limitation 11(e) of Claim 11.  (Doc. 320-3 at 59-62.)  Yet TCCC acknowledges that

Mr. Curley disputes this interpretation of Boland's disclosure.  Mr Curley opines the

following related to this limitation:

> 157.  In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that Boland's "controller" can *communicate the user generated beverage product preferences* to itself.
>
> No disclosure teaches any subcomponents of Boland's "controller," or that such subcomponents communicate with each other. Therefore, Wolski's cited disclosures to Boland's "controller" do not disclose this asserted element.

*See* Ex. M, Curley Report ¶¶ 157.  The Court should deny summary judgment as to this limitation because the above conflicting opinions show that there is a genuine dispute as to the presence of the 11(e) limitation in Boland, *see Virnetx*, 767 F.3d at 1323, and the interpretation of the cited disclosures in Boland, *see Wi-LAN*, 675 F. App'x at 991-92.

> ii.  **Limitation 11(f) – The parties dispute "the controller coupled to the communication module and configured to actuate the at least one valve to control an amount of the element to be dispensed and to actuate the mixing chamber based on the user generated beverage product preferences"**

TCCC asserts that Mr. Wolski cited disclosures from Boland that anticipate limitation 11(f) of Claim 11.  (Doc. 320-3 at 55-57.)  Yet TCCC acknowledges that Mr. Curley disputes this interpretation of Boland's disclosure.  Mr. Curley opines the following related to this limitation:

> 159.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches that "customer profile data 34" consists of *the user generated beverage product preferences*.
> - No disclosure teaches teach that Boland's "controller" is *coupled to the communication module*.
>
> The cited disclosures teach that "the controller 18 will then actuate the switches governing . . . the mixing of the ingredients . . . ." (Wolski cite to Boland at 8:21-26) and "[t]he size of the portions will be determined by reference to the customer profile data 34" (*id.*), but this does not teach what role *the user generated beverage product preferences* played in these actuations. Therefore, Wolski's cites to Boland's "controller" do not disclose this element.

*See* Ex. M, Curley Report ¶ 159.  The Court should deny summary judgment as to this limitation because the above conflicting opinions show that there is a genuine dispute as to the presence of the 11(f) limitation in Boland, *see Virnetx*, 767 F.3d at 1323, and the interpretation of the cited disclosures in Boland, *see Wi-LAN*, 675 F. App'x at 991-92.

### d. There are genuine disputes of material fact related to TCCC's argument that Boland anticipates at least dependent Claims 13, 17, and 21-23

TCCC asserts that Boland anticipates the Asserted Claims.  (Doc. 320-3 at 25-45.)  Yet, a genuine dispute of material fact can be found in the conflicting opinions expressed in the reports and deposition transcripts of Messrs. Wolski and Curley.

> **i. Claim 13 – "a database for storing product preferences of a plurality of users; wherein the user interface module is further configured to receive an identity of the user, wherein the product preference for at least one user is retrieved from the database based on the user's identity and transmitted to the controller"**

TCCC asserts that Mr. Wolski cited disclosures from Boland that anticipate Claim 13. (Doc. 320-3 at 41-42.) Yet TCCC *admits* that "RCDI argues that Boland does not teach what information constitutes its 'customer profiles,' including whether the profiles include product preferences." (ECF No 320-3 at 58.) TCCC is correct; Mr. Curley opined the following in paragraph 161 related to Mr. Wolski's opinion on this limitation:

> 161.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches what information constitutes Boland's "customer profiles," including whether the profiles include ***product preferences***.
>
> Therefore, Boland's "customer profiles" do not teach this element.

*See* Ex. M, Curley Report ¶¶ 161.

To dispute Mr. Curley's points above, TCCC does not cite to any portion of TCCC's SUMF, nor Mr. Wolski's invalidity reports, but instead cites directly to the Boland reference. The Court should disregard all citations not made to the SUMF. *See* N.D. Ga. L.R. 56.1(B)(1); *see also Wi-LAN*, 675 F. App'x at 990-91.

49

Even if the Court were to consider these inappropriate citations, they reveal a genuine dispute of material fact between TCCC's position and the expert validity opinion of Mr. Curley, a dispute that should not be resolved on summary judgment.

### ii. Claim 22 – "the communication module is configured to transmit the product preference to the server"

TCCC asserts that Mr. Wolski cited disclosures from Boland that anticipate Claim 22. (Doc. 320-3 at 41-42.) Yet TCCC **admits** that "Boland does not disclose whether the 'controller' is configured to transmit preferences to a server." (Doc. 320-3 at 60.) TCCC is correct; Mr. Curley opined the following in paragraph 163 related to Mr. Wolski's opinion on this limitation:

> 163.   In my opinion, the above disclosures fail to point out each and every limitation of this element because of the following omissions:
>
> - No disclosure teaches whether the "controller" *is configured to transmit product preferences* to a server.
>
> As explained above, "operatively linked" does not teach whether the "controller" *is configured to transmit product preferences* to a server. Therefore, none of these disclosures serve to disclose this asserted element.

*See* Ex. M, Curley Report ¶ 163.

To dispute Mr. Curley's points above, TCCC does not cite to any portion of TCCC's SUMF, nor Mr. Wolski's invalidity reports, but instead cites directly to the

Boland reference.  The Court should disregard all citations not made to the SUMF.  *See* N.D. Ga. L.R. 56.1(B)(1); *see also Wi-LAN*, 675 F. App'x at 990-91.

Even if the Court were to consider these inappropriate citations, they reveal a genuine dispute of material fact between TCCC's position and the expert validity opinion of Mr. Curley, a dispute that should not be resolved on summary judgment.

TCCC's arguments related to dependent Claims 13, 17, and 21-23 cite to evidence that is outside of TCCC's SUMF, and comprise attorney argument that is not based on the opinion of an invalidity expert.  *See* N.D. Ga. L.R. 56.1(B)(1); *see also Wi-LAN*, 675 F. App'x at 990-91.  Even if the Court were to consider these arguments, the Court should deny summary judgment because the expert opinions of Mr. Curley raise a genuine dispute as to the presence of the above limitations in Boland, *see Virnetx*, 767 F.3d at 1323, and as to the interpretation of the cited disclosures in Boland, *see Wi-LAN*, 675 F. App'x at 991-92.

## IV.   THE COURT SHOULD DENY SUYMMARY JUDGMENT OF NON-INFRINGEMENT

TCCC's first motion for summary judgment argued that the accused products did not contain five limitations of the asserted claims -- mixing chamber, valve, controller, dispensing section, and user interface module.  This Court rejected all but one of those arguments, granting summary judgment of non-infringement on the user interface module limitation.   On appeal, the summary

51

judgment was vacated and remanded for further proceedings under a modified claim construction for user interface module.

On remand, based on the Federal Circuit's claim construction and the evidence RCDI has obtained from inspecting TCCC's source code, it is now so plain that the accused products have the requisite user interface module that TCCC's new summary judgment motion does not even contest the issue. Instead, TCCC is forced to concoct new theories of non-infringement.

TCCC now argues that the accused products do not contain an "identifier of the beverage" or a "communication module." TCCC's arguments on these points have no merit. Infringement is a fact question for the jury to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996); *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013). A reasonable jury could find that the accused products contain all elements of the asserted claims.

### A. Identifier of the Beverage

During claim construction, neither party sought to construe the limitation "identifier of the beverage." As a result, the Court did not construe the term in its Claim Construction Order (Doc. 79), and the term has its plain and ordinary meaning.

Contrary to the Motion, it is beyond dispute that the Freestyle system is

configured to utilize an "identifier of the beverage."  TCCC witness Scott Cuppari explained as follows:



TCCC itself literally refers to these beverage identifiers as "bev IDs."  For example, here is an illustration from TCCC's documents of how TCCC formats messages for downloading a user's favorite drinks to a dispenser:



Ex. P, Curley Opening Infringement Report at ¶¶ 140-143.) As is apparent from the presence of the "bevID" information shown above, the Freestyle devices

clearly have an "identifier of the beverage."

TCCC nonetheless asserts "the Freestyle dispenser does not transmit an 'identifier of the beverage' to the CDA server under any circumstances." (Mot. at 66.). This demonstrably false statement is directly undermined two sentences later in the Motion, where it acknowledges the "transmission of 'pour data' that the Freestyle dispenser sends to the CDA Server." (Id.) As TCCC's documents show, the "pour data" indisputably contains a "bevID", i.e. a beverage identifier:





Ex. Q, Curley Rebuttal Infringement Report at ¶ 90; (Doc. 321-10), Alexander

Responsive Noninfringement Report at ¶¶ 88-89]] A reasonable jury could

conclude that the "identifier of the beverage" limitation is satisfied, and the Motion

should be denied.

### B. Communication Module

The Court's claim construction for this element – which TCCC does not

even mention in its motion – is "a component of the beverage dispenser that

enables communication between the dispenser and the server." (Doc. 79 at 26.)

RCDI's experts have established in their reports that the wireless modem contained

in the accused Freestyle dispensers satisfies the "communication module"

limitation of claim 11. (Ex. P, Curley Opening Infringement Report ¶¶ 160-169,

74-185; see also Ex. R, Overby Opening Infringement Report ¶¶ 24, 92; Ex. S,

Overby Rebuttal Infringement Report ¶¶ 33-41;.  Mr. Curley, for example,

explained as follows:





Ex. P, Curley Opening Infringement Report, ¶ 168.]]

Accordingly, in view of RCDI's expert testimony, a reasonable jury could conclude that the "communication module" limitation is satisfied.

TCCC nonetheless asserts in its argument on the communication module that "**The Freestyle Dispenser Does Not Have User Generated Product Preferences That Are Based on the Identifier of the Beverage**" (Mot. at 69) (emphasis in original), that "[t]he preferences are not based on or associated with an 'identifier of the beverage'" (Mot. at 70), and that "the Freestyle dispenser does not receive 'user generated beverage product preferences' that are **based on** the identifier of the beverage" (Mot. at 72). This argument is without merit. As TCCC acknowledges, "[i]t is undisputed that the user preferences employed in the Freestyle dispenser comprise personalized mixes and favorites." (Mot. at 70.). And TCCC's documents showing data structures used by the Freestyle for a user's beverage preferences plainly contain at least one bevID:



Ex. Q, Curley Rebuttal Infringement Report at P 101; (Doc. 321-10), Alexander

Responsive Noninfringement Report at ¶ 85]]. Thus, the Freestyle dispenser

clearly does have user generated beverage product preferences that are based on an

identifier of the beverage (as well as a user ID).  The Motion should be denied.

### C. TCCC's Arguments Are in Reality an Improper Attempt to Pursue New Claim Construction

As the Court will see, TCCC's non-infringement arguments regarding

"identifier of the beverage" and "communication module" are not really about

"identifier of the beverage" or "communication module."  Rather, what TCCC is

really pursuing are belated new claim constructions for different claim limitations.

While the Motion ostensibly challenges the presence of an "identifier of the beverage" and a "communication module" in the Freestyle, the Motion fails to dispute that the bevIDs utilized in the Freestyle system are "identifiers of beverages" and fails to dispute that the Freestyle's wireless modem satisfies the Court's claim construction for "communication module."  Instead, the argument that the Motion surreptitiously advances is that the transmission of beverage identifiers by the communication module must occur ***prior to*** the receipt of beverage products preferences by the communication module from the server.  *See* Mot. at 65 ("Claim 11, as issued, requires that the server sends to the dispenser 'user generated beverage product preferences' that are based on the identity of a user and the identifier of the beverage **that the dispenser transmitted to the server**."  Mot. at 65 (emphasis added); see also Mot. at 66-67 ("the Freestyle dispenser sends the 'pour data' only **after** a beverage has been dispensed to the user") (emphasis in original); Mot. at 70-71 ("the CDA server does not receive any transmission from the Freestyle dispenser **prior to** transmitting the user's preferences (i.e., mixes and favorites) to the dispenser.") (emphasis added).

As TCCC's expert more overtly argued it in his report: "**the Claim Elements Must be Read as a Sequence of Ordered Steps**" Ex. (Doc. 321-10), cite Alexander Noninfringement Report at § 8.2.2, p. 36]] and "the limitation 'transmit the identity

of the user and the identifier of the beverage to a server over a network' **must be read as preceding** the limitation 'receive user generated beverage product preferences based on the identity of the user and the identifier of the beverage from the server'") (*id*. at ¶ 105) (emphasis added).

This argument likewise has no merit.  First, none of the asserted claims is a method claim; rather, all the asserted claims are apparatus claims. Unlike method claims, apparatus claims do not consist of "steps," much less steps in a required order.   "[A]pparatus claims cover what a device *is*, not what a device *does*." *Hewlitt–Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1468 (Fed. Cir. 1990).   Accordingly, independent claim 11 and its dependent claims recite an apparatus comprising components, not a method comprising steps.

Moreover, even with respect to method claims, the issue of whether the steps in a method claim require a certain ordering is a question of claim construction, and the general rule is that the steps of the method are not required to be performed in a certain order unless an order is actually recited.  *See*, *e.g.*, *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1370-72 (Fed. Cir. 2003); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 880 (Fed. Cir. 1991) ("The district court interpreted Claim 1 and concluded that the claim does not

require that 'the steps of . . . be carried out in the specific manner contained in the preferred embodiment of the invention appearing in the patent description and drawings. . . .' We agree. The plain language of the claims supports the district court's construction."). Here, this Court's Claim Construction Order requires no ordering of steps, which is not surprising since the claims are not method claims.

The Motion is founded on an improper attempt to obtain a new claim construction. By failing to timely raise the issue during the claim construction phase, however, TCCC has waived the ability to pursue its new claim construction at this late stage of the case. Failing to timely raise claim construction arguments should result in waiver. *See Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (affirming district court finding that defendant "waived any argument with respect to [a] term by failing raise it during the claim construction phase"); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *3-4 (N.D. Cal. Jan. 21, 2014) ("Nor are [courts] obligated to rule on claim construction arguments presented for the first time in summary judgment briefs."). The *Apple* court noted that "it can be error to engage in hypertechnical refinements of the meaning of claims following claim construction to support a grant of summary judgment" and went on to state:

> [T]he Court, here, based on the parties' prior selection of terms in need of construction, has left many of the terms at issue to their plain and ordinary meaning. For the majority of terms the parties now address in their summary judgment briefs, the Court does not see the need for further refinement at the risk of taking factual issues away from the jury.
>
> Sound practical reasons counsel against construing additional terms based on claim construction arguments raised for the first time in summary judgment briefs. . . . The Court painstakingly adjudged the parties' claim construction disputes during the claim construction phase based on their in-depth technology tutorials and voluminous submissions of intrinsic and extrinsic evidence. The local rules and this Court did not set out a particular process for resolving claim construction disputes only to let the parties make additional arguments at the summary judgment phase untethered to those carefully structured rules.

*Id*. at *4. *See also Donaldson Co. v. Baldwin Filters, Inc.*, No. 09-CV-1049 (PJS), 2011 WL 2183179, at *8-9 (D. Minn. June 6, 2011) ("To allow Baldwin to belatedly argue that a housing is a limitation would unfairly burden Donaldson, who was led by Baldwin's earlier actions to believe that this issue was not in play.") (holding argument for a claim limitation waived where not raised in *Markman* briefs).

The claim construction phase of this case, which included extensive briefing and a lengthy hearing, concluded long ago. The Court should reject TCCC's belated attempt at new claim construction here, and deny the Motion.

Apart from being waived, TCCC's new claim construction arguments are without merit. To the extent TCCC is seeking to rely on the Examiner's Statement

of Reasons for Allowance in support of its argument to limit the meaning of the claims (Mot. at 2), as a matter of law the examiner's statement does not constitute any prosecution history disclaimer by the applicant. *Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005). And to the extent TCCC relies on excerpts of the specification to support its limiting claim construction (Mot. at 63-64), it is axiomatic that limitations cannot be imported from the specification into the claims. "The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *see also Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("Although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Interactive Gift Express*, 256 F.3d at 1331 ("[I]n looking to the specification to construe claim terms, care must be taken to avoid reading limitations appearing in the specification . . . into [the] claims."). The asserted claims here do not recite any ordering of steps, and it would be claim-construction error to require otherwise.

In the event the Court, however, were to adopt the newly proposed claim construction, fundamental fairness would require that RCDI be given an opportunity to amend its contentions and expert reports to address such new construction. This District's Local Patent Rules expressly provide for amending infringement or invalidity contentions in light of a claim construction ruling by the Court. See N.D. Ga. L. Patent R. 4.5(c). If the Court adopted a new claim construction requiring the communication module to perform steps in the order proposed by TCCC, RCDI would have ample basis to amend its contentions and expert reports in response to such a new construction by pointing to the Freestyle App as satisfying the new claim construction.

First, the Freestyle App would qualify as a communication module because it is a component that enables communication between the dispenser and the server. *See, e.g.*, (Doc. 321-10, Alexander Responsive Noninfringement Report at ¶ 79 ("The Freestyle App transparently makes a request to Coca-Cola's Consumer Data Aggregator ('CDA') database server identifying the dispenser and requesting display at the dispenser of the user's Favorites and custom Mix drinks."). In fact the Motion itself acknowledges that the Freestyle App enables communication between the dispenser and the server. (Mot. at 70 ("the user can use the Freestyle App to cause the CDA server to 'push' the user's mixes and favorites to the Freestyle

Dispenser by way of the QR Initiate message"). *See also* Ex. Q, Curley Rebuttal Infringement Report at ¶ 45 (discussing how the Freestyle App causes a consumer's mixes and favorites to be sent to a dispenser).)

Second, the Freestyle App in combination with the modem would satisfy the proposed "order of steps" because the Freestyle App is configured to transmit a user identity and an identifier of the beverage prior to the modem's receipt of beverage product preferences based on the user identity and identifier of the beverage. ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. Q, Curley Rebuttal Report at ¶¶ 46 – 52; Ex. R, Overby Opening Report at ¶ 62]].

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████     ████████████████████████████

████████████████████████████████████

Accordingly, if the Court were to change the claim construction to require that the communication module transmit user IDs and beverage identifiers to a server

prior to the dispenser's receiving beverage product preferences based on user IDs and beverage identifiers, RCDI can show that the Freestyle App would satisfy such a construction. The fact that the communication module limitation as a whole would be satisfied by a combination of two structures, the Freestyle App and the wireless modem, does not preclude infringement. The law is clear that there need not be one-to-one correspondence between the components of an accused device and the claim. "[I]nfringement under the doctrine of equivalents may be established even though the accused device requires a number of components to perform functions which the patented invention achieves by use of one component." *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991) (citing *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F2d 1251, 1259 (Fed. Cir. 1989)). *See also Dolly, Inc. v. Spalding Evenflo Cos.*, 16 F.3d 394, 398 (Fed. Cir. 1994) ("An accused device may infringe under the doctrine of equivalents even though a combination of its components performs a function performed by a single element in the patented invention."); *Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) ("if an accused infringer has simply separated into two components what the patentee has claimed as one component, a fact finder indeed might find such a change 'insubstantial'"). As set forth in the supporting declaration of RCDI's expert, Mr. Curley, if the Court adopted the new claim construction proposed by TCCC, the

limitation would be satisfied by the Freestyle App under the doctrine of equivalents. (Ex. E, Curley Decl., ¶¶ 13-17.)

Nor could TCCC argue against the Freestyle App being part of the communication module on the basis that the Freestyle App is not a component "of the dispenser." As the Federal Circuit held in the appeal in this case on review of the Court's claim construction of "user interface module," the Freestyle App need not be physically contained within the housing of the Freestyle dispenser in order to be considered a component of the dispenser. *Rothschild Connected Devices Innovations, LLC v. Coca-Cola Co.*, 813 F. App'x 557, 562 (Fed. Cir. 2020). Accordingly, if the Court were to adopt TCCC's new construction, RCDI could satisfy the construction and should be given the opportunity to do so.

## V.   THE COURT SHOULD DENY PARTIAL SUMMARY JUDGMENT AS TO DAMAGES

Determination of a reasonable royalty for patent infringement is a question of fact for the jury to decide. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003). TCCC cites absolutely no authority for the proposition that the jury's ability to decide this issue should be limited at the summary judgment stage. Rather, the three cases that TCCC cites (Mot. at 73) all relate to appellate review of damages awards based on the sufficiency of the evidence presented at trial. This is

not pertinent authority for limiting the determination of damages at the summary judgment stage.

In seeking to limit damages to an undefined and ambiguous ceiling of "handshake-based" sales, the Motion appears oblivious to the law of patent infringement which has long held that "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1216-17 (Fed. Cir. 2014) ("[W]hen the asserted claims recite capability, our case law supports finding infringement by a 'reasonably capable' accused device on a case-by-case basis…."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 ("[W]e have held that, to infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode."). Accordingly, the proper royalty base consists of the number of infringing Freestyle machines, which all have handshake capability. Ex. K, Kennedy Opening Damages Report ¶ 335.

The asserted claims are all apparatus claims, not method claims, and thus the claims are infringed when a product embodying the claimed apparatus is made or sold, not merely when it is "used." *See* 35 U.S.C. § 271(a). Accordingly, TCCC's

request that damages be limited to "infringing uses" (Mot. at 75) is illegitimate on its face.

That is not to say that RCDI's damages expert, David Kennedy, has not already taken "handshake-based" sales into account in his reasonably royalty analysis. To the contrary, Mr. Kennedy's damages calculations have done so in connection with his determination of the appropriate royalty rate. Kennedy determines the royalty rate to apply to the infringing base of accused Freestyle dispensers by performing a hypothetical negotiation analysis "based on the best understanding of the expectations of the parties at the time of the hypothetical negotiation" that would have occurred at the beginning of the period of infringement. *See* Ex. K, Kennedy Opening Damages Report at ¶¶ 16, 79; Ex. U, Kennedy Rebuttal Damages Report at ¶51. To determine what the parties' expectations would have been at the hypothetical negotiation, Kennedy looked specifically to TCCC's internal financial planning documents prepared closest in time to the date of the hypothetical negotiation in 2013, which set out projections of the increased performance of Freestyle dispensers versus legacy dispensers. *See* Ex. K, Kennedy Opening Damages Report at ¶ 90. *See also* (Doc. 321-8), Fancher damages report at

para. 12 (TCCC expert damages report agreeing that the date of the hypothetical negotiation is 2013)]].[2]

From these financials, which are closest available to the date of the hypothetical negotiation, Kennedy considered the evidence showing that Freestyle dispensers with a handshake capability had a higher "volume per dispenser" in sales than dispensers without handshake capability, which Kennedy dubbed the "Handshake Benefit," to calculate the expected future increase in volume-per-dispenser ("VPD") for handshake-capable Freestyle machines, which is the appropriate royalty base. *See* Ex. Y, Kennedy Opening Damages Report at ¶¶ 93, 94, 99. Kennedy thus measured the economic benefits of the expected VPD from handshake-capable Freestyle dispensers, and then conducted several apportionments for all other ecomomic inputs into that benefit (*see* Ex. K, Kennedy Opening Damages Report at ¶¶ 103 and 104, 336) to arrive at reasonable royalty rate.

In short, Kennedy already took into account the projected number of handshakes and the anticipated economic benefit flowing therefrom, at the time of the hypothetical negotiation, in making his reasonable royalty calculation. Even TCCC admits this. (Mot. at 73) (stating that Kennedy's damages calculations "are

---

[2] ███████████████████████████████████████████████
████████████ (Dec. 321-8), Fancher report at ¶ 182]]

built on his weighted average VPD impact of the Handshake capability.")  TCCC simply dislikes the numbers that result when its own "handshake-based" projections extant at the time of the hypothetical negotiation are used to calculate the royalty.

The Motion also attempts to assert that Kennedy admits or agrees that the entire damages calculation should be based solely on the number of handshake-based interactions that occurred after the hypothetical negotiation.  (Mot. at 74-75.) In addition to being completely at odds with Kennedy's expert report, this is an incorrect statement of Kennedy's opinions, as the argument rests on answers taken out of context and cherry-picked from nearly 200 pages of testimony.

First, as stated above, Kennedy's report clearly states that the royalty base for the damages calculation is the number of accused Freestyle machines all of which have handshake capability, not the number of handshake "uses." *See* Ex. K, Kennedy Opening Damages Report at ¶¶335. Second, TCCC badly misconstrues Kennedy's testimony about his use of handshake-based sales data to determine a royalty rate, such as the following:

> In his deposition, Kennedy affirmed that sales of ingredients that ***do not*** involve a handshake ***should not*** be included in RCDI's damages.
>
> > A. I -- the way that the damages calculations are structured, it's the [] difference in the volume between what Coca-Cola Company expected the volume between the devices, ***based on handshakes*** in the way they were rolling out the technology. . .
>
> SUMF at ¶113, 9/22/2022, D. Kennedy Dep. Tr. 54:22-55:11 (Ex.46)).

71

(Mot. at 74.)  On its face, Kennedy's testimony does not say that "sales of ingredients that do not involve a handshake should not be included in RCDI's damages" (*id.*) because this would be entirely inconsistent with his opinion that the damages base should be the number of Freestyle machines having handshake capability. Rather, Kennedy's above answer is consistent with how Kennedy used handshake-based sales data from the time of the hypothetical negotiation to arrive at a royalty rate that is applied to the royalty base of accused dispensers. *See* Ex. K, Kennedy Opening Damages Report at ¶¶ 93, 94, 99.

TCCC next cites an answer to a deposition question that is long, compound, and confusing:

> Q. Do you believe that included in your damages numbers, sales of beverages where there was no interactivity with a mobile phone or Freestyle app or a handshake, so just to be clear, it's a person pressing the button on the Freestyle machine to get a beverage just right in front of them, there's no user identity or anything like that, should those be included in your damages number?
>
> A. No.
>
> (SUMF at ¶114, *Id.* at 161:3-13 (Ex. 46)).

(Mot. at 74.) Kennedy was asked this question in the context of TCCC00159157, a page of deposition Exhibit 27, that relates to the VPD uplift calculation that Kennedy applied only to the royalty rate. *See* Ex. V, Kennedy Transcript at 158:14-161:13). TCCC counsel's use of the term "damages number" in the above question is

ambiguous and lifted out of the context of the deposition. This question, viewed in isolation, makes it appear that counsel was asking whether non-handshake-based sales data should be included in any part of Kennedy's reasonable royalty calculation. However, when viewed in the context of the previous questions (*see* Ex. V, Kennedy Transcript at 158:14-161:13), it is clear that the topic under discussion was Kennedy's use of handshake data to calculate the VPD uplift that was then used by Kennedy to determine the royalty rate.  Accordingly, Kennedy's above answer confirmed that he had not ignored handshake data when calculating the royalty rate.

Last, TCCC cites testimony where Kennedy states that the parties would have considered during the hypothetical negotiation that handshake capabilities would increase VPD:

> Q. So if there was infringement by using the touchscreen on the accused dispensers, you would want to -- that would be part of your damages calculation?
>
> MR. CAREY: Object to form.
>
> A. It would *only be part of it* if that was something that The Coca-Cola Company anticipated *as part of the handshakes*.
>
> Q. What do you mean by that?
>
> A. Well, because I'm basing it on what they anticipated and what they projected their benefits to be over time over the damages period were really -- which is, you know, estimated through the potential or estimated trial date of the first quarter of 2023. So if they were assuming that handshakes could occur without a phone, then that would have been part of what they estimated. But I think the way it's discussed and the best available information at the time was that they were basing their projections *on specific data that they had received from their customers that had used the technology with the QR codes and the handshakes* as they described it.
>
> (SUMF at ¶115, *Id*. at 84:12-85:11 (Ex. 46)).

(Mot. at 74-75.) This is a question about the anticipated benefits of having handshake-capable Freestyle dispensers, and is consistent with Kennedy's report that includes handshake-based sales projections as an important factor in the rate calculation.

At bottom, the parties have presented conflicting expert reports on damages. There are genuine disputes of fact regarding the issue of damages in this case, and there is no basis to take those factual issues away from the jury and dictate the ceiling of a reasonable royalty. The Court should deny partial summary judgment as to damages.

## VI.   <u>CONCLUSION</u>

The Court should deny TCCC's motion for summary judgment.

Dated: January 3, 2023

Respectfully submitted,

*/s/ John C. Carey*
John C. Carey

**CAREY RODRIGUEZ
MILIAN, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel:   (305) 372-7474
Fax:  (305) 372-7475

John C. Carey
*jcarey@careyrodriguez.com*

**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel.: (404) 596-5600
Fax: (404) 596-5604

Michael A. Caplan
*mcaplan@caplancobb.com*
T. Brandon Waddell
*bwaddell@caplancobb.com*

*Counsel for Plaintiff Rothschild Connected Devices Innovations, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1</u>

I hereby certify that the foregoing document is written in 14-point Times

New Roman font in accordance with Local Rule 5.1.

*/s/ John C. Carey*
John C. Carey

*Counsel for Plaintiff RCDI*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

The 3rd day of January, 2023.

/s/ John C. Carey
John C. Carey

*Counsel for Plaintiff RCDI*